# EXHIBIT A

CENTRAL\30453214.1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA  P-SEND
CIVIL MINUTES - GENERAL

CASE NO: CV 02-6136-RGK (Mcx)  DATE: May 30, 2003

TITLE: COUNCIL OF HYGIENE FRANCHISEES v. SWISHER HYGIENE FRANCHISE CORPRATION

PRESENT: THE HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE

| Sharon L. Williams | Not Reported |
| Courtroom Clerk | Court Reporter |

ATTORNEY FOR PLAINTIFF:  ATTORNEY FOR DEFENDANT:

Not Present  Not Present

PROCEEDINGS: (IN CHAMBERS) DEFENDANTS' (1) MOTION TO DISMISS WITH PREJUDICE, OR IN THE ALTERNATIVE, TO TRANSFER VENUE; AND (2) DEFENDANTS' MOTION FOR SANCTIONS

I. **FACTUAL BACKGROUND**

This action is brought by Plaintiff Council of Hygiene Franchisees ("Council" or "Plaintiff") against Defendant Swisher Hygiene Franchise Corporation ("Swisher") for declaratory judgment as to the obligations under a Uniform Franchisee Offering Circular ("the Franchisee Letter") and a Swisher Hygiene Franchise Agreement ("Franchise Agreement").[1]

The following facts are alleged in the Third Amended Complaint ("TAC"):[2]

---

[1] The parties admit that not all of the Franchisee Agreements are the same. Although each Franchisee enters into a Franchise Agreement, the terms may vary depending on the year the Franchise Agreement was entered into.

[2] The TAC differs from the Second Amended Complaint ("SAC") in so far as a footnote was omitted from ¶ 85, and the following language was added to ¶ 1:

> The Council has been authorized by its members to bring this action. Consistent with the requirements set forth in the Council's by-laws, the members of Council voted overwhelmingly in favor of the Council pursuing this action. The members who voted in favor of the Council

1

EXHIBIT A

JUN 2 2003

Defendant Swisher is a North Carolina corporation with its principal place of business in the State of North Carolina. Defendant Swisher is in the business of developing, operating and/or franchising a system of business that offer and sale hygiene products and services and pest control products and services throughout the United States.

Plaintiff Counsel is an Arizona corporation with its principal place of business in California. In 1998, Council was formed to unite independently owned Swisher franchises and for educating and representing its members. In addition, Council's purpose was to, among other things, articulate and advocate the needs, interests, and goals of its members in the context of a cooperative relationship with Swisher, and to cooperate for the improvement of the legal, business, and financial conditions of the Swisher franchisees, and ultimately, the franchise system as a whole. Membership in the Council is open to all Swisher franchisees, except those franchisees owned by, or affiliated with, Swisher.

Prior to entering into the franchise relationship, Swisher provided each prospective franchisee with a Franchisee Letter, which pursuant to 16 CFR 436.1, et seq., must be provided to each prospective franchisee. The Franchisee Letter contains twenty-three categories of information which generally describe the business being franchised and agreements the franchisee is required to sign, including the Franchise Agreement. Pursuant to 16 CFR 436.1, et seq., and certain state laws, Swisher is required to update the Franchisee Letter on, at a minimum, an annual basis.

Swisher failed to honor the agreements in the Franchisee Letter and Franchise Agreements by not:

   a.   Assisting in the collection of current and past due accounts (Complaint, Exh. A, Item 11, pp. 46-47; Exh. B, § 4.3(a)(5));

   b.   Placing all monies collected on behalf of franchisees directly into a separate trust account for the benefit of franchisees (Id.);

   c.   Providing approved products from designated vendors for use in the operation of the franchises, the delivered price (unit price plus freight) of which shall not exceed the delivered price at which a franchisee could buy an equivalent product from a vendor (Complaint, Exh. A, Item 8, p. 41; Exh. B, § 4.1(c)(ii));

   d.   Providing approved products to franchises, of which it will not earn a profit on the sale of said products in excess of twenty percent (20%) of its cost of such items (Complaint, Exh. A, Item 8, p. 41; Exh. B, § 4.1(c)(ii)); and

---

initiating this action are parties to all versions of the franchise agreements that the Council is requesting that this Court examine and issue declaratory relief.

2

    e.    Preparing of monthly management reports (Complaint, Exh. A, Item 11, p. 46; Exh. B, Sect. 4.3(a)(4).

In exchange for Swisher providing those and other business services, Swisher charges all of its franchisees a uniform "Service Fee." (Complaint, Exh. B, §§ 3.2(b), 4.3).

