# GROUP EXHIBIT B

Westlaw.

Not Reported in F.Supp., 1996 WL 101277 (S.D.N.Y.)
(Cite as: 1996 WL 101277 (S.D.N.Y.))

**H**Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
ANTI-MONOPOLY, INC., Plaintiff,
v.
HASBRO, INC., Defendant.
No. 94Civ.2120(LMM)(AJP).

March 7, 1996.

Carl E. Person, New York City, for Anti-Monopoly,
Inc.

David Berger, Palo Alto, CA, Neil R. Stoll, New
York City, for Kmart Corp.

OPINION AND ORDER

PECK, United States Magistrate Judge:

*1 In this antitrust action by Anti-Monopoly, Inc.
against major game manufacturer Hasbro, Inc. (the
manufacturer of, among other games, "Monopoly"),
defendant Hasbro seeks a stay of discovery relating
to plaintiff's "secondary-line" Robinson-Patman Act
claims until Judge McKenna rules on Hasbro's re-
cently filed motion for judgment on the pleadings on
those claims for plaintiff's lack of antitrust standing.
For the reasons set forth below, Hasbro's pending
motion for judgment on the pleadings provides "good
cause" for the stay of discovery, which is granted.

FACTS

*Anti-Monopoly's Complaint*

Anti-Monopoly's amended complaint (hereafter,
"complaint") is summarized in Judge McKenna's
prior Opinion granting in part defendants' motion to
dismiss the complaint, familiarity with which is as-
sumed. *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 94 Civ.
2120, 1995 WL 380300 (S.D.N.Y. June 27, 1995).
Plaintiff Anti-Monopoly, which possesses less than
1% of the market for family board games, developed
and marketed a family board game called "Anti-
Monopoly." *Id.* at *1. Defendant Hasbro is the lead-

ing manufacturer of family board games with more
than 80% of the market. *Id.* The complaint also
named retailers Toys "R" Us and K-Mart as defen-
dants, *id.*, but plaintiff has subsequently settled with
both of them. (*See* Declaration of Marthe Larosiliere,
dated February 22, 1996 [hereafter "Larosiliere
Dec."], Exs. A(3)-(4).)

After Judge McKenna's June 1995 decision, the fol-
lowing claims survived against Hasbro: (1) Count I --
violation of § 2 of the Sherman Act "by monopoliz-
ing, wilfully attempting to monopolize, and combin-
ing and conspiring to monopolize, the manufacturing
and sale of family board games" (1996 WL 380300 at
*4-5); (2) Count III -- tortious interference with ad-
vantageous business relationships under New York
law (*id.* at *6-7); (3) Count VI -- Hasbro's violation
of § 7 of the Clayton Act by acquiring competitors
where the effect has been to substantially lessen
competition and to create a monopoly (*id.* at *8); (4)
Count VII -- violation of the Robinson-Patman Act (§
2 of the Clayton Act) by "'providing substantial dis-
counts, terms and services to major family board
game retailers which are not made available on equal
terms to competing smaller family board game retail-
ers and wholesalers and which are not either cost
justified or otherwise permitted under § 2."' (*id.* at
*8, quoting complaint; *see also id.* at *9; (5) Count
VIII -- violation of § 1 of the Sherman Act through
illegal contracts, conspiracies and combinations to
restrain trade (*id.* at *9-10); and (6) Count IX -- vio-
lation of § 3 of the Clayton Act by selling to K-Mart,
Toys "R" Us and others on terms which require them
not to buy from Anti-Monopoly and other small
competitors (*id.* at *3).

This motion relates to Count VII of the complaint,
plaintiff's Robinson-Patman Act claims for price dis-
crimination. *See id.* at *8-9. Plaintiff has alleged both
a primary-line and secondary-line Robinson-Patman
Act claim. Finding that the amended complaint al-
leged that Hasbro "prices its products below an ap-
propriate measure of its costs," as required by the
case law under the Robinson-Patman Act, the Court
upheld the claim. *Id.* at *9. The Court noted, how-
ever, that "[b]ecause the Court agrees that Anti-
Monopoly has stated a claim for primary-line injury,
the Court does not address at this time Anti-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1996 WL 101277 (S.D.N.Y.)
(Cite as: 1996 WL 101277 (S.D.N.Y.))

Monopoly's claim that it has suffered a secondary-line injury." *Id.*

*2 Hasbro has now moved before Judge McKenna to dismiss plaintiff's secondary-line Robinson-Patman Act claim for lack of standing. That motion, which is pending, provides the linchpin for Hasbro's motion to stay discovery.

Because the difference between primary and secondary-line injury is the key to these motions, I quote Judge McKenna's explanation of primary and secondary-line cases:

Two classes of plaintiffs are recognized to have standing to bring a Robinson-Patman claim. Direct competitors of the predator are said to suffer primary-line injury when they are unable to match the predator's prices and must either sell at a loss or lose market share. Competitors of the favored purchasers are said to suffer secondary-line injuries when they are forced to compete in the same market as the purchasers who are enjoying the benefit of lower overhead for the same product. Anti-Monopoly has argued that it has suffered both types of injuries.

*Id.* at *9.

*Anti-Monopoly's Discovery Requests*

After the initial pretrial conference on August 9, 1995, by Order dated August 16, 1995, the Court set a cutoff date of March 15, 1996 for fact discovery and May 10, 1996 for expert discovery. The Court notes that the parties had proposed, and the Court rejected, a much more leisurely schedule — fact discovery through September 1996 and expert discovery through March 30, 1997. (*See* 8/9/95 "Proposed Joint Discovery Plan.")

In late December 1995, plaintiff served Requests to Admit and a Second Set of Interrogatories on defendant Hasbro, seeking discovery in support of plaintiff's secondary-line Robinson-Patman Act claim. (Larosiliere Dec. Exs. F-G.) In late January, plaintiff served a Second Set of Requests to Admit, containing requests 201-431, all of which appear directed at the secondary-line claim. (*Id.* Ex. I.) That same day, plaintiff served its Second Request for Production of

Documents, including 12 requests directed at plaintiff's secondary-line claim. (*Id.* Ex. J.)

### ANALYSIS

Pursuant to Rule 26(c), it is clear that the Court has the discretion to stay discovery for "good cause," and that good cause may be shown where a party has filed (or sought leave to file) a dispositive motion such as a motion to dismiss. This is especially so where the stay is for a "short" period of time and the opposing party (here, plaintiff) will not be prejudiced by the stay. *See, e.g., In re Towers Financial Corp. Noteholders Litigation,* 93 Civ. 0810, — WL ———— (S.D.N.Y. Jan. 29, 1996) (Peck, M.J.); *American Booksellers Assoc., Inc. v. Houghton Miflin Co.,* 94 Civ. 8566, 1995 WL 72376 at *1 (S.D.N.Y. Feb. 22, 1995); *Gandler v. Nazarov,* 94 Civ. 2272, 1994 WL 702004 at *4 (S.D.N.Y. Dec. 14, 1994); *Chrysler Corp. v. Century Power Corp.,* 137 F.R.D. 209, 211 (S.D.N.Y. 1991); 2 M. Silberide, *Civil Practice in the Southern District of New York* § 24.04 at 24-8 (and cases cited therein) (1995).

*The Breadth and Burden of the Requested Discovery*

*3 Two related factors that the courts consider in deciding a motion for a stay of discovery are the breadth of the discovery sought and the burden of responding to it. *E.g., American Booksellers v. Houghton Miflin,* 1995 WL 72376 at *1; *Chrysler v. Century,* 137 F.R.D. at 211. Here, plaintiff's secondary-line discovery requests are quite extensive. They involve almost 300 Requests to Admit, as well as 14 interrogatories and 12 document requests. (*See* Hasbro's Brief at 4-5 & nn.7-8, 10; *see also* Berger 2/29/96 Letter to the Court at 1-2.) These requests will be totally unnecessary if Hasbro's motion for judgment on the pleadings as to the secondary-line Robinson-Patman Act claim is granted. (The Court is relying on Hasbro's assertion that these requests only relate to the secondary-line claim, which has not been challenged by plaintiff.)

*There Is No Prejudice to Plaintiff from a Stay of Discovery*

Another factor that the courts consider is whether the party opposing the stay would be unfairly prejudiced by a stay. *E.g., Gandler v. Nazarov,* 1994 WL 702004 at *4; *Chrysler v. Century,* 137 F.R.D. at 211.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1996 WL 101277 (S.D.N.Y.)
(Cite as: 1996 WL 101277 (S.D.N.Y.))

Plaintiff will not be prejudiced by a stay here. Plaintiff argues that "The requested stay would destroy the accelerated time schedule for discovery under which the parties and the Court have been working, and almost reached." (Person 2/26/96 Letter to the Court, at 1.) It is true that fact discovery is scheduled to be completed by March 15, 1996. The Court notes, however, that the parties originally proposed that fact discovery run through September 1996 (and expert discovery through March 30, 1997.) The deadlines were accelerated only because this Court believes in running a "rocket docket" and suggested that the parties could condense and expedite their discovery schedule, to which they agreed. The Court has every reason to believe that Hasbro's motion will be decided, and if it is denied that the additional fact and expert discovery needed will be conducted, before the original March 30, 1997 cutoff date.

Plaintiff's second prejudice argument is that:

Plaintiff cannot afford to call witnesses for some of the needed discovery, and then have to go through the process again for the Robinson-Patman type discovery, if a stay is granted. This means additional preparation time, additional travel time to and from the depositions, and other problems associated with bifurcated discovery especially of third-party witnesses, including re-noticing them at this late date in discovery.

(Person 2/26/96 Letter at 1.) However, as of this date, less than two weeks before the scheduled March 15, 1996 close of fact discovery, plaintiff has noticed only three depositions of senior Hasbro executives (Messrs. Hassenfeld, Dittomassi and Wilson), and no non-party depositions. (*See* Berger 2/29/96 Letter to the Court at 3.) Further, Hasbro contends that these three senior executives do not "have specific or detailed knowledge of pricing issues." (*Id.*) Thus, according to Hasbro, if their motion for judgment on the pleadings were denied, no depositions would be repeated. (*Id.*) Even if Hasbro were incorrect and these three depositions would need to be reopened, any extra cost to plaintiff is more than outweighed by the expense to Hasbro (and to plaintiff) of conducting discovery on a claim that may be dismissed as legally insufficient. Moreover, the "additional travel time to and from the depositions" is a factor that, if necessary, can be obviated in other ways later (*e.g.*, by

agreement or order that the depositions occur in New York when the witness is in New York for business reasons, or permitting telephonic depositions, etc.). It is premature to decide what cost protection, if any, plaintiff will be given later. But it is clear that there is no prejudice to plaintiff from the stay.

*Hasbro's Motion For Judgment on the Pleadings has "Substantial Grounds"*

*4 The third and final factor the courts examine is the strength of the dispositive motion that is the basis for the discovery stay application. *E.g.*, *Gandler v. Nazarov*, 1994 WL 702004 at *4 (stay granted where motion to dismiss "is potentially dispositive, and *appears to be not unfounded in the law*") (emphasis added); *Chrysler v. Century*, 137 F.R.D. at 211 (motions to dismiss "*appear to have substantial grounds*") (emphasis added).

From the Court's preliminary look at Hasbro's motion for judgment on the pleadings, the motion is "not unfounded in the law" and "appears to have substantial grounds."

Plaintiff's secondary-line standing argument appears to be that Hasbro's price discrimination has put small retailers out of business, and that plaintiff sold or would have sold its game to these retailers if they had not gone out of business. (*See* Larosiliere Dec. Ex. D: Plf's 1994 Brief Opposing Motion to Dismiss, at 16.) In *G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762 (2d Cir.), *cert. denied*, 116 S. Ct. 381 (1995), the Second Circuit dismissed a similar Robinson-Patman Act claim for lack of standing, holding:

It follows naturally that a party in a business relationship with an entity that failed as a result of an antitrust violation has not suffered the antitrust injury necessary for antitrust standing....

Although the [plaintiff] distributors undoubtedly suffered injury as a result of the alleged antitrust violation, the injury suffered by the distributors is derivative of the injury suffered by Seven-Up Brooklyn. Thus, ... it was not the distributors that suffered direct antitrust injury, but Seven-Up Brooklyn. Therefore, the proper party to bring the antitrust action on these facts was Seven-Up Brooklyn....

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1996 WL 101277 (S.D.N.Y.)
(Cite as: 1996 WL 101277 (S.D.N.Y.))

55 F.3d at 766-67. Hasbro argues that the party suffering direct antitrust injury here, and thus the party with standing, are the small retailers allegedly forced out of business by Hasbro's price discrimination, and any injury suffered by plaintiff is derivative and not antitrust injury.

Hasbro also cites two district court decisions that held that a competing manufacturer (like plaintiff here) has no antitrust standing to bring a secondary-line claim under Sections 2(d) and 2(e) of the Robinson-Patman Act for a competitor's providing discriminatory allowances or services to customers. *Ashkanazy v. I. Rokeach & Sons, Inc.,* 757 F. Supp. 1527, 1553-54 (N.D. Ill. 1991); *Frito-Lay, Inc. v. Bachman Co.,* 659 F. Supp. 1129, 1140-41 (S.D.N.Y. 1986).