In the Franchisee Letter and Franchise Agreement, Swisher acknowledges that the Service Fee is specifically correlative to the amount and nature of business services provided by Swisher to its franchisees, and in the event that Swisher decreases the amount of services it provides to its franchisees, the Service Fee may be reduced accordingly. Although Swisher is not providing the business services it agreed to, Swisher has not reduced the Service Fee.

The Franchisee Letter and franchise agreement provides that Swisher will provide its franchisees with assistance in the collection of past due accounts. (Complaint, Exh. A, Item 11, pp. 46-47; Exh. B, § 4.3(a)(5). "Assistance" does not permit Swisher to require all franchisees to agree that Swisher is the sole party authorized to collect receivables from the franchisees' customers. Swisher is using software known as Shine to preclude all franchisees from collecting receivables from franchisees' customers (except for a limited amount of C.O.D payments).

## II.  DISCUSSION

### A.  Standards

#### 1.  Motion To Dismiss Standard

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) the Court must assume that plaintiffs' allegations are true, and must construe plaintiffs' complaint in the light most favorable to plaintiffs. See United States v. City of Redwood City, 640 F.2d 963, 967 (9th Cir. 1981). Moreover, even if the face of the pleadings indicates that recovery is unlikely, the plaintiff is still entitled to offer evidence in support of the complaint. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Redwood City, 640 F.2d at 967. Finally, a court may not dismiss complaints pursuant to Fed. R. Civ. P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Russell v Landrieu, 621 F.2d 1037, 1039 (9th Cir. 1980).

Generally, orders granting motions to dismiss are without prejudice unless "allegations of other facts consistent with the challenged pleading could not possibly cure the defect." Schreiber Dist. v. Serv-Well Furniture, 806 F.2d 1393, 1401 (9th Cir. 1986).

#### 2.  Standard for Imposing Rule 11 Sanctions

"For a sanction to be validly imposed, the conduct in question must be sanctionable under the authority relied on." Keegan Mgmt. Co. Sec. Litig., 78 F.3d 431, 435 (9th Cir. 1995) (quoting Cunningham v. County of Los Angeles, 879 F.2d 481, 490 (9th Cir.

3

1988). According to Rule 11, "every pleading, written motion, and other paper shall be signed by at least one attorney of record . . . . Fed. R. Civ. P. 11(a). Rule 11 further provides, in relevant part, as follows:

> **(b) Representations to Court.** By presenting to the court . . . a pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,– (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) the allegations and other factualcontentions have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Civ. P. 11(b)(1), (2), (3), and (4).

Rule 11 is limited to "pleadings, written motions and other papers" filed with the court. Fed. R. Civ. P. 11(b). Therefore, it does not apply to other conduct during the litigation process. Id.; United Energy Owners Comm., Inc. v. United States Energy Mgmt. Sys., Inc., 837 F.2d 356, 364-65 (9th Cir. 1988). Pursuant to Rule 11, attorneys who violate their certification that there is a legal basis for their pleading, motion or other paper are subject to sanctions. Fed. R. Civ. P. 11. In considering whether the certification is violated, courts employ an objective test, which asks whether "the paper filed . . . is frivolous, legally unreasonable, or without factual foundation . . . ." Zaldivar v. City of Los Angeles, 780 F.2d 823, 831 (9th Cir. 1986).

A party moving for the issuance of sanctions must file a separate motion for such describing the specific sanctionable conduct. Fed. R. Civ. P. 11(c)(1)(A). Further, the moving party need not make a showing of "bad faith." Fed. R. Civ. P. 11. However, the 1993 amendments to Rule 11 significantly limited the availability of sanctions under that Rule by rendering them discretionary and including a "safe-harbor" provision. Therefore, the court *may* impose an appropriate sanction upon the attorneys, law firms, or parties who have violated Rule 11 or are responsible for such violation. This discretion is limited in that if the sanctionable conduct is based on the legal sufficiency of a paper or motion, a court may only impose monetary sanctions under Rule 11 against the lawyer. Fed. R. Civ. P. 11(c)(2)(A).

4

## III. ANALYSIS

### A. Dismissal Is Warranted Because Plaintiff Lacks Associational Standing

Swisher's has moved this Court to Dismiss the present matter twice. Each time, the Court granted Swisher's requests, and therefore dismissed Council's Complaint without prejudice with leave to amend.[3] Swisher now moves to dismiss Council's amended Complaint arguing, inter alia, that dismissal is proper because Plaintiff lacks associational standing.[4] For the reasons discussed below, this Court agrees.