Plaintiff distinguishes these cases and relies on certain "target area" cases. (*See* Larosiliere Dec. Ex. D: Pif's 1994 Brief at 16-19.) The Court need not decide whether Anti-Monopoly or Hasbro is correct -- that motion is before Judge McKenna. The Court's reading of the parties' prior briefs on this issue, and the cases cited above, however, makes clear that not only does Hasbro's motion to dismiss "appear not unfounded on the law" but indeed it "appears to have substantial grounds."

## CONCLUSION

*5 All of the factors relied on by the courts support a stay of discovery. Accordingly, for the reasons set forth above, the Court grants Hasbro's motion to stay fact and expert discovery that relates solely to plaintiff's secondary-line Robinson-Patman Act claim. The stay will be lifted without further Court order if Judge McKenna denies Hasbro's motion for judgment on the pleadings as to the secondary-line claim.

SO ORDERED.

S.D.N.Y.,1996.
Anti-Monopoly, Inc. v. Hasbro, Inc.
Not Reported in F.Supp., 1996 WL 101277 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d, 2007 WL 738612 (W.D.Wash.)
(Cite as: 2007 WL 738612 (W.D.Wash.))

**H**
Only the Westlaw citation is currently available.

United States District Court,
W.D. Washington.
Marygrace A. CONEFF, et al., Plaintiffs,
v.
AT & T CORPORATION, et al., Defendants.
No. C06-0944RSM.

March 9, 2007.

Bruce L. Simon, Esther L. Klisura, Cotchett Pitre
Simon & McCarthy, Burlingame, CA, F. Paul
Bland, Trial Lawyers for Public Justice, Washington, DC, Harvey Rosenfield, Pamela Pressley,
Santa Monica, CA, Kevin Coluccio, Stritmatter
Kessler Whelan Caluccio, Seattle, WA, Leslie A.
Bailey, Oakland, CA, Paul L. Stritmatter, Stritmatter Kessler Whelan Coluccio, Hoquiam, WA, for
Plaintiffs.

Michael E. Kipling, Kipling Law Group PLLC,
William F. Cronin, Corr Cronin Michelson
Baumgardner & Preece, Seattle, WA, Archis A.
Parasharami, Evan M. Tager, Mayer Brown Rowe
& Maw, Washington, DC, Neal S. Berinhout, Cingular Wireless LLC, Atlanta, GA, for Defendants.

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR PROTECTIVE ORDER

MARTINEZ, J.

*1 This matter comes before the Court on defendants' Motion for Protective Order.[FN1] (Dkt.# 77).
Defendants ask the Court for an Order barring
plaintiffs from taking the depositions of Cynthia
Hennessy and of multiple 30(b)(6) witnesses, and
staying defendants' obligations to respond further to
plaintiffs' discovery requests pending the resolution
of defendants' motion to compel arbitration.
Plaintiffs have since withdrawn their request to de-

pose Ms. Hennessy, but otherwise oppose defendants' motion. (Dkt.# 91). Plaintiffs argue that all of
their discovery requests are directly relevant to
their response to defendants' motion to compel arbitration. Having reviewed defendants' motion,
plaintiffs' response, defendants' reply, the declarations in support of those briefs, and the remainder
of the record, the Court hereby ORDERS:

> FN1. Defendants believe that plaintiffs
> have erroneously named AT & T Corporation as a defendant to this action, and note
> that defense counsel does not represent
> that corporation. Thus, defense counsel
> moves for a protective order solely with respect to defendants Cingular Wireless
> LLC, New Cingular Wireless Services,
> Inc., and AT & T Wireless Services, Inc.

(1) Defendants' Motion for Protective Order (Dkt.#
77) is GRANTED IN PART and a Protective Order
is entered as follows:

In this proposed nationwide class action, plaintiffs
challenge certain conduct related to defendant Cingular Wireless LLC's acquisition of defendant AT
& T Wireless Services, Inc. Plaintiffs essentially allege that, after the acquisition, Cingular degraded
the service provided to former AT & T Wireless
customers. Plaintiffs further allege that Cingular's
conduct was intentional, done so in an effort to induce AT & T Wireless customers to transfer their
AT & T plans to Cingular plans, which are more
expensive and less favorable to consumers, and
which would involve various change fees and
charges.

Shortly after plaintiffs filed this action, defendants
filed a Motion to Compel Arbitration. Defendants
assert that when each plaintiff contracted for service from AT & T or Cingular, he or she agreed to
arbitrate any disputes on an individual basis, or to
bring any such dispute to small claims court. Defendants argue that the arbitration provision is en-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 738612 (W.D.Wash.)
(Cite as: 2007 WL 738612 (W.D.Wash.))

forceable because it is neither procedurally, nor substantively, unconscionable. Accordingly, defendants argue that the Federal Arbitration Act ("FAA"), 9 U.S.C. § § 1-16, requires plaintiffs to follow the arbitration clause, and this Court should dismiss their claims. Plaintiffs oppose the Motion to Compel Arbitration on the grounds that the arbitration provision, including its ban on class resolution, is unconscionable under the laws of Washington State.

After defendants filed their Motion to Compel Arbitration, plaintiffs served written discovery requests, including 15 interrogatories, 34 document requests and two requests for admission. Plaintiffs also requested 13 depositions. The parties conducted a meet-and-confer with respect to the discovery, and defendants agreed to respond to plaintiffs' Requests for Admissions, Interrogatories 1-4, 11-12 and 14-15, and Document Requests 28, 31 and 33-34. Defendants also agreed to make their associate general counsel for litigation available for deposition, and agreed to help coordinate their nonparty expert witnesses for deposition. Defendants then moved for a protective order with respect to the remaining discovery requests, arguing that the FAA forbids extensive discovery while a motion to compel arbitration is pending, and that, in any event, much of plaintiffs' proposed discovery is privileged or otherwise protected. The Court agrees in part with defendants.

*2 Under the FAA, discovery in connection to a motion to compel arbitration is limited. As the Ninth Circuit Court of Appeals has explained,

[t]he FAA provides for discovery ... in connection with a motion to compel arbitration only if 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue.' In *Prima Paint*, the Supreme Court held that in passing upon an application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate.

*Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir.1999) (citations omitted). In the instant case, plaintiffs challenge the arbitration clause itself, as well as the ban on class action litigation contained within that clause. Such challenges are to be resolved by this Court. *Nagrampa v. MailCoups,* 469 F.3d 1257 (9th Cir.2006) (holding that "[w]hen the crux of the complaint is not the invalidity of the contract as a whole, but rather the arbitration provision itself, then the federal courts must decide whether the arbitration provision is invalid and unenforceable under 9 U. S.C. § 2 of the FAA."); *Muhammad v. County Bank of Rehoboth Beach,* 189 N.J. 1, 912 A.2d 88, 96 (N.J.2006) (finding that district courts are empowered to address situations where class waivers are contained within an arbitration clause as opposed to being contained in separate, waiver-specific clauses within the contract as a whole).

Here, the Court agrees that plaintiffs propounded some discovery appearing to relate only to the merits of the dispute. Specifically, plaintiffs have requested that 30(b)(6) witnesses be prepared to testify about defendants' business operations both before and after the merger, the relationship between the defendants both before and after the merger, and AT & T Wireless's marketing and decisions about how its network would operate after the merger-topics which are not discoverable at this stage of the litigation. Further, the Court is not persuaded by plaintiffs' argument that the proposed topics are relevant to the resolution of any choice-of-law dispute. As defendants point out, plaintiffs rely on the wrong choice-of-law principles, focusing on those principles relating to actions in tort rather than actions based on contract principles. (*See* Dkt. # 100 at 6-8). Accordingly, the Court finds that these topics are not properly discoverable at this time, and will grant defendants' request for protective order with respect to these issues.

However, plaintiffs have also requested that certain 30(b)(6) witnesses be prepared to testify about the development of AT & T Wireless's terms and con-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 738612 (W.D.Wash.)
(Cite as: 2007 WL 738612 (W.D.Wash.))

ditions of service and how those terms and conditions were to be presented and explained to customers. The Court agrees that this topic is connected to defendants' motion to compel arbitration in that it relates to the circumstances surrounding the making of the customers' wireless service agreements, which may be relevant to plaintiffs' response to the motion. Accordingly, the Court declines to grant a protective order with respect to that topic.

*3 The Court now turns to the remainder of plaintiffs' written discovery requests. Plaintiffs argue that all of their discovery requests are relevant to the issue of procedural or substantive unconscionability, but fail to specifically address many of defendants' objections in any meaningful way. Indeed, plaintiffs fail to address defendants' objections based on the attorney-client privilege and work-product doctrines at all. Further, plaintiffs fail to explain the relevancy of several requests for production, such as how information relating to Spanish-language materials, when none of the plaintiffs have actually alleged that they are Spanish-speakers, are relevant to their response to the motion to compel. Plaintiffs' conclusory argument that all of their discovery requests relate to unconscionability does not defeat defendants' valid objection to broad discovery at this time. Accordingly, the Court finds that defendants have shown good cause for a protective order with respect to the remainder of the written, unanswered discovery requests.

(2) The Clerk shall send a copy of this Order to all counsel of record.

W.D.Wash.,2007.
Coneff v. AT & T Corp.
Not Reported in F.Supp.2d, 2007 WL 738612 (W.D.Wash.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d, 2006 WL 3190521 (D.Conn.), 98 A.F.T.R.2d 2006-8344, 2007-1 USTC P 50,199
(Cite as: 2006 WL 3190521 (D.Conn.))

Н

United States District Court,
D. Connecticut.
George CUARTERO, Plaintiff,
v.
UNITED STATES of America, Defendants.
No. 3:05CV1161 (RNC).

Nov. 1, 2006.

George Cuartero, Waterbury, CT, pro se.

David X. Sullivan, U.S. Attorney's Office, New Haven, CT, Karen E. Wozniak, U.S. Department of Justice, Tax Division, Washington, DC, for Defendants.

*RULING ON MOTION TO COMPEL*

DONNA F. MARTINEZ, Magistrate Judge.

*1 The plaintiff has filed this lawsuit seeking review of the Internal Revenue Service's ("IRS") decisions regarding his tax liability. The plaintiff's complaint appears to allege that the IRS has failed to point him to any law authorizing it to tax him. In addition, he challenges the regulations and procedures that the IRS applied in determining that he was liable for unpaid taxes and in entering a tax lien upon his Social Security retirement benefits. Plaintiff's complaint includes allegations that the IRS deprived him of due process by failing to provide him with certain documents during the administrative proceeding. Plaintiff has now requested some or all of those documents in formal discovery in this proceeding.

Pending before the court is plaintiff's Resubmitted Motion to Compel Answers to Amendment to Interrogatories and Admissions (doc. # 24).[FN1] Plaintiff served a series of interrogatories and requests for admission upon the defendant. The defendant objected to these discovery requests on several grounds. First, the defendant claims that this court lacks subject matter jurisdiction of some of plaintiff's claims. In addition, the defendant argues that, where a court reviews an administrative agency determination, such review is for abuse of discretion only and is limited to the administrative record. The defendant urges the

court to stay discovery pending a decision on its Motion to Affirm Determination Concerning Collection Action and Motion to Dismiss All Other Claims (doc. # 26) (the "Motion to Dismiss").[FN2]

> FN1. Plaintiff's original Motion to Compel was denied for failure to comply with the requirements of D. Conn. L. Civ. R. 37. The resubmitted motion was referred to the undersigned by Chief Judge Robert N. Chatigny (doc. # 25).

> FN2. The Motion to Dismiss, which is pending before Judge Chatigny, addresses the legal viability of plaintiff's claims, the court's jurisdiction over those claims and the question of whether the plaintiff was entitled to the production of certain documents during the course of the I.R.S. proceedings. If successful, it could be dispositive of all or part of plaintiff's complaint.

Pursuant to Fed.R.Civ.P. 26(c), the court "has the discretion to stay discovery for 'good cause,' and ... good cause may be shown where a party has filed (or sought leave to file) a dispositive motion." *Anti-Monopoly, Inc. v. Hasbro, Inc.,* No. 94 Civ. 2120, 1996 U.S. Dist. LEXIS 2684, * 6 (S.D.N.Y. Mar. 7, 1996); *see also Transunion Corp. v. PepsiCo, Inc.,* 811 F.2d 127, 130 (2d Cir.1987)(upholding trial court's decision to stay discovery pending decision on *forum non conveniens* motion, because permitting discovery would defeat the purpose of the motion); *Rivera v. Heyman,* No. 96 Civ. 4489, 1997 U.S. Dist. LEXIS 2003, *3 (S.D.N.Y. Feb. 27, 1997) (noting that where there was a "substantial argument for dismissal" and where the motion to dismiss could significantly narrow, if not eliminate, the issues in the case, proceeding with discovery "would waste the parties' resources and constitute an undue burden on defendants"). In determining whether good cause exists for a stay of discovery, the court should consider several factors, including the breadth of the discovery sought, the burden of responding to it, and the prejudice that would be suffered by the party opposing the stay." *Anti-Monopoly, Inc.,* 1996 U.S. Dist. LEXIS 2684, * 7-8 (S.D.N.Y. Mar. 7, 1996). "[A] court should also consider the strength of the disposi-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3190521 (D.Conn.), 98 A.F.T.R.2d 2006-8344, 2007-1 USTC P 50,199
(Cite as: 2006 WL 3190521 (D.Conn.))

tive motion that is the basis of the discovery stay application." _Spencer Trask Software and Info. Servs. LLC v. RPOST Int'l Ltd._, 206 F.R.D. 367, 368 (S.D.N.Y.2002).