In this Court's January 15, 2003 Order, the Court determined that Council had Article III standing.[5] However, because Council is an organization, the Court also had to determine whether Council could satisfy the following three additional requirements to sue on behalf of its members: "(i) Council's members must otherwise have had standing to sue on their own behalf; (ii) the interests at stake must be germane to [Council's] purpose[]; and (iii) neither the claim asserted nor the relief requested must require the participation of individual members in the lawsuit."

---

[3] In this Court's January 15, 2003 Order granting Swisher's Second Motion to Dismiss or Transfer ("January 15, 2003 Order"), the Court stated:

> [T]here is no indication that Council's franchisee members have granted Council the authority to bring suit under each member's individual contracts with Swisher. Indeed, there is no indication of an assignment or any other agreement by each Council member franchisee and Council that would permit Council to represent each member in the present action. As such, this Court concludes that Council lacks associational standing to bring this suit for declaratory relief.

[4] In the alternative, Defendant argues that dismissal is proper for the following reasons: (1) Plaintiff cannot establish diversity jurisdiction because there are several unjoined parties who must be joined, but cannot because they will destroy diversity; (2) Good cause exists for the Court to not declare the rights of the parties under the Declaratory Judgment Act ("the Act"); and (3) Venue should be North Carolina due to an enforceable forum selection clause is inserted in every franchise agreement. However, because this Court concludes that Council lacks associational standing, Defendant's further contentions need not be addressed.

[5] Article III standing requires Plaintiff Council to demonstrate that: "(i) [it] suffered or will suffer an 'injury in fact' that is concrete, particularized, and actual or imminent; (ii) the injury is fairly traceable to the [defendant's] action; and (iii) the injury is likely, not merely speculative, and will be redressed by a favorable decision." Biodiversity Legal Found. v. Badgley, 309 F.3d 1166, 1171 (9th Cir. (Or.) 2002) (citing Cantrell v. City of Long Beach, 241 F.3d 674, 679 (9th Cir. 2001). Of these three elements, Defendant focused on the third prong, arguing that Plaintiff did not have standing because Plaintiff's "injury cannot be redressed by a favorable decision." However, this Court determined that Plaintiff's argument was meritless.

5

Biodiversity Legal Found. v. Badgley, 309 F.3d 1166, 1171 (9th Cir. (Or.) 2002) (citing United Food And Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 553 (1996)).

After reviewing the record and the parties' arguments, the Court agreed with Council that the first two prongs were met. However, the Court determined that Council failed to satisfy the third prong of associational standing because Council's breach of contract claims required participation of its individual members.[6] Individual participation was required because Council's suit sought to enforce various contracts where it was neither a contracting party, nor did it have express written authority to sue under the contracts in issue.[7]

Now, in Opposition to Swisher's current Motion to Dismiss, Council argues that dismissal is not warranted because associational standing is indeed satisfied. For support, Plaintiff heavily

---

[6] This was due, in part, because Council relied on cases that were nonbinding and factually dissimilar. In particular, the Court noted that:

> In support of its contention, Council relies on Roto-Rooter Franchisee Asso. V. Roto-Rooter Corp., Case No. 4-95-CV-80816 (S.D. Iowa, 1996), an unreported decision written by United States District Court Judge Charles R. Wolle ("Judge Wolle"), whereby Judge Wolle determined that an association of Roto-Rooter franchisees had standing to obtain a declaratory judgment on the meaning of the written franchise agreements, and that the interpretation of those agreements was important for the continued viability of the association and its members. However, in reading Judge Wolle's Order, this Court cannot determine what legal support Judge Wolle relied upon in drawing his conclusions. Moreover, the Order issued by Judge Wolle is not binding on this Court and therefore should not be considered. In addition, the other cases cited by Council do not prove that Council has associational standing because the cited cases are factually dissimilar from the case currently before this Court.

January 15, 2003 Order.

[7] The Court stated in its January 15, 2003 Order that:

> There is no indication that Council's franchisee members have granted Council the authority to bring suit under each member's individual contracts with Swisher. Indeed, there is no indication of an assignment or any other agreement by each Council member franchisee and Council that would permit Council to represent each member in the present action.

6

relies on the Ninth Circuit case, Ass'd Gen. Contractors of California, Inc., v. Coalition For Econ. Equity, 950 F.2d 1401 (9th Cir. 1991) (hereinafter "Associated General Contractors"). However, for the reasons discussed below, Council's reliance is misplaced.