\*2 The plaintiff has not responded to the suggestion that discovery should be stayed. Nor has the plaintiff provided any explanation why discovery should go forward in the face of the defendant's assertion that this court lacks jurisdiction and that the plaintiff is not entitled under law to the discovery he seeks.

Plaintiff also has not indicated that he requires discovery in order to respond to the Motion to Dismiss. Indeed, he has already filed an objection to the Motion to Dismiss, with a supporting memorandum of law (docs.# 28, 29). Plaintiff's objection to the Motion to Dismiss does not indicate that he was hampered in preparing it because of the lack of discovery.

The court expresses no opinion as to the outcome of the Motion to Dismiss, but the defendant's memorandum of law does appear to raise substantial issues based on statutes, caselaw and the facts of this case. In addition, there is significant caselaw suggesting that, in the administrative proceedings, the plaintiff was not entitled to production of the documents that he now seeks from the IRS. _See, e .g., Farenga v. U.S._, No. 5:01-CV-1478, 2004 U.S. Dist. LEXIS 7290, \*11-17 (N.D.N.Y. Mar. 24, 2004) (in administrative proceedings, IRS was not required to produce to the taxpayer regulations, statutory authority, evidence of delegations of administrative authority or the identity and authority of individuals who authorized penalties); _Borchardt v. Commissioner of Internal Revenue_, 338 F.Supp.2d 1040, 1044 (D.Minn. Oct. 12, 2004) (in administrative proceedings, IRS had no obligation to produce the identity of employees who determined a taxpayer's return, a copy of the Delegation of Authority empowering IRS employees to assess penalties, a copy of a supervisor's written approval to assess such penalty, or documentation backing up the Secretary of the Treasury's verification that all applicable law and administrative procedures have been complied with); _Cole v. U.S._, No. 1:02-CV-137, 2002 U.S. Dist. LEXIS 22892 (W.D.Mich. Oct. 21, 2002) (in administrative proceedings, IRS was not required to produce delegations of authority or other verification that proper procedures had been followed); _Olsen v. U.S._, 414 F.3d 144 (1st Cir.2005). There is also caselaw indi-

cating that, even if the plaintiff's claim survives the Motion to Dismiss, he is not entitled to any discovery beyond the administrative record. _See, e.g., Camp v. Pitts_, 411 U.S. 138, 142 (1973) ("[t]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court"); _Olsen v. U.S._, 414 F.3d 144, 155 (1st Cir.2005)(citing _Camp v. Pitts_ as authority for upholding denial of motion for discovery in a tax appeal case); _Gardner v. U.S._, No. 04-2686, 2005 U.S. Dist. LEXIS 12364 (D.N.J. Apr. 5, 2005) (denying plaintiff's motion to suspend final ruling on IRS's motion for summary judgment pending discovery, because plaintiff was not entitled to any discovery beyond administrative record).

\*3 The court need not decide, at this juncture, whether the plaintiff is entitled to any discovery at all. Rather, the court merely finds that there is good cause for staying discovery pending a decision on the Motion to Dismiss. Permitting discovery to proceed at this point would be unduly burdensome to the defendant and would be inefficient for both parties, since the court's decision on the Motion to Dismiss may significantly narrow the issues. If discovery were to continue, it would also be likely to result in additional motion practice, since the IRS contends that it is not required to produce anything at all to the plaintiff. The prejudice to plaintiff from a stay of discovery will be minimal, as discovery will only be stayed until a decision is reached on the Motion to Dismiss.

For all the foregoing reasons, discovery in this action is stayed pending resolution of the defendant's dispositive motion (doc. # 26). Plaintiff's Motion to Compel (doc. # 24) is denied without prejudice. If the plaintiff's complaint survives the Motion to Dismiss in whole or in part, the plaintiff may resubmit his Motion to Compel.

SO ORDERED at Hartford, Connecticut this 1st day of November, 2006.

D.Conn.,2006.
Cuartero v. U.S.
Not Reported in F.Supp.2d, 2006 WL 3190521 (D.Conn.), 98 A.F.T.R.2d 2006-8344, 2007-1 USTC P 50,199

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3190521 (D.Conn.), 98 A.F.T.R.2d 2006-8344, 2007-1 USTC P 50,199
(Cite as: 2006 WL 3190521 (D.Conn.))

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2056576 (E.D.Mich.)
(Cite as: 2006 WL 2056576 (E.D.Mich.))

**H**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Michigan,
Southern Division.
Ronald CUNNINGHAM, Plaintiff,
v.
VAN RU CREDIT CORPORATION, Defendant.
No. 06-10452.

July 21, 2006.

Curtis C. Warner, Edelman, Combs, Chicago, IL,
for Plaintiff.

David M. Schultz, Hinshaw & Culbertson, Chicago,
IL, for Defendant.

*OPINION AND ORDER*

LAWRENCE P. ZATKOFF, District Judge.

*1 This matter is before the Court on Defendant's
motion to stay discovery [docket # 11] and
Plaintiff's motion for extension of time to respond
to Defendant's motion to compel arbitration pursu-
ant to Rule 56(f) [docket # 16]. Both parties have
filed responses and replies. The Court finds that the
facts and legal arguments are adequately presented
in the parties' papers and the decisional process
would not be significantly aided by oral argument.
Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it
is hereby ORDERED that the motions be resolved
on the briefs submitted. For the reasons set forth
below, Defendant's motion is GRANTED IN
PART, and Plaintiff's motion is GRANTED.

## II. BACKGROUND

### A. Factual Background

Plaintiff is the holder of a credit card issued by
Capital One. In 2005, Plaintiff received a letter al-
legedly from Capital One stating that Plaintiff's ac-
count was delinquent, and suggesting that Plaintiff
work with Defendant Van Ru to develop a payment
plan. Plaintiff claims that although the letter pur-
portedly was from Capital One, it had been sent at
the instigation of Defendant. Plaintiff claims that
Defendant's alleged role in the sending of the letter
violated the Fair Debt Collection Practices Act.

### B. Procedural Background

Plaintiff filed suit on February 1, 2006. On April
17, 2006, Defendant filed a motion to compel arbit-
ration, based on an alleged arbitration provision in
the contract between Plaintiff and Capital One. On
April 21, 2006, Defendant filed a motion to stay
discovery. On April 26, 2006, Plaintiff filed a mo-
tion to compel discovery. The Court referred the
motion to Magistrate Judge Majzoub. On May 1,
2006, Plaintiff filed a motion for extension of time
to respond to Defendant's motion to compel arbitra-
tion.

On July 6, 2006, Magistrate Judge Majzoub issued
an Amended Order granting Plaintiff's motion for
discovery in part. Magistrate Judge Majzoub noted
that Plaintiff was not entitled to undertake discov-
ery on the merits before the resolution of Defend-
ant's motion to compel arbitration. Amended Order
at 2. However, Plaintiff was entitled to undertake
discovery on issues related to the enforceability of
the arbitration agreement. *Id.* Magistrate Judge Ma-
jzoub ordered Defendant to produce documents re-
lating to the arbitration agreement. Plaintiff was
also allowed to take the deposition of a Capital One
representative, with questions limited to the arbitra-
tion agreement. *Id.* at 3.

## III. ANALYSIS

On May 1, 2006, Plaintiff filed a response to De-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2056576 (E.D.Mich.)
(Cite as: 2006 WL 2056576 (E.D.Mich.))

fendant's motion to compel arbitration. Plaintiff also filed a motion for extension of time to respond pursuant to Federal Rule of Civil Procedure 56(f). Rule 56(f) provides that:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

*2 Plaintiff has submitted an affidavit stating that there is insufficient factual information to address the threshold issue of whether Defendant is entitled to invoke arbitration.

Defendant argues that Plaintiff is, in fact, attempting to obtain discovery on the merits. Defendant seeks a stay of discovery until the motion to compel arbitration is resolved. The Court agrees that "[i]n a proceeding to compel arbitration, no discovery into the underlying grievance is ordinarily permitted." *Levin v. Ripple Twist Mills, Inc.,* 416 F.Supp. 876, 880 (E.D.Pa.1976). However, the Court also agrees with Magistrate Judge Majzoub that "Defendant is estopped from preventing discovery on the factual issues Defendant raises in support of its motion to compel arbitration." Amended Order at 2.

Thus, the Court grants Defendant's motion for a stay of discovery, except for the discovery regarding the arbitration agreement specifically allowed in Magistrate Judge Majzoub's July 6, 2006, Amended Order. Plaintiff will have until sixty (60) days from the entry of this Order to submit a supplemental response to Defendant's motion to compel arbitration. Defendant may reply to the response.

## V. CONCLUSION

For the above reasons, Defendant's motion to stay discovery is GRANTED IN PART. Discovery will

be stayed, except for the discovery specifically permitted by Magistrate Judge Majzoub's July 6, 2006 Amended Order. Plaintiff's motion for extension of time to respond to Defendant's motion to compel arbitration is GRANTED. Plaintiff may file a supplemental response within sixty (60) days from entry of this Order. Defendant may reply to the response.

IT IS SO ORDERED.

E.D.Mich.,2006.
Cunningham v. Van Ru Credit Corp.
Not Reported in F.Supp.2d, 2006 WL 2056576 (E.D.Mich.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d, 2008 WL 1925100 (D.Colo.)
(Cite as: 2008 WL 1925100 (D.Colo.))

C Only the Westlaw citation is currently available.

United States District Court,
D. Colorado.
FRONTIER STEEL BUILDINGS CORP., a Colo-
rado corporation, Plaintiff,
v.
S.J. AMOROSO CONSTRUCTION CO., INC., a
California corporation, Defendants.
Civil Action No. 08-cv-00408-MSK-KLM.

May 1, 2008.

John Alexander Meininger, John A. Meininger, At-
torney at Law, Denver, CO, for Plaintiff.

Janette George Leonidou, Leonidou & Rosin, Moun-
tain View, CA, for Defendants.

## MINUTE ORDER

KRISTEN L. MIX, United States Magistrate Judge.

## ORDER ENTERED BY MAGISTRATE JUDGE
## KRISTEN L. MIX

*1 This matter is before the Court on Plaintiff's [un-
opposed] Motion to Vacate Scheduling Conference
Pending Disposition of Defendant's Motion to
Dismiss for Lack of Personal Jurisdiction, or Im-
proper Venue, or, in the Alternative, Motion to
Transfer the Case to the District of California and
for Temporary Stay of Discovery [Docket No. 9;
filed April 30, 2008] (the "Motion to Vacate and for
Stay"). The Court has reviewed the Motion to Vacate
and for Stay, the entire case file and applicable case
law and is sufficiently advised in the premises. Ac-
cordingly, IT IS HEREBY ORDERED that the Mo-
tion to Vacate and for Stay is GRANTED, as set
forth below.

Plaintiff moves this Court to vacate the Scheduling
Conference currently set for May 7, 2008, and to stay
all corresponding Fed.R.Civ.P. 26 deadlines until
resolution of Defendant's pending Motion to Dismiss
[Docket No. 6; filed April 3, 2008].

Although a stay of discovery is generally disfavored
in this jurisdiction, the Court has broad discretion to
stay an action while a Motion to Dismiss is pending
pursuant to Fed.R.Civ.P. 26(c). See String Cheese
Incident, LLC v. Stylus Shows, Inc., 2006 WL
894955, at *2 (D.Colo. Mar. 30, 2006).

In weighing the factors set forth for determining the
propriety of a stay, the Court finds that a stay is ap-
propriate here. Id. First, the Court balances the Plain-
tiff's desire to proceed expeditiously with his case
against the burden on Defendants of proceeding for-
ward. Id. Application of this factor is unique in this
case because Plaintiff apparently does not seek to
proceed with its case for the time being. In addition,
Defendant has filed a Motion to Dismiss asserting,
inter alia, that the Court lacks personal jurisdiction.
Defendant has done more than offer conclusory as-
sertions that jurisdiction is lacking-it has filed a Mo-
tion to Dismiss supported by legal analysis.[FN1] In
such circumstances, the Court determines that appli-
cation of this factor weighs in favor of the requested
stay. See id. (finding "that subjecting a party to dis-
covery when a motion to dismiss for lack of personal
jurisdiction is pending may subject him to undue
burden and expense, particularly if the motion to
dismiss is later granted").

> FN1. The Court takes no position as to
> whether Defendants' Motion to Dismiss
> should be granted, but merely notes that it
> appears that the Motion is based upon more
> than idle speculation.