In Associated General Contractors, an organization of construction contractors requested a preliminary injunction in a suit challenging a city ordinance which gave bid preferences to minority businesses. In that case, the Ninth Circuit Court of Appeals upheld the district court's denial of the preliminary injunction. Presumably, Council directs the Court's attention to Associated General Contractors in order to demonstrate that Council does not require unanimous consent from all of its members in order to bring suit for breach of contract. To support its contention, Council accurately quotes the Ninth Circuit as stating that, "as a matter of policy, . . . [the Ninth Circuit] rejects the suggestion that unanimity of membership be required in organizations seeking standing." Id. at 1408. As such, Council would have this Court believe that unanimous consent is never required.

However, what Council fails discern is that facts of the current matter are not closely situated to those in Associated General Contractors. In Associated General Contractors the Ninth Circuit determined that mere conflict among an organization's members does not defeat organizational standing. According to the Ninth Circuit, this is because "[t]o insist that there be neither conflict nor potential for conflict on any issue litigated would, in effect, lead to the eradication of associational standing in most suits. Such a rule would disserve the public interest, which frequently would not be represented but for these suits." Id. at 1408-09.

Here, however, the issue is not whether clashes exist among an organization's members. Rather, the paramount issue is whether Council possessed the legal authority to bring suit under each Council member's individual contract. As to this issue, the answer is no. Indeed, it is undisputed that Council is not a party to the franchise agreements in issue. Moreover, it is also uncontested that Council lacks written consent to bring suit under the franchise contracts in dispute. Without proof that Council has been expressly granted the authority by assignment, agreement or otherwise to bring suit under the individual contracts in issue, Council cannot be said to possess associational standing.

In light of the foregoing, this Court concludes that this action must be dismissed for lack of associational standing. However, this Court's ruling does not prevent individual members of Council from bringing suit to enforce their individual contract rights. Nor should this Order be read to preclude the members from bringing suit to enforce their contracts as a class action or by other legal means. Based on the analysis above, this Court need not address the parties' other contentions as to whether dismissal is proper on other grounds, or whether transfer of this case to North Carolina is appropriate.

7

### B. Defendant Swisher's Motion For Sanctions Is Denied[8]

Defendant Swisher requests that this Court sanction Plaintiff Council under both Federal Rule of Civil Procedure ("Rule") 11 and/or the Court's inherent power. Specifically, Swisher seeks "to deter the conduct of Plaintiff and its counsel . . . and to compensate . . . Defendant for its unnecessary fees and costs incurred in defending against the bad faith and frivolous actions in this case." (Defendant's Motion for Sanctions at 6:26-28). In sum, Plaintiff argues that Council must be sanctioned as a result of the Court dismissing the FAC and SAC without prejudice, and because the Court denied Plaintiff's Motion for Appointment of a Receiver.

Pursuant to Rule 11, the party seeking sanctions must first serve a Rule 11 motion on the party to be sanctioned. The purpose of this rule is to allow the "wrongdoer" time to withdraw or appropriately correct the challenged filing. Fed. R. Civ. P. 11.

Upon review of the record, it appears that Swisher failed to comply with Rule 11 procedures in connection with the filing of the FAC and SAC. Therefore, sanctions for such filings is not warranted. Moreover, even if Swisher properly followed Rule 11 procedures, this Court would find no reason to grant Swisher's request for sanctions. Indeed, for sanctions to be granted under the inherent power of the Court, the Court must first make a finding of recklessness or bad faith behavior. Barber v. Miller, 146 F.3d 707, 711 (9th Cir. 1998); In re Deegan Mgmt. Co., 78 F.3d 431, 436 (9th Cir. 1996). Upon review of the facts surrounding this case, the Count cannot conclude that Council has acted with bad faith, vexatiously, wantonly, or for oppressive reasons. The same is true of Plaintiff's filing of the TAC. There is no compelling evidence that demonstrates that any of Plaintiff's filings were frivolous, baseless or made without reasonable inquiry. Accordingly, this Court denies Plaintiff's Motion for Sanctions.

---

[8] Although Swisher has previously been cautioned to follow the Local Rules for the Central District of California ("Local Rules") Swisher's Motion for Sanctions is replete with Local Rule violations, including Local Rules 11-3.1.1 - font too small; Local Rule 11-3.3 - incorrect margins and more than 28 lines per page; and Local Rule 7-3 - no indication that the motion was "made following the conference of counsel." Although this Court may therefore strike Swisher's current Motion for Sanctions, this Court, in its discretion, evaluates the merits of Swisher's request.

8

## IV. CONCLUSION

Accordingly, this Court:

(1) **GRANTS** Defendant Swisher's Motion To Dismiss, Or In The Alternative, Tranfer of Venue; and

(2) **DENIES** Defendant Swisher's Motion for Sanctions.

**IT IS SO ORDERED.**

MINUTES
CIVIL - GEN

Initials of Deputy Clerk: slw