The Court also considers its own convenience, the
interests of non-parties, and the public interest in
general. None of these factors prompt the Court to
reach a different result. In fact, the Court notes that
neither its nor the parties' time is well-served by be-
ing involved in the "struggle over the substance of
the suit" when, as here, a dispositive motion involv-
ing jurisdiction is pending. Democratic Rep. of
Congo v. FG Hemisphere Assocs., LLC, 2007 WL
4165397, at *2 (D.C.Cir. Nov. 27, 2007) (unpub-
lished decision) (noting that the reason jurisdictional
defenses should be raised at the outset is to avoid
unnecessary litigation); see also Chavous v. D.C. Fin.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1925100 (D.Colo.)
(Cite as: 2008 WL 1925100 (D.Colo.))

*Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D.
1, 2 (D.D.C.2001) ("A stay of discovery pending the
determination of a dispositive motion 'is an emi-
nently logical means to prevent wasting the time and
effort of all concerned, and to make the most efficient
use of judicial resources.' " (citations omitted)).
Likewise, the imposition of a stay pending a decision
on a dispositive motion that would fully resolve the
case· "furthers the ends of economy and efficiency,
since if [the motion] is granted, there will be no need
for discovery." *Chavous*, 201 F.R.D at 5. Finally,
this case relates to breach of contract issues and nei-
ther party has asserted any compelling nonparty or
public interests triggered by the facts at issue.

*2 Accordingly, IT IS HEREBY **ORDERED** that the
Motion to Vacate and for Stay is **GRANTED.** The
Scheduling Conference set for May 7, 2008 is **VA-
CATED** and the case is **STAYED,** until such time as
the Court rules on Defendant's Motion to Dismiss.

IT IS FURTHER **ORDERED** that the Parties shall
file a written status report with the Court on or before
**June 15, 2008.**

D.Colo.,2008.
Frontier Steel Bldgs. Corp. v. S.J. Amoroso Const.
Co., Inc.
Not Reported in F.Supp.2d, 2008 WL 1925100
(D.Colo.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

.

Not Reported in F.Supp., 1994 WL 702004 (S.D.N.Y.)
(Cite as: 1994 WL 702004 (S.D.N.Y.))

**H**Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Mark GANDLER and International Sports Advisors
Co., Plaintiffs,
v.
Andrei NAZAROV, Defendant.
No. 94 Civ. 2272 (CSH).

Dec. 14, 1994.

*MEMORANDUM OPINION AND ORDER*

HAIGHT, District Judge:

*1 Three issues in this breach of contract action are now before the Court: (1) Whether the law firm of Berkovich & McMenamin should be disqualified from representing plaintiffs; (2) Whether plaintiffs are entitled to Rule 11 sanctions based on defendant's motion for disqualification; and (3) Whether discovery should be stayed pending resolution of defendant's motion to dismiss for lack of personal jurisdiction. I will consider each of these issues in turn.

1. Law Firm Disqualification

The Court is presented with the issue of whether vicarious disqualification of a law firm is warranted when one of the firm's attorney's is disqualified under the advocate-witness rule.

Plaintiffs had previously been represented by Alexander Berkovich, a partner in the firm of Berkovich & McMenamin. The underlying action surrounds a contract allegedly entered into by the parties.

Plaintiff International Sports Advisors Co. ("ISA") is in the business of representing professional hockey players in the National Hockey League ("NHL"). Plaintiff Mark Gandler is a principal of ISA. In May of 1992, plaintiffs entered into a written Representation Agreement with defendant Andrei Nazarov, at the time a 17-year old Russian hockey player aspiring to play in the NHL in the United States. This Agreement provided that ISA would represent Nazarov in his attempts to secure employment in the NHL, in return for which Nazarov would pay ISA a commission.

In April of 1993, Nazarov informed ISA that he was terminating the Representation Agreement. Plaintiffs maintain that this attempted termination placed Nazarov in breach of the Representation Agreement, prompting them to institute the present suit. Nazarov contends that the contract is unenforceable, in whole or in part, because the terms of the contract were never adequately explained to him, he was never provided a Russian translation of the contract, and the terms of the contract are inherently unfair.

Of particular significance here is a dispute over the extent to which plaintiffs translated and explained the terms and meaning of the Representation Agreement to Nazarov. On May 15 and 16, 1992, Berkovich met with Nazarov and Nazarov's father to discuss the Representation Agreement. Berkovich maintains that his efforts at those meetings adequately conveyed to Nazarov the import of the various provisions of the Representation Agreement. Nazarov disputes the scope of the efforts that Berkovich says he made, and contends that they were entirely inadequate.

It is thus apparent that a key issue is what happened at those meetings in May of 1992. Aware of the centrality of this issue, this Court, on July 1, 1994, raised with counsel the possibility that Berkovich would need to serve as a witness at trial, and that this possibility might merit disqualification of Berkovich under the advocate-witness rule.

After allowing the parties an opportunity to present arguments on the issue, this Court issued an opinion on July 27, 1994, finding that Berkovich should be disqualified as counsel. That ruling was grounded on Disciplinary Rule ("DR") 5-102(A), which reads:

"If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer ought to be called as a witness on behalf of his own client, the lawyer shall withdraw as an advocate before the tribunal, except that the lawyer may continue as an advocate and may testify in the circumstances enumerated in DR 5-101(B)(1)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 702004 (S.D.N.Y.)
(Cite as: 1994 WL 702004 (S.D.N.Y.))

through (4)."

*2 Applying this Rule, this Court wrote:

"Berkovich was intimately involved in the negotiation and execution of the Representation Agreement. Absent his testimony, it will be impossible for the plaintiffs to explain or rebut defendant's testimony. *See MacArthur v. Bank of New York,* 524 F.Supp. 1205, 1207 (S.D.N.Y.1981) (applying a "significantly useful" standard rather than a "necessary" standard). The mandatory direction of DR 5-102(A) requires that in those circumstances, an attorney be disqualified."

Following the disqualification of Berkovich, Paul McMenamin, Berkovich's law partner, informed the Court by letter that he would be substituting as counsel for plaintiffs.[FN1] By letter to the Court dated August 11, 1994, defendant argues that since Berkovich was disqualified, the lawyers in Berkovich's firm should be vicariously disqualified, and that McMenamin should therefore not be allowed to substitute as counsel. In its reply papers, plaintiff maintains that relatively recent revisions to the New York Code of Professional Responsibility dictate that Berkovich's firm should not be disqualified.

*Discussion*

Attorney disqualification and vicarious disqualification of an attorney's law firm are in the discretion of the court. *Kubin v. Miller,* 801 F.Supp. 1101 (S.D.N.Y.1992). Nonetheless, the cases are uniform in holding that pursuant to Disciplinary Rule 5-102(A) of the New York Code of Professional Responsibility (22 NYCRR 1200.21), an attorney's firm should not be disqualified simply because that attorney will testify on behalf of his client. *Talvy v. American Red Cross,* 1994 WL 593353 (N.Y.A.D. 1st Dep't 1994); *Tisby v. Buffalo General Hospital,* 1994 WL 522792 (W.D.N.Y.1994); *Kubin,* 801 F.Supp. at 1114; *Kaplan v. Maytex Mills, Inc.,* 590 N.Y.S.2d 136 (N.Y.A.D. 2nd Dep't 1992); *Minami International Corp. v. Clark,* 1991 WL 102464 (S.D.N.Y.1991); *Paretti v. Cavalier Label Company, Inc.,* 722 F.Supp. 985, 988-89 (S.D.N.Y.1989).

In its opposition papers, defendant cites a number of cases that reached an opposite result, holding that vicarious disqualification of a law firm follows after one of the firm's attorney's is disqualified as a witness. These cases, however, all predate 1990, before the New York Code of Professional Responsibility was revised to permit a law firm to continue representation even if one attorney in the firm is required to testify. *Kaplan,* 590 N.Y.S. at 137.[FN2]

Given that the cases cited by defendant are no longer good law, the only component of defendant's argument that might plausibly allow a finding in its favor is its contention that disqualification is in the discretion of the Court.[FN3] Indeed, defendant acknowledges that its cited cases predate the 1990 revisions to the disciplinary rules, but maintains that the policy reasons cited for the old rule should still guide the Court in its exercise of discretion.

While defendant is correct that this Court has the discretion to disqualify Berkovich's law firm, it has offered no reason why the Court, in exercising its discretion, should not be guided by the revised disciplinary rules. Vicarious disqualification of a law firm is discretionary because the New York Code of Professional Responsibility is not legally binding on the federal courts in New York. *See, e.g. United States v. Perlmutter,* 637 F.Supp. 1134, 1137 (S.D.N.Y.1986). Nonetheless, the ethical guidelines contained in the New York Code of Professional Responsibility, and the cases applying those guidelines, are highly instructive to the Court in arriving at an equitable resolution of the disqualification issue.

*3 The 1990 revisions reflected a growing consensus that vicarious disqualification of a law firm should occur only rarely, and that the reasons traditionally stated for disqualifying the firm when one of its attorneys will testify were no longer compelling. *See, e.g., Paretti,* 772 F.Supp. at 988-89.[FN4] Undoubtedly, there is a clear public policy in preventing an individual attorney from being both trial counsel and witness. *See, e.g., Paretti, 722 F.Supp. at 988.*[FN5] As to the attorney's firm, however, the New York State Bar Association argued, in recommending the revision to the disciplinary rules at issue here, that "[t]he change is consistent with the public policy of avoiding confusion between the lawyer's role as advocate and witness without unduly interfering with the client's ability to be represented by counsel of the client's choice." *New York State Bar Ass'n, Report of the Special Committee to Consider Adoption of ABA Model Rules of Professional Conduct,* 21 (1984).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 702004 (S.D.N.Y.)
(Cite as: 1994 WL 702004 (S.D.N.Y.))

Given that those with an expertise in formulating the ethics of the profession feel that public policy is best served by not disqualifying a firm when one of its attorneys must serve as a party witness, it is wise for this Court to adopt that same view in reaching an equitable resolution of the present case. Indeed, as the cases cited earlier show, those federal courts that have considered the revisions have embraced them as well.

Therefore, defendant having offered no reason why the Court's discretion should be exercised in its favor, and the weight of authority being in favor of no vicarious disqualification in the present situation, defendant's motion to disqualify the firm of Berkovich & McMenamin is denied. McMenamin may therefore substitute as counsel for plaintiffs.

McMenamin has also moved to be admitted to practice before this Court pursuant to Local Rule 2(C) of the United States District Courts for the Southern District. He has submitted the required documentation, and his motion is granted.

2. Rule 11 Sanctions

McMenamin, in his letter opposing disqualification, asks the Court to impose Rule 11 sanctions upon defendant for making what he believes is a frivolous disqualification motion. It is this Court's policy to entertain Rule 11 motions only at the conclusion of the case. Therefore, McMenamin's request for Rule 11 sanctions is denied without prejudice and is freely renewable at the conclusion of the case.

3. Discovery

On July 5, 1994, this Court ordered that discovery in this case be stayed. Prior to the issuance of that Order, defendant had argued that a stay was warranted, since defendant had made a motion to dismiss for lack of personal jurisdiction, potentially obviating the need to engage in costly discovery. Plaintiffs opposed this motion, and expressed their belief that discovery should proceed expeditiously, since difficulties were perceived in finding an opportunity to depose defendant once the NHL season had begun.[FN6]

\*4 The July 5 Order staying discovery, however, was not a ruling on whether discovery should be stayed pending adjudication of the motion to dismiss. Rather, the Court stayed discovery pending resolution of the motion to disqualify counsel. As this opinion holds, that motion is denied. Plaintiffs have thus moved to lift the stay and begin discovery.

It is well-settled that a district court has discretion to halt discovery pending its decision on a motion to dismiss. *Chrysler Capital Corporation v. Century Power Corp.*, 137 F.R.D. 209, 211 (S.D.N.Y.1991); *Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127, 130 (2d Cir.1987). Defendant's motion to dismiss based on lack of personal jurisdiction is potentially dispositive, and appears to be not unfounded in the law. In addition, plaintiffs have not presented any evidence to suggest that they will be unfairly prejudiced by a stay. Therefore, because the adjudication of the pending motion to dismiss might avoid the need for costly and time-consuming discovery, all discovery in this case is hereby stayed pending resolution of defendant's motion to dismiss.

The pending motion to dismiss is *sub judice*, and will be resolved in due course.

SO ORDERED.

> FN1. McMenamin also applied for *pro hac vice* admission before this Court.
>
> FN2. Prior to the revision, DR 5-102(A) read:
>
> "If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101(B)(1) through (4)." (emphasis added).
>
> FN3. If Berkovich had been disqualified due to a conflict of interest, or if he were going to offer testimony adverse to his client, then

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 702004 (S.D.N.Y.)
(Cite as: 1994 WL 702004 (S.D.N.Y.))

> disqualification of the firm might be war-
> ranted. As this Court's July 27, 1994, opin-
> ion made clear, however, Berkovich will be
> testifying, if at all, only on behalf of his cli-
> ent.

> FN4. Indeed, the American Bar Associa-
> tion's Code of Professional Responsibility,
> as well as the Model Rules of Professional
> Conduct, both embody the principle that vi-
> carious disqualification is no longer neces-
> sary when an individual attorney is disquali-
> fied as a necessary witness. *Kubin,* 801
> F.Supp. at 1113-14.

> FN5. "[The] cases explain that D.R. 5-
> 102(A) is designed to avoid the public per-
> ception that the lawyer as witness is distort-
> ing the truth for the sake of a client, or is en-
> hancing his own credibility as an advocate
> by taking an oath as a witness, and is also
> designed to deny opposing counsel the un-
> fair and difficult task of cross-examining an
> adversary and impeaching the adversary's
> credibility." *Paretti,* 722 F.Supp. at 988.

> FN6. A difficulty that, sadly, no longer
> seems present.

S.D.N.Y.,1994.
Gandler v. Nazarov
Not Reported in F.Supp., 1994 WL 702004
(S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2001 WL 812224 (S.D.N.Y.)
(Cite as: 2001 WL 812224 (S.D.N.Y.))

**H**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
INTERTEC CONTRACTING A/S Intertec
(Gibraltara) Ltd., and Intertec Overseas Limited,
Plaintiffs,
v.
TURNER STEINER INTERNATIONAL, S.A.;
Turner Steiner East Asia Limited; and the Turner
Corporation, Defendants.
No. 98 Civ. 9116(CSH).

July 18, 2001.

*MEMORANDUM OPINION AND ORDER*

HAIGHT, Senior J.

*1 This case is before the Court on motions by the plaintiffs (1) for an order remanding the case to the state court for trial on the merits, and (2) for an award of costs and expenses, including attorney's fees, incurred as the result of (a) the defendants' removal of the case to this Court and (b) the resolution of a discovery dispute during the time the litigation was pending here.

Both parties agree that a remand to the Supreme Court of the State of New York, New York County, is now required. Part III of this Opinion will include an Order to the Clerk directing a remand. This Court retains jurisdiction for the sole purpose of adjudicating plaintiffs' second motion for costs and attorney's fees, an issue which does not implicate in any way the trial on the merits of plaintiffs' claims against defendants, to be resolved in state court.

This Court's Order dated April 25, 2001, bifurcated the plaintiffs' claim for costs and expenses, including attorney's fees. The Court will first decide whether, under governing law, plaintiffs are entitled to any award. If that question is answered in the af-

firmative, the Court will then determine the amount.

## 1. *BACKGROUND*

The factual background of this case was discussed at length in a prior opinion of this Court, familiarity with which is assumed. *Intertec Contracting A/S, et al. v. Turner Steiner International, S.A., et al.,* 98 Civ. 9116, 2000 WL 709004 (S.D.N.Y. May 31, 2000). The following recitation of the relevant facts, and subsequent developments, will suffice for purposes of deciding this motion.

This case originated in a commercial contract to construct office towers in Colombo, Sri Lanka. The developer, Overseas Realty (Ceylon) Ltd. ("ORCL"), entered into a contract with the above-captioned defendants (collectively referred to as "Turner"), providing, in part, that Turner would supply labor, materials and services to construct the towers. This contract is referred to as the "General Contract."

Turner then subcontracted to the plaintiffs (collectively referred to as "Intertec") portions of the General Contract for construction of the towers. This contract is referred to as "the Subcontract."

After the project encountered difficulties, Intertec brought an action against Turner in New York State Supreme Court, New York County, claiming that Turner had not paid monies owed to Intertec under the terms of the Subcontract. Turner removed Intertec's action to this Court, citing as the basis for removal the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"). The Convention was enacted into domestic legislation by Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201 *et. seq.* 9 U.S.C. § 205 provides that "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or de-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 812224 (S.D.N.Y.)
(Cite as: 2001 WL 812224 (S.D.N.Y.))

fendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States...."

\*2 The basis for Turner's removal was its mistaken belief that Intertec was bound by the Subcontract to arbitrate its dispute with Turner since the Subcontract incorporated by reference an arbitration agreement found in the General Contract between ORCL and Turner.

This Court concluded that "Turner's sole factual predicate for its removal of Intertec's state court action, the existence of an arbitration agreement binding upon Intertec, is not well founded," and ruled for the plaintiff by denying the defendants' motion to compel arbitration, *Intertec Contracting A/S,* 2000 WL 709004 at *12. While "[o]rdinarily this would result in an order remanding the case to the state court," I deferred the question of remand to allow the defendants an opportunity to appeal the Court's denial of its petition to compel arbitration. *Id.*

Turner then appealed to the Second Circuit where this Court's ruling was affirmed. *Intertec Contracting A/S, et. al. v. Turner Steiner,* No. 00-7796, 2001 WL 266997 at *1 (2d Cir.2001)(affirmed by Summary Order).

Intertec now asks the Court for an award of its costs and expenses, including attorney's fees, incurred as a result of the defendants' removal of the case to this Court.

While litigation on the Second Circuit appeal was continuing, a dispute broke out with respect to an exchange of documents between the parties. That dispute, over which this Court presided under the circumstances related *infra,* lasted from September until December of 2000. At the core of the dispute was an agreement by which Turner committed, *inter alia,* to turn over various documents, located at that time in Sri Lanka, to Intertec. These documents are referred to as the "Turner project documents." As discussed in greater detail *infra,* though

it was originally believed by both parties that the documents would arrive months earlier, Intertec did not receive the documents until December of 2000, due to a series of delays in their production, each of which was promptly and vehemently brought to the Court's attention.

In addition to the costs incurred as a result of the removal, Intertec additionally seeks an award for its costs and expenses, including attorney's fees, incurred as a result of this delay in document production.

## II. *DISCUSSION*

### A. *Removal*

As noted, Turner based its removal of the action from state court on the Convention. The Convention permits removal to a federal district court of a state court action which "relates to an arbitration agreement or award falling under the Convention," 9 U.S .C. § 905. The case at bar turned upon the question whether the pertinent conracts contained an arbitration agreement "falling under the Convention" between Intertec and Turner.

In its removal action, Turner argued that while the Subcontract did not contain a provision requiring Intertec to arbitrate any dispute with Turner, it believed that a provision in the Subcontract incorporated by reference an arbitration agreement found in the General Contract between Turner and ORCL, thereby binding Intertec to arbitrate with Turner its claims against Turner

\*3 Without reproducing here the analysis the Court made of Turner's claims, which can be found in the opinion reported at 2000 WL 709004 at **2-12, the Court found Turner's logic unavailing. The arbitration provisions of the General Contract were not incorporated by reference in the Subcontract, as the pre-arbitration provisions in the General Contract were a condition precedent for the use of arbitration proceedings, and those provisions were clearly inapplicable to Intertec. As stated *supra,* this conclu-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 812224 (S.D.N.Y.)
(Cite as: 2001 WL 812224 (S.D.N.Y.))

sion was affirmed by the Second Circuit.

Intertec now seeks costs and expenses, including attorney's fees, pursuant to 28 U.S.C. § 1447(c), for the period of time between Turner's removal of the case and the present. § 1447(c) provides:

A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

Turner argues, first, that § 1447(c) is inapplicable to this case, since it was removed under 9 U.S.C. §§ 201 *et. seq.*, rather than under the general removal provisions of 28 U.S.C. § 1441 *et. seq.*, and alternatively, that even if § 1447(c) were applicable to this case, no award under that statute would be appropriate.

Turner's first argument, that 28 U.S.C. § 1447(c) does not apply because the case was removed pursuant to 9 U.S.C. § 205, is unconvincing. Turner argues that § 205 does not incorporate provisions of the general removal statute such as § 1447(c). Unfortunately for Turner, the Second Circuit has specifically held to the contrary.

In *LaFarge Coppee v. Venezolana De Cementos, S.A.C.A.*, 31 F.3d 70 (2d Cir.1994), the court of appeals addressed the appealability of an order by the district court remanding to state court an action removed pursuant to 9 U.S.C. § 205. The court decided that it lacked appellate jurisdiction to consider the remand ordered under 28 U.S.C. § 1447(c) , as it was unappealable under § 1447(d).[FN1] In considering a removal pursuant to § 205, the court held, "Section 205 expressly provides, with an ex-

ception not relevant to this case, that '[t]he procedure for removal of causes otherwise provided by law shall apply....' This language renders applicable the removal provisions of 28 U.S.C. § 1447(c), (d) (1988) ." *Id.* at 71. As the *LaFarge* court made mention, other circuits have agreed with this interpretation. See *In re Ocean Marine Mutual Protection and Indemnity Ass'n*, 3 F.3d 353, 355-56 (11th Cir.1993); *In re Amoco Petroleum Additives Co.*, 964 F.2d 706, 712 (7th Cir.1992). To this list I add the following subsequently decided cases: *Transit Casualty Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 623 (8th Cir.1997), and *Severonickel v. Gaston Reymenants*, 155 F.3d 265, 266 (4th Cir.1997). While *LaFarge* considered the appealability provisions of the general removal statute, no principled reason exists for reaching a different conclusion with respect to the statute's provisions for costs and fees.

> FN1. "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise ...," except in circumstances not relevant here. 28 U.S.C. § 1447(d).

**\*4** Turner cites no authority to the contrary. Instead, Turner relies solely on *Hill v. Citicorp*, 804 F.Supp. 514 (S.D.N.Y.1992), a case which is easily distinguished. In *Hill*, the court considered the applicability of the 30-day time period requirement of § 1446(b) to a case removed under 12 U.S.C. § 632. Under § 1446(b) a 30-day time period exists within which removal petitions must be filed, but under § 632 removal of matters involving international banking can be removed "at any time before the trial thereof." The court determined, in an instance where the two statutes were in explicit disagreement on the time period rule, that § 1446(b) had not been "projected into the removal provisions of section 632." *Id.* at 517. Such reasoning is not analogous here. Not only was the court in *Hill* considering a statute altogether different from 9 U.S.C. § 205 (despite some similarities in the language of the laws), the court found a direct conflict between the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

time period requirements of § 632 and § 1446(b). There is no such contradiction in the language of § 205 and § 1447(c). More importantly, *Hill* was decided prior to the Second Circuit holding in *La-Farge* that the general removal provisions apply to removals under § 205. It is the latter decision which binds this Court, and I follow its clear holding.

Turner's next argument is that 28 U.S.C. § 1447(c) is inapplicable because this Court did not lack subject matter jurisdiction over this case, and it was not remanded for procedural defect.

Though the language of § 1447(c) does not clearly restrict the bases upon which a remand might allow for the non-removing party to recover costs and expenses, including attorney's fees, the statute refers explicitly to "defect [s]" in the removal and lack of "subject matter jurisdiction" as possible bases for removal under subsection (c), dealing with costs and expenses. At least one court in this circuit has held that such language "allows a court discretion to grant costs and fees in two circumstances: where subject matter is lacking and where there is a defect in the removal ." *In re Lawrence,* 233 B.R. 248, 253 (N.D.N.Y.1999), *citing LaMotte v. Roundy's Inc.,* 27 F.3d 314, 316 (7th Cir.1994). Without deciding whether other bases might be appropriate under § 1447(c) for a recovery of costs and expenses, the Court believes it is beyond doubt that the case at bar must be remanded for lack of subject matter jurisdiction.

In arguing that the Court has maintained a general subject matter jurisdiction in this case, Turner loses sight of the fact that the Court exercised a limited subject matter jurisdiction under 9 U.S.C. § 205 for the sole purpose of deciding whether an arbitration provision bound Intertec so that the Court could further exercise its subject matter jurisdiction to compel arbitration. In other words, the Court had subject matter jurisdiction to decide whether it had subject matter jurisdiction. In deciding that no such arbitration provision applied to Intertec, the Court concluded that it did not have subject matter jurisdiction in the general sense under § 205, because

the necessary condition precedent for the exercise of such jurisdiction, an "arbitration agreement" falling under the Convention, did not exist. As provided for in the statute itself "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." § 1447(c). I decided the court lacked subject matter jurisdiction, and would have remanded the case at that time but for my intent to allow Turner to file an appeal.

**\*5** The cases support this analysis. In *Transit Casualty Co.,* the plaintiff filed an action in Missouri state court against certain underwriters at Lloyd's of London for alleged failure to pay reinsurance recoveries and interference with its liquidation. Lloyd's removed the case to federal district court pursuant to 9 U.S .C. § 205. Transit by that time in receivership, the receivership filed a motion to remand, which the Court granted. The district court held that the Convention did not apply because the contract at issue was "preclud[ed]" by state law and because a "service-of-suit clause waived the underwriters' right to remove." 119 F.3d at 622. Seeking review of the remand order, Lloyd's urged that the district court did not find that it lacked subject matter jurisdiction (as that would foreclose review by the court of appeals under § 1447(d)) in making its decision. The circuit court disagreed, holding "[w]e disagree with the underwriters' characterization of the district court's remand order and interpret the order as holding that it lacked subject matter jurisdiction and remanding on that basis." *Id.* at 623. In language equally applicable to the case at bar, the court found that "[because] the parties' reinsurance agreements must fall under the Convention in order for the underwriters to remove under 9 U.S.C. § 205, the district court's finding that the Convention does not apply to this cause of action resulted in a lack of removal jurisdiction and necessitated remand." *Id.* at 623-24.

The Second Circuit recently articulated this principle in *Smith/Enron Cogeneration Ltd. v. Smith Cogeneration Int'l,* 198 F .3d 88 (2d Cir.1999). The

Not Reported in F.Supp.2d, 2001 WL 812224 (S.D.N.Y.)
(Cite as: 2001 WL 812224 (S.D.N.Y.))

petitioners there removed the case pursuant to the Convention, seeking to compel the respondents to arbitrate a contract dispute. In that case, as in the case at bar, Chapter 2 of the FAA provided the "only basis for federal jurisdiction." *Id.* at 92. The district court in *Smith/Enron* proceeded in the same fashion as I did. "In considering whether 'a particular dispute is arbitrable,' a court must first decide 'whether the parties agreed to arbitrate'." *Id.* at 95, *citing Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 294 (2d Cir.1999).<sup>FN2</sup>

> FN2. Unlike the case at bar, the court in *Smith/Enron* found that the Convention *did* apply to the dispute.

Having examined the two bases offered by Turner for finding § 1447(c) inapplicable to this matter, I find both of them unconvincing.

The Court must now determine whether Intertec has made a showing sufficient to justify the imposition of costs and expenses, including attorney's fees, upon Turner pursuant to § 1447(c). The Court determines that it has not.

28 U.S.C. § 1447(c) provides in part that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The seminal case in this circuit interpreting this provision is *Morgan Guaranty Trust Co. v. Republic of Palau,* 971 F.2d 917 (2d Cir.1992). In *Morgan* the Court addressed the "lack of clarity in the case law" by clarifying, somewhat, the standard to apply in determining the appropriateness of attorney's fees. *Id.* at 923. The court held that a district court is afforded "a great deal of discretion and flexibility" in "fashioning awards of costs and fees," and it is now clear that a finding of "bad faith" by the removing party is not a necessary condition for granting such an award. *Id.* at 924. After Congress deleted from the language of § 1447(c) the requirement that the case be "removed improvidently," courts have interpreted that change to mean that something less

than bad faith justifies the imposition of costs and fees. *Id.* at 923.

*6 Though the Court has broad discretion to award such costs and expenses, district courts typically do not make such awards "unless the removal appears to have been frivolous and not plausibly supported by some existing case law." *Hayman-Chaffey v. Landy,* 96 Civ.1900, 1996 WL 282051, at *3 (S.D.N.Y. May 28, 1996), *citing Forum Insurance Co. v. Texarkoma Crude & Gas Co.,* 92 Civ. 8602, 1993 WL 228023 at *3 (S.D.N.Y. June 22, 1993).

Despite Intertec's insistence that the decision to award attorney's fees is "completely within the district court's discretion, without regard to bad faith, frivolousness, colorability or the like," a careful examination of comparable cases in this circuit demonstrates that in exercising its discretion, a district court typically looks to precisely those descriptions Intertec denigrates, *to wit,* colorability, frivolousness or bad faith. Intertec's Reply Memorandum in Support of its Motion to Remand and for Costs and Expenses, at 3. See, *e.g. Natoli v. First Reliance Standard Life Insurance Co.,* 00 Civ. 5914. 2001 WL 15673 at *5 (S.D.N.Y. Jan. 5, 2001) ("[i]n exercising their discretion, district courts look to whether the grounds for removal were ... colorable, even if ultimately unpersuasive"), *quoting Sullivan v. American Int'l Group, Inc.,* 00 Civ. 6403, 2000 WL 1738413 at *5 (S.D.N.Y. Nov. 21, 2000)(denying award where basis for removal was "colorable"); *Agapov v. Negodaeva,* 93 F.Supp.2d 481, 484 (S.D.N.Y.2000)(denying motion for attorney's fees where "no evidence" existed that the removing party "acted in bad faith in seeking removal, or that her removal application was frivolous or plainly unreasonable"); *Wallace v. Wiedenbeck,* 985 F.Supp. 288, 291 (N.D.N.Y.1998)(awarding fees where the "removal basis" was "contrary to overwhelming authority on each of the stated grounds"); *Forum Insurance,* 1993 WL 228023, at *3 (denying attorney's fees where the arguments for removal were "not frivolous and [ ] plausible supported by some existing case law").

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 812224 (S.D.N.Y.)
(Cite as: 2001 WL 812224 (S.D.N.Y.))

Intertec admits that "Turner's removal ... was not frivolous or in bad faith, but was merely weak and not well founded." Intertec's Reply Memorandum at 4. Indeed, Turner's arguments were not well founded in the sense that they were ultimately unpersuasive. But lack of persuasiveness cannot be determinative, for that logic would establish a *per se* rule that all instances of remand for removals made in error must result in the imposition of costs and expenses against the removing party.

Though the Court believed that Turner unduly stretched the language of the Subcontract when it argued that the arbitration provisions of the General Contract applied as well to Intertec, Turner's argument, however flawed, was the result of a reasoning more complex than a simple misreading of a statute or a patently obvious ignoring of clearly applicable Second Circuit authority. As is the case with most contentious litigation, without evidence of bad faith, the parties appear to have done little more than zealously defend their clients' respective positions, using existing case law in good faith disagreement. In that regard, and as this Court's prior opinion demonstrates, the Second Circuit has been required to decide upon a number of occasions whether an arbitration clause contained in one of several related contracts should be regarded as incorporated in the others. That issue can be complex, and was so in the case at bar.

*7 Judging by the standards of "overall fairness given the nature of the case, the circumstances of the remand, and the effect on the parties," I will not exercise my discretion to award costs and expenses in this case on the basis of Turner's removal. *Frontier Insurance Co. v. MTN Owner Trust,* 111 F.Supp.2d 376, 381, *citing Morgan,* 971 F.2d at 923-24. The Court believes that Turner's argument for removal was colorable, that is, plausibly supported by existing case law, "although ultimately incorrect." *Natoli,* 2001 WL 15673 at ⃰5. For that reason, the Court denies the plaintiff's request for costs and expenses, including attorney's fees, incurred as a result of Turner's removal.

B. The "Turner Project Documents"

Rule 37(b)(2), Fed.R.Civ.P., provides that a district court may impose sanctions, among them the imposition of expenses including attorney's fees, where a party fails to comply with an order of the Court directing such party to "provide or permit discovery." FN3 Intertec asks the Court to award it costs and expenses, including attorneys' fees, for Turner's failure to comply with Orders of this Court to provide documentary discovery.

> FN3. "[T]he court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." Rule 37(b).

The history surrounding these orders must be examined at some length.

As is the general practice of district courts, a stay of discovery was imposed in this case while the motion to compel arbitration was pending before the Court. In the Court's May 30, 2000 opinion, denying Turner's motion to compel arbitration, I vacated the stay of pretrial discovery. *Intertec,* 2000 WL 709004 at ⃰12. Turner then filed a motion of appeal with the Second Circuit.

After doing so, Turner moved this Court for a reimposition of the stay of discovery, on the grounds that the district court was divested of jurisdiction pending appeal. Oral argument was heard on that motion on October 23, 2000. Prior to the filing of this motion, however, an agreement was reached between the parties, though never filed with the Court, for a mutual exchange of documents, including the Turner project documents located at that time in Sri Lanka. At the hearing, Turner principally relied on *Bradford-Scott Data v. Physician Computer,* 128 F.3d 504 (7th Cir.1997), in arguing that the district court was divested of jurisdiction in

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 3:10-cv-01489-WWE   Document 29-2   Filed 12/09/10   Page 32 of 45

Page 7

Not Reported in F.Supp.2d, 2001 WL 812224 (S.D.N.Y.)
(Cite as: 2001 WL 812224 (S.D.N.Y.))

this case pending its appeal, pursuant to 9 U.S.C. § 16(a)(1)(B) & (C) (allowing direct appeal from an order denying a petition to order arbitration). In giving my ruling from the bench, I announced my determination that *In re Salomon,* 68 F.3d 554 (2d Cir.1995), the authoritative case in the Second Circuit, despite its "Delphic overtones," gives the district courts *some* discretion in continuing to supervise discovery pending an appeal under § 16(a).
FN4 Transcript of Oral Argument, Oct. 23, 2000 ("Transcript") at 44. While I declined to "leave the Turner interests subject to [the] full panoply of federal discovery," I exercised my "discretion to retain jurisdiction over that aspect of the case for the purpose of the agreement for a mutual exchange of documents, which is clearly reflected in the correspondence," and which both parties agreed they had accepted. Transcript at 46-47, 50-51. To that end, the Court granted Turner's motion to reimpose the stay, "provided, however, that this Court retains jurisdiction and does not include within the stay of further proceedings any disputes, complaints, or demands for relief which may arise out of, and require the resolution of ... the mutual agreement for disclosure of documents." Transcript at 51.

> FN4. A detailed examination of the case law in this area is not necessary to decide this motion. It is sufficient to say that both of the other courts in the Southern District of New York that have dealt with the question of how to interpret *In re Salomon* have concluded that it does not absolutely prohibit district courts from taking any action on a case pending an appeal on the question of arbitrability. See *Cendant Corp. v. Forbes,* 72 F.Supp.2d 341, 343 (S.D.N.Y.1999)(holding that a denial of a stay may be granted "in *at least"* cases where the appeal is frivolous or improper, adding "there may be still other bases for denying the stay here sought ...")(emphasis in original); *Satcom v. Orbcomm,* 55 F.Supp .2d 231, 235-236 (S.D.N.Y.1999) (holding that *In re Salomon* "does not

provide a clear answer" to the question, and deciding the issue under the approach taken in the Seventh Circuit's *Bradford* opinion). I conclude that *In re Salomon* grants the district court discretion to take action during the pendency of the appeal, so long as it is "very carefully exercised and in a distinctly limited fashion." Transcript at 44.

*8 Though I expressed my hope that the "increasingly shrill" nature of the exchange of correspondence in this case would become "more calm," Transcript at 50, those hopes were dashed by the subsequent deluge of papers seamlessly faxed to Chambers through the fall and winter of 2000, while conflicts surrounding production of the Turner project documents metastasized.

At least as early as September 25, 2000 a conflict surfaced with regard to the Turner project documents. On that date Intertec asked the Court to direct Turner to send the documents from Sri Lanka by air and not by sea. Letter to the Court dated September 25, 2000. In response, Turner acknowledged that it had been trying to obtain the documents since at least July 2000, and noted that it had advised Intertec that the documents would not likely arrive in the United States until "the end of August or the beginning of September." Turner's Letter to the Court dated September 27, 2000. Turner expressed its understanding that the documents would be placed aboard a vessel and "arrive in New York within 30 days thereafter." *Id.* at 1-2. As would be repeated again and again in the months to come, Turner emphasized its lack of "control over the actions of the Sri Lankan authorities," allegedly responsible for the delay. *Id.* at 2.

In response, the Court issued an Order, dated September 27, 2000, directing Turner to send the documents by "the first commercial aircraft available" if it could not confirm, by October 3, that the documents were "laden on board a vessel that has commenced her ocean voyage with an E.T.A. New York within 30 days of the date of sailing."

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 812224 (S.D.N.Y.)
(Cite as: 2001 WL 812224 (S.D.N.Y.))

Turner responded that while it had not "technically compl[ied] with the Court's Order," the documents were destined to leave on October 5, 2000 aboard the "Kamakura" to arrive in New York on October 27, 2000. Letter to the Court dated October 2, 2000. Intertec offered to recognize this transport arrangement as "within the spirit of Your Honor's order," so long as Turner provided documentation that the documents were laden on board as alleged. Intertec Letter to Court dated October 2, 2000.

In response, I ordered Turner to furnish Intertec with a bill of lading "as soon as it is available." Order dated October 4, 2000.

On October 17, 2000 Turner notified the Court that, to its surprise, the documents were not loaded upon the Kamakura "due to a work slowdown at the port." Turner Letter to the Court dated October 17, 2000. A second letter that day informed the Court that the documents were loaded instead upon "the ship identified as the 'Singapore Bay,'" set to leave Sri Lanka on October 17, 2000 and arrive in New York November 7, 2000.

Intertec wrote the Court to express its dissatisfaction with Turner's explanation. Intertec Letter to the Court dated October 17, 2000. It accused Turner of violating the Court's September Order by not sending the documents by air after learning they were not aboard the Kamakura. Turner's response to Intertec's allegation was that sending the documents by air would have taken longer than placing them aboard the second ship, as they had already cleared customs. Letter to the Court dated October 20, 2000.

*9 The Court held a hearing, on October 23, 2000, on Turner's motion to stay discovery. At that time I made no rulings on the question of whether Turner had violated any orders of the court. It was at that hearing that I expressed my hope for a cease fire. After some days of peace, the battle resumed.

On November 10, 2001, Turner learned that the documents were not aboard the Singapore Bay and

decided, it claimed, to send the documents by air to New York, "anticipating that the documents will arrive by airfreight, via London, in New York by Tuesday, November 21, 2000." Turner's Letter to Intertec dated November 13, 2000, sent to the Court November 13, 2000. Despite prior assurances from counsel at the October hearing that it was so "absolutely remote" as to be a "farflung possibility" that the documents would not arrive on the Singapore Bay, that is precisely what happened. Transcript at 31, 33.

In response to these developments, and a request by Intertec for a conditional order of dismissal if the documents were not delivered by November 22, 2000, the Court issued another order dated November 15, 2000. Intertec Letter to the Court dated November 14, 2000. The Court ordered Turner "to make the project documents available to counsel for Intertec not later than November 27, 2000," with the additional order that failure to comply would result in a $1000 fine holding Turner in contempt, with the fine doubling each succeeding business day. The Court rejected Intertec's application for a conditional default order.

On November 21, 2000, Turner wrote to the Court requesting a one week extension until December 4, 2000, to produce the documents. Letter to the Court dated November 21, 2000. This time, the delay was attributed to holiday closings of the U.S. Customs offices at JFK airport in New York. After initial reluctance, Intertec conceded, in a letter dated November 21, 2000, to the December 4, 2000 date for exchange. The Court then granted the extension of time to not later than December 4, 2000, by Order dated November 22, 2000.

The documents began to be exchanged on December 4, 2000, as confirmed by a telephone conference the Court held with the parties on that date. Though, predictably, disputes continued on matters ranging from the proper method of Bates-stamping to document privilege and competing drafts of a confidentiality agreement, each of which were dutifully brought to the Court's attention, those matters

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 812224 (S.D.N.Y.)
**(Cite as: 2001 WL 812224 (S.D.N.Y.))**

are not relevant to deciding this motion.

As a critical component of the Court's continued jurisdiction with respect to this discrete area of discovery, the Court retains the authority to impose Rule 37(b)(2) sanctions for violations of Court orders which manifest that continued supervision. See *Britton v. Co-op Banking Group,* 916 F.2d 1405, 1410-1412 (9th Cir.1990).[FN5]

> FN5. Turner is simply incorrect, and cites no authority for the proposition, that the Court may not now invoke the Federal Rule of Civil Procedure, at Rule 37 or otherwise, to award expenses including attorneys fees. While the Court denied Intertec the benefits of the full panoply of tools available to parties under those Rules, the Court explicitly retained its supervisory authority with respect to the discovery of these items. Transcript at 46-51.

In order to decide whether an award is appropriate, the Court must decide, in accordance with Rule 37(b)(2), whether Turner violated a Court order without substantial justification. To do so, the Court must revisit these orders.

**\*10** In the Court's September 27, 2000 Order I stated that the plan articulated in Turner's letter to the Court, announcing that the documents would be placed aboard a vessel "this week" (meaning the week of September 24 through September 30, 2000) for shipment to New York, was acceptable "if it is followed." The Court instructed, however, that if "by October 3, 2000 [the following Tuesday] counsel for Turner cannot confirm and represent to the Court that the documents are in fact laden on board a vessel that has commenced her ocean voyage with an E.T.A. New York within 30 days of the date of sailing, the Turner interests are directed to cancel plans for ocean shipment of the documents and arrange for their transportation by the first commercial aircraft available through the exercise of due diligence."

On October 2, 2000 Turner informed the Court that it had not "technically compl[ied] with the Court's Order," insofar as it allowed the documents, at that time, to be laden aboard the Kamakura scheduled to depart three days later, on October 5. Indeed, as Turner conceded, this was a violation of the Order, which required that Turner send the documents by air if it learned that the documents were not, by October 3, "laden on board a vessel *that has commenced* her ocean voyage." (emphasis added). As the Kamakura had not yet commenced her voyage, Turner ought to have sent the documents by air, as instructed. Turner's explanation for the violation, given *ex post,* is unavailing. Though in different circumstances a few days delay in sending the documents might be tolerable, in the context of many months delay, alleged by Turner to have been caused by transport problems beyond its control, the necessity of strict compliance with the letter of the Court's remedial Order of September 27, 2000 should have been obvious to Turner. It was not Turner's call to make in deciding to place the documents aboard ship once it was clear that they were not sailing by October 3, 2000. The Court should have been notified immediately, as required, that the documents were not aboard a vessel by October 3.

The Court's next Order, dated October 4, 2000, instructed Turner to furnish Intertec with a bill of lading as soon as possible. Instead of doing so, Turner wrote to inform that the documents would not appear on a bill of lading, because the documents were not placed aboard the Kamakura, but would instead be placed upon the Singapore Bay. Placing the documents aboard a second ship clearly violated the nature of the Court's September 27, 2000 Order. In no uncertain terms, the Court required delivery by air if the documents were not en route to New York via sea by October 3. Additionally, to the Court's knowledge, no bills of lading were ever sent with respect to either attempted shipment, which comes as no surprise in retrospect because Turner failed to arrange for their delivery aboard any ship.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

The Court's November 15, 2000 Order required
Turner, who decided at that point to send the docu-
ments by air after learning that they were in fact not
placed on the second vessel either, to make the doc-
uments available to Intertec not later than Novem-
ber 27, 2000. The Court subsequently, on Novem-
ber 22, 2000, granted a one week extension until
December 4, 2000 to exchange the documents.

*11 Having reviewed the sequence of orders issued
in this case, it is clear to the Court that Turner viol-
ated the September 27, 2000 Order. That violation
was fundamental and material, rather than technical
and nonprejudicial. Turner's proffered excuse, that
shipping by air would have generated further cus-
toms delays, was belatedly expressed and has the
tinny ring of an afterthought.[FN6]

> FN6. I think it only fair to note at this
> point that, for all that appears from the re-
> cord, the events described in text were
> controlled by the Turner personnel in Sri
> Lanka, rather than by Turner's counsel in
> New York, who perforce had to rely upon
> what their clients were telling them.

Though the Court accepts, having before it no evid-
ence to conclude otherwise, that "unforeseen com-
munication and transportation problems [ ] caused a
delay in the exchange," rather than the delay being
caused by any improper motives, the fact remains
that Turner was obliged under Court order to send
the documents by mail if they were not laden upon
a ship by October 3, 2000. The documents were not
so laden, Turner was made aware of such, and
made the decision, nonetheless, to try placing the
documents aboard two successive ships rather than
send them by air as required. Even assuming those
decisions were made with the best of intentions,
they were made in error, and Turner had no right to
make them, as it was obliged by the Court to act
otherwise. There is no "substantial justification" for
its failure to comply with the Court's Order of
September 27, 2000. Turner's failure to provide a
bill of lading is further evidence of its blasé attitude
toward the orders of this Court. As subsequent

events made clear, the documents would have been
produced much earlier had they been placed upon a
commercial air flight after learning that they were
not aboard a vessel that had set sail by October 3.
That was the purpose of the Court's September 27,
2000 Order.

In view of the foregoing, the Court awards the
plaintiff its costs and expenses, including attorney's
fees, incurred as a result of the violation of the
Court's order to send the documents by air in the
circumstances that developed.

Sanctions under Rule 37(b)(2) are available "after
the court has ordered compliance and the party
ordered has nonetheless failed" to comply with a
discovery demand. *Nabisco, Inc. v. PF Brands,
Inc.,* 191 F.3d 208, 225 (2d Cir.1999). The decision
to award reasonable expenses, including attorneys'
fees, pursuant to Rule 37, is reviewed for an abuse
of discretion, and the court's factual findings will
not be disturbed unless they are shown to be
"clearly erroneous." *Thomas Hoar, Inc. v. Sara Lee
Corp.,* 882 F.2d 682, 687 (2d Cir.1989), *citing In-
wood Laboratories v. Ives Laboratories,* 456 U.S.
844, 855 (1982). As the court in *Thomas Hoar* cor-
rectly noted, "discovery was designed to proceed at
the initiative of the parties with a minimum of court
intervention. The rulemakers framed Rule 37 in re-
cognition of the potential for abuse during the dis-
covery process." *Id.* at 687. For that reason, failure
to comply with discovery orders justly allows the
court to impose costs upon the failing party. See,
*e.g. Selletti v. Carey,* 173 F.3d 104, 110 (2d
Cir.1999)(upholding imposition of a monetary
sanction pursuant to Rule 37(b)(2) where party
failed to comply with discovery requirement). The
Second Circuit has repeatedly stated the importance
of following discovery orders of the Court, warning
that "[a] party who flouts such orders does so at his
peril." *Sieck v. Russo,* 869 F.2d 131, 134 (2d
Cir.1989)(internal citations omitted).

*12 Intertec must now document the expenses and
fees claimed, supported by time records in the form
required by Second Circuit law, *New York State*

*Ass'n for Retarded Children Inc. v. Carey,* 706 F.2d 956 (2d Cir.1983), and must demonstrate to the Court that those expenses were a direct result of Turner's violation. The Court makes no ruling at this time on whether any recoverable fees or expenses were in fact incurred by Intertec.

### III. CONCLUSION

For the foregoing reasons, plaintiffs' request for costs and expenses, including attorney's fees, as a result of Turner's removal of this case is denied.

Plaintiffs' request for costs and expenses, including attorney's fees, incurred as a result of the delayed exchange of the Turner project documents is granted.

In these circumstances, Intertec is directed to file and serve its papers in support of a claim for fees and expenses consistent with this Opinion, on or before August 3, 2001. Turner is directed to file and serve opposing papers on or before August 17, 2001. If so advised, Intertec may file and serve reply papers on or before August 24, 2001. After considering these submissions, the Court will determine the necessity of an evidentiary hearing.

It is SO ORDERED.

S.D.N.Y.,2001.
Intertec Contracting Turner Steiner Intern., S.A.
Not Reported in F.Supp.2d, 2001 WL 812224 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d, 2007 WL 510113 (S.D.N.Y.)
(Cite as: 2007 WL 510113 (S.D.N.Y.))

**H**Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Zohar NIV, individually and as Personal Representa-
tive of the Estate of Decedent Tzila Niv and his mi-
nor children Decedents Gilad Niv and Lior Niv, et
al., Plaintiffs,
v.
HILTON HOTELS CORPORATION and Hilton
International Co., Defendants.
No. 06 Civ. 7839(PKL).

Feb. 15, 2007.

*MEMORANDUM ORDER*

LEISURE, J.

*1 The defendants Hilton Hotels Corporation and
Hilton International Co. move this Court for an order
pursuant to Rule 26(c)(4) of the Federal Rules of
Civil Procedure limiting discovery to issues of *forum
non conveniens* during the pendency of their motion
to dismiss on the grounds of *forum non conveniens*.
For the following reasons, the defendants' motion is
granted.

Background

This action arises out of a car bombing on October 7,
2004 at the Hilton Taba Hotel on the Sinai Peninsula
in Egypt. According to the complaint, the plaintiffs,
or their decedents, were guests at the hotel. The
plaintiffs allege that the defendants failed to provide
adequate security to their guests and bring this action
for negligence and wrongful death. The defendants
have indicated that they intend to move this Court to
dismiss the action on the grounds of *forum non con-
veniens*, and the parties have agreed to a motion
schedule.

Discussion

Rule 26(c) provides that, "for good cause shown," a
district court may make a protective order limiting
discovery to certain matters. Fed.R.Civ.P. 26(c); *see*

*Jones v. Hirschfeld,* 219 F.R.D. 71, 74
(S.D.N.Y.2003) ("a court has discretion to circum-
scribe discovery even of relevant evidence"). " 'The
grant and nature of protection is singularly within the
discretion of the district court and may be reversed
only on a clear showing of abuse of discretion." '
*Dove v. Atlantic Capital Corp.,* 963 F.2d 15, 19 (2d
Cir.1992) (quoting *Galella v. Onassis,* 487 F.2d 986,
997 (2d Cir.1973). Good cause may be shown where
a party has filed, or has sought leave to file, a disposi-
tive motion, the stay is for a short period of time, and
the opposing party will not be prejudiced by the or-
der. *See Spencer Trask Software & Information Ser-
vices, LLC v. RPost Intern. Ltd.,* 206 F.R.D. 367, 368
(S.D.N.Y., 2002); *Anti-Monopoly, Inc. v. Hasbro,
Inc.,* No. 94 Civ. 2120, 1996 WL 101277, at *2, 1996
U.S. Dist. LEXIS 2684, at *6 (S.D .N.Y. March 7,
1996) (collecting cases).

However, while discovery may in a proper case be
limited or stayed pending the outcome of a motion to
dismiss, the issuance of a protective order is by no
means automatic. *See Spencer Trask,* 206 F.R.D. at
368 (citing cases). Two related factors a court may
consider in deciding a motion for a restriction or stay
of discovery are the breadth of discovery sought and
the burden of responding to it. *See Anti-Monopoly,
Inc.,* 1996 WL 101277, at *3, 1996 U.S. Dist. LEXIS
2684, at *6-7. Finally, a court should also consider
the strength of the dispositive motion that is the basis
of the application. *See, e.g., Gandler v. Nazarov,* No.
94 Civ. 2272, 1994 WL 702004, at *4, 1994 U.S.
Dist. LEXIS 17885, at *12 (S.D.N.Y. Dec. 14, 1994)
(stay of discovery should be granted where motion to
dismiss "is potentially dispositive, and appears to be
not unfounded in the law.").

It would be premature for the Court to explore the
merits of the defendants' proposed motion. However,
the Court does note, based on a discussion with coun-
sel at a pre-motion conference, that at this stage the
defendants' motion appears not to be unfounded in
the law. Further, if successful, the motion to dismiss
would result in the case not being litigated in this
forum. The requested protective order would of
course remain in effect only during the pendency of
the motion.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 510113 (S.D.N.Y.)
(Cite as: 2007 WL 510113 (S.D.N.Y.))

\*2 The discovery sought so far does not appear on its face to be unreasonably broad. However, responding to the discovery requests will likely prove burdensome, and if the motion is granted, this burden will likely have served little purpose. Both the plaintiffs and the defendants anticipate that, if the motion to dismiss is granted, the plaintiffs will bring their case in Egypt or elsewhere in the Middle East. (*See* Sentner Decl. ¶ 17, Jan. 25, 2007; Karadaras Aff. at 6, Feb. 12, 2007.) Discovery in any forum will likely require, *inter alia,* the translation, review, and production of Hebrew and Arabic documents. (Karadaras Aff. at 8-9.) However, the forum in which the case is ultimately litigated will dictate the translation requirements, and likely the translations necessary for litigation in this forum will differ from those needed in the Middle East. Furthermore, if the litigation occurs in a forum in the Middle East, counsel litigating the case will need to review the same documents that New York counsel had already reviewed (*id.* at 9), and presumably with different considerations. Thus, if the motion is granted and the action litigated in a forum in the Middle East, full merits discovery in this forum is likely to result in avoidable inefficiencies and pointlessly duplicative efforts. Such inefficiencies are unnecessarily burdensome.

The plaintiffs have not sought to identify any prejudice they might suffer as a result of the protective order the defendants seek. Rather, they ask the Court to expand the presumption of prejudice caused by a plaintiff's unreasonable delay in prosecuting a case, *see, e.g., Shannon v. General Electric Co.,* 186 F.3d 186, 195 (2d Cir.1999), to include the delay caused by a court order. The Court declines to do so. To presume that an order made pursuant to Rule 26(c) would result in prejudice to the non-moving party would be to significantly restrict the effectiveness of Rule 26(c). Further, the presumption of prejudice applies when a plaintiff's failure to prosecute its case results in " 'unreasonable delay," ' *id.* (quoting *Lyell Theatre Corp. v. Lowes Corp.,* 682 F.2d 37, 43 (2d Cir.1982)), and the Court is not inclined to view delay intentionally caused by its order as unreasonable.

Conclusion

For the reasons set forth herein, defendants' motion is granted: discovery is limited to issues relating only to *forum non conveniens.*

SO ORDERED.

S.D.N.Y.,2007.
Niv v. Hilton Hotels Corp.
Not Reported in F.Supp.2d, 2007 WL 510113 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d, 2006 WL 36909 (S.D.N.Y.)
(Cite as: 2006 WL 36909 (S.D.N.Y.))

**H**
Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Robert ROSS et al., Plaintiffs,
v.
BANK OF AMERICA, N.A. (USA) et al., Defendants.
No. 05 Civ. 7116(WHP).

Jan. 6, 2006.

Merrill G. Davidoff, Berger & Montague, P.C., Philadelphia, PA, for Plaintiffs.

Peter E. Greene, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, for Defendants.

*ORDER*

PAULEY, J.

*1 By letter application, dated November 4, 2005, Defendants seek a stay of discovery pending the resolution of their motion to stay claims in favor of arbitration pursuant to 9 U.S.C. § 3 and their motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs oppose that application.

In view of the threshold issues concerning arbitration, this Court concludes that a stay of discovery is appropriate. *See, e.g., Intertec Contracting A/S v. Turner Steiner Int'l, S.A.,* No. 98 Civ. 9116(CSH), 2001 WL 812224, at *7 (S.D.N.Y. July 18, 2001); *Brockmeyer v. May,* No. 98 Civ. 5521(DLC), 1999 WL 191547, at *2 (S.D.N.Y. Apr. 6, 1999).

Accordingly, for the reasons stated on the record on January 4, 2006, Defendants' application for a limited stay of discovery pending the resolution of their motion to stay this proceeding in favor of arbitration is granted.

SO ORDERED:

S.D.N.Y.,2006.
Ross v. Bank of America, N.A. (USA)
Not Reported in F.Supp.2d, 2006 WL 36909 (S.D.N.Y.)

END OF DOCUMENT

Westlaw.

Not Reported in F.Supp.2d, 2007 WL 328899 (D.Conn.)
(Cite as: 2007 WL 328899 (D.Conn.))

COnly the Westlaw citation is currently available.

United States District Court,
D. Connecticut.
WATERBURY HOSPITAL et al., Plaintiffs
v.
U.S. FOODSERVICE INC., Defendant.
Civil No. 3:06-CV-1657 (CFD)(TPS).

Feb. 1, 2007.

Charles S. Hellman, James E. Hartley, Jr., Drubner
Hartley & O'Connor LLC, Deborah Clark-Weintraub,
Edith M. Kallas, Joe R. Whatley, Jr., Whatley Drake
& Kallas LLC, New York, NY, Doris A. Kim, Mark
K. Gray, Gray & White, Louisville, KY, for Plain-
tiffs.

Douglas P. Baumstein, Glenn M. Kurtz, White &
Case, New York, NY, Michael P. Shea, Erick M.
Sandler, Day Pitney LLP, Hartford, CT, for Defen-
dant.

*Ruling on Motion for Protective Order*

THOMAS P. SMITH, United States Magistrate
Judge.

*1 Pending before the court is defendant's motion for
a protective order. The motion seeks two areas of
relief (1) an order staying discovery pending a deci-
sion on defendant's anticipated motion to dismiss
and; (2) an order limiting discovery to issues involv-
ing class certification or merits discovery involving
the named plaintiffs until the issue of class certifica-
tion is decided by the court. For the reasons set forth
herein, the motion (Dkt.# 17) is DENIED in all re-
spects.

**I. Facts**

For the purposes of the present motion only a brief
recitation of the facts [FN1] is necessary. The defendant,
U.S. Foodservice ("USF") is a nationwide supplier of
food and related products to restaurants, hospitals and
other large institutions. Plaintiffs are USF's former
customers. Plaintiffs characterize their contracts with

USF as "cost-plus" arrangements. Under these con-
tracts plaintiffs agreed to pay USF its invoice cost
plus an agreed upon percentage. Plaintiffs contend
that USF set up middlemen called Value Added Ser-
vice Providers ("VASPs"). They allege that the
VASPs were completely controlled by USF and es-
tablished solely for the purpose of artificially inflat-
ing the invoice cost of the products USF eventually
sold to the plaintiffs. An example of the allegedly
fraudulent scheme is as follows.

> FN1. The "facts" are not established at this
> point and are treated as mere allegations.

At USF's direction, a VASP would purchase an
item from a supplier at the price of $1.00 per unit.
The purchase was made by the VASP for the pur-
pose of reselling the product to USF, and was
funded by and/or guaranteed by USF. At USF's di-
rection, the VASP would then mark-up the price of
the product and sell it to USF for $1.10 per unit.
USF would, in turn, sell the product to one of its
customers. After USF paid the VASP for the prod-
uct, however, the VASP would refund $1.10 per
unit back to USF (minus a nominal transaction fee
that would be either per invoice or per volume).
Nevertheless, USF would use $1.10 per unit as its
stated cost and then add an additional percentage,
for example 6.5%, charging its customer $1.17 per
unit pursuant to the terms of its agreement with the
customer. As a result, in this example, the transac-
tion would indicate on paper that USF received a
6.5% margin on its cost of $1.10 per unit, or $.07
per unit, when, in fact, it actually received a 17%
margin on its actual cost of $1.00 per unit, or $.17
per unit. In this manner, USF was able to wrong-
fully charge its customers an amount equal to both
the artificial inflation of the actual cost on the
product, plus the contractually established addi-
tional percentage on that amount.
(Compl ¶ 37.)

**II. Discussion**

**A. Motion to Stay Discovery**

A party seeking a protective order under Rule 26(c)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 328899 (D.Conn.)
(Cite as: 2007 WL 328899 (D.Conn.))

must demonstrate good cause. In these cases good cause is evaluated using three factors: (1) the strength of the dispositive motion; (2) the breadth of discovery sought; and (3) the prejudice a stay would have on the non-moving party. *Cuartero v. United States, No. 3:05CV1161(RNC), 2006 WL 3190521, at *1 (D.Conn. Nov. 1, 2006).*

*2 Using the factors above, the court finds that USF has failed to establish good cause to stay discovery pending a resolution of its anticipated motion to dismiss. First, the motion has not even been filed, largely making any evaluation of its merits a futile exercise. Nevertheless, USF's memorandum does outline in detail what it represents will be its arguments when a motion to dismiss is eventually filed, however, even accepting that these representations reflect the future motion, the court cannot agree with USF's assertion that the "motion to dismiss will likely resolve some or all of the claims." (Dkt. # 24 at 2.) It appears that the motion will target the factual allegations in the complaint rather than argue for dismissal on pure questions of law. Rule 12(b)(6) motions are infrequently granted because of the liberal notice pleading standards established by the Federal Rules. *See* Fed.R.Civ.P. 8(a); *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). USF's arguments may be more appropriately addressed under Rule 56. Fed.R.Civ.P. 12(b) (If, on a motion asserting the defense numbered (6) ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56....)"

In the present case the pleading requirements are slightly more strenuous as the complaint alleges fraud, which must be plead with particularity. Fed.R.Civ.P. 9(b). Without judging the merits of any potential motion to dismiss, the court will simply note that, on its face, the amended complaint does not appear deficient in this regard. (*See* Am. ¶¶ Compl. 28-72.)

As to the second factor the court agrees with plaintiffs' contention that USF's concern over the potential breadth of discovery is premature. Statements made in a Rule 26(f) Report regarding what discovery plaintiffs believe may be needed throughout the course of the entire litigation are not themselves discovery requests. It is not appropriate for the court to determine that the discovery sought is too broad

without first seeing exactly what it is plaintiffs are requesting. The defendant is adequately protected from unduly broad and burdensome discovery requests by the Federal Rules. If deemed appropriate after a required meet and confer session, the defendant may object to specific discovery requests.

Finally, the court finds that the plaintiff will be prejudiced by a stay of discovery. Plaintiffs have presented credible affidavit evidence that USF is in the process of being sold by its parent company, Koninklijke Ahold, N.V. ("Royal Ahold"). (Dkt. # 42 Ex. C, F.) As such the court agrees that a delay in discovery combined with a sale of USF in the interim would increase the risk that relevant documents would be lost or destroyed. Moreover, the court finds that the stay would cause a delay of a duration far greater than the "few months" asserted by the defendant. (Dkt. # 24 at 2.) Barring motions for extension of time, which are likely here in light of the importance of the motion, the seriousness of the allegations and the substantial damages alleged, the motion to dismiss will not be fully briefed until April 4, 2007. (Dkt. # 24 at 3.) If the memoranda submitted for this motion are any indication, the briefs on the motion to dismiss will likely be substantial, include copious citation and involve intricate legal argument. The motion will also fall in line behind the hundreds of other motions currently pending before the court. The parties should not expect an immediate resolution of their motion to dismiss. Further, if defendant were to have its way, full discovery would not even begin following a ruling on a motion to dismiss. Rather, defendant's seek a preliminary round of discovery focused solely on the issue of class certification. After this round of discovery, the parties would then re-engage in hostilities, this time battling over the issue of class certification. Only after the issue of class certification is decided by the court would the case progress to full merits discovery under defendant's plan. The delay proposed would more likely be measured in years than months.

*3 The defendant's motion to stay discovery is therefore denied. Discovery will continue while the parties brief and the court takes under advisement the motion to dismiss.

### B. Motion to Limit Discovery

The court also finds that defendant's request to limit

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 328899 (D.Conn.)
(Cite as: 2007 WL 328899 (D.Conn.))

discovery to issues involving class certification or issues limited to the individually named plaintiffs is inappropriate. Like in its request to stay discovery, USF here seeks to argue the merits of an unfiled motion. The court declines USF's invitation to prejudge the matter. Moreover, the court does not see that the distinction between discovery limited to the named plaintiffs and discovery related to unnamed and uncertified class members is as brightly lined as defendant suggests. The plaintiffs are claiming that they themselves were injured by an allegedly fraudulent scheme to artificially inflate prices under existing "cost-plus" contracts. Thus, they are entitled to discovery aimed at determining the relationship between USF and the VASPs-a relationship plaintiffs allege existed solely to inflate USF's invoice price. At this very early stage in the litigation the court is satisfied that this discovery would overlap with discovery required on behalf of the unnamed and uncertified class members. The lines between "merits discovery" and "certification discovery" are sufficiently blurred as to make any distinction based on these terms meaningless.

Defendant's motion for a protective order (Dkt.# 17) is **DENIED** in all respects. This is not a recommended ruling. This is a discovery ruling and order reviewable pursuant to the "clearly erroneous" standard of review. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 6(a), (e) and 72(a); and Rule 2 of the Local Rules for U.S. Magistrate Judges. As such, it is an order of the court. *See* 28 U.S.C. § 636(b)(written objections to ruling must be filed within ten days after service of same).

IT IS SO ORDERED.

D.Conn.,2007.
Waterbury Hosp. v. U.S. Foodservice Inc.
Not Reported in F.Supp.2d, 2007 WL 328899 (D.Conn.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.