# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

EA INDEPENDENT FRANCHISEE
ASSOCIATION, LLC,

                Plaintiff,

      vs.

EDIBLE ARRANGEMENTS
INTERNATIONAL, INC. AND EACONNECT,
INC., NETSOLACE, INC., DIPPEDFRUIT,
INC., and XYZ CORPORATIONS 1-20,
fictitious entities,

                Defendants.

Case No. 3:10-cv-1489 (WWE)


January 21, 2011

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY PENDING RULING ON MOTION TO DISMISS

Plaintiff EA Independent Franchisee Association, LLC (hereinafter "EAIFA" or "Plaintiff") hereby opposes Defendants Edible Arrangements International, Inc. (hereinafter "EAI"), EAConnect, Inc. (hereinafter "EAConnect, Inc."), Netsolace, Inc. (hereinafter "Netsolace, Inc.") and Dipped Fruit, Inc.'s (hereinafter "DippedFruit, Inc.) (or hereinafter collectively referred to as "Defendants"), Motion to Stay Discovery Pending Ruling on Motion to Dismiss (hereinafter "Motion to Stay") dated December 9, 2010 as follows:

## I.   INTRODUCTION

This is a case about Defendants' unfair and improper implementation of a series of material, system-wide changes on EAI franchisees in bad faith and in violation of Connecticut law.  The EAI franchisees, represented by Plaintiff EA Independent Franchisee Association, LLC ("EAIFA") in this action, seek a determination as a matter of law that several of EAI's recently enacted "mandates" and system-wide changes (including the imposition of previously undisclosed fees) constitute an abuse of EAI's already broad, contractually-based discretion to amend or modify its Operations Manual.  The EAIFA, an association comprised of over 170 Edible Arrangements franchisees, was formed for the specific purpose of addressing the complained-of abuses described herein but has no independent contractual relationship with any of the Defendants.  The EAIFA also seeks a declaration that the subject mandates and changes also violate the implied covenant of good faith and fair dealing and that they constitute unfair, deceptive and unreasonable trade practices under the Connecticut Unfair Trade Practices Act ("CUTPA").

In support of the Motion to Stay, Defendants rely heavily upon the fact that they previously filed a motion to dismiss the EAIFA's Complaint, which, in and of itself, does not constitute good cause sufficient to obtain a stay.  Moreover, the timing of Defendants' Motion is also rather curious considering not a single document request or interrogatory or any other discovery request been served on Defendants.

As set forth herein, in analyzing whether the grant of a stay is proper, the relative strength of the underlying motion is a critical factor in determining whether the moving party has demonstrated good cause for the requested, extreme relief.  Here, as discussed below, Defendants' Motion to Dismiss is misguidedly premised upon their flawed interpretation of the relevant Second Circuit case law governing associational standing, and should properly be

denied. Defendants also errantly rely upon the fact that the form franchise agreement that governs the contractual relationship between EAI and its franchisees, none of whom are parties to this action, contains an arbitration provision. Defendants have not sought to compel arbitration and accordingly this argument, even if it were meritorious, which it is not as discussed herein, is entirely irrelevant.

Furthermore, Defendants readily concede that the types of claims raised by the EAIFA require it to propound significant discovery but incongruously state that a stay of discovery shall not in any way prejudice the EAIFA. Finally, Defendants further place undue emphasis on the fact that the discovery process is by nature a costly and burdensome process, which fact is completely irrelevant to the instant analysis. For all of these reasons, Defendants' Motion to Stay should be denied.

## II.   BACKGROUND FACTS

### A.   EAIFA's Allegations of Defendants' Wrongdoing.

The EAIFA alleges that Defendants have enacted various mandates and system-wide changes that constitute an abuse of their discretion to modify their form franchise agreement and Operations Manual.

As outlined in the EAIFA's opposition to the Motion to Dismiss, the Complaint alleges specifically enumerated categories of unfair mandates and abuses that have been thrust upon its members by EAI and further alleges that EAI acted in concert with the other Defendants to perpetuate each of these wrongs. The particularly challenged actions and conduct as alleged in the Complaint are as follows:

1) **EAI is Charging Previously Undisclosed Fees for products and services.** EAI has failed to abide by the requirement set forth under FTC Rule 436.1(a) to properly

disclose all franchise-related fees charged its franchisees for the purchase of required products related to the establishment of a franchise business; or at the very least, EAI has materially altered certain of its requirements and its franchisees attendant obligations to pay certain fees to EAI, its affiliates and/or required product vendors, in contravention of FTC regulations. (Compl. ¶ 33-34.)

2) **EAConnect Program and Undisclosed Fees.** An example of EAI's violation of FTC Rule 436 has been enactment of the EAConnect program, an online product ordering and fulfillment system, which is simply a different name for a previously existing and free online order processing system known as Netcenter. The services associated with Netcenter were free and provided substantially the same service to EAIFA franchisees as does EAConnect, for which EAI now reserves an alleged "right" to require franchisees to pay substantial (undisclosed) fees on orders generated through the EAConnect program (up to as much as 20% per product order). (Compl. ¶¶ 54-58; 66-68.) Finally, despite no contractual or other authority to do so, EAI has unfairly threatened franchisees, including members of the EAIFA for declining to participate in the EAConnect program, constituting further evidence of its bad faith implementation of this program. (Compl. ¶ 72.)

3) **Required Use of Netsolace, Inc. Hardware and Software.** EAI is also unfairly requiring its franchisees continue to purchase all franchised business-related hardware and software from Defendant Netsolace, Inc., an entity which shares common ownership with EAI. EAI persists in this unfair and bad faith conduct, and has endorsed Netsolace, Inc.'s recent improper demand that EAI franchisee customers pay substantial sums for product updates or upgrades, which Netsolace agreed in its

own Software Service Agreement (SSA) to provide free-of-charge. Netsolace, with EAI's endorsement and support, has also consistently misidentified existing product upgrades as "new" products in order to charge EAI franchisees additional fees which it does not have the right to charge. (Compl. ¶¶ 82-88, 92.)

4) **Extended Hours Mandate and Material Change in EAI Business Model.** The system-wide "Extended Hours Mandate" enacted on or about March 1, 2010 ("March 1, 2010 Mandate") requires EAI franchisees, irrespective of the location of their store or stores, to remain open and operating seven (7) days per week including Sundays, with little to no regard for individual needs or surrounding demographics. All franchisees entering the system prior to the March 1, 2010 Mandate relied upon the representations made by EAI and its principals that the prior required hours of operation — Monday (8AM to 5PM) through Saturday (8AM to 3PM), only — were "sound and ideal" for the typical EAI customer base. The previously accepted Monday through Saturday business model was used by members of the EAIFA as a framework in connection with critical decisions on staffing, ordering and budgeting anticipated business-related expenses. (Compl. ¶¶ 96-97.) Furthermore, the recently enacted Extended Hours Mandate negatively affects EAI's franchisees' profit margins throughout the Edible Arrangements system, in multiple and substantial ways, and the Extended Hours Mandate has been enforced over vehement objection and widespread protest by franchisees throughout the EAI franchise system (Compl. ¶¶ 99-102.)

5) **Enactment of "New/Enhanced" FRESH Program Mandates.** EAI has also acted in bad faith by enacting the "New" or "Enhanced" FRESH Program mandate, which

purports to require all franchisees to purchase produce products from a limited group of required vendors selected by EAI, despite the fact that these requirements were not disclosed to any franchisees that entered into the system in or prior to 2009, in violation of FTC regulations and applicable law. (Compl. ¶¶ 106-107.) Indeed, EAI has required the use of only limited, pre-selected vendors, despite the fact that franchisees have reported that they can receive product orders far more quickly, efficiently and economically and of a higher quality, with alternative vendors of their choosing. (Compl. ¶ 108.) Most critically, EAI has only selectively enforced this Mandate by issuing sanctions and/or threats of sanctions to certain, but not all, Edible Arrangements franchisees "failing" to abide by the new alleged requirement. EAI's failure to consistently enforce and decision to selectively enforce its own mandate is additional evidence of the arbitrary and capricious manner in which EAI has enacted all of the system-wide changes that are disputed in this action. (Compl. ¶¶ 110-113.)

6) **"Store 98," Encroachment and Unfair Competition.** EAI has actively unfairly and improperly competed with its own franchisees and encroached upon them with the creation of the corporate-owned "phantom" store known as "Store 98," which "store" does business solely through EAI's centralized internet order-processing system. In doing so, EAI has hand-picked certain corporate customer national accounts that rightfully belonged to its franchisees and were within franchisees' exclusive territories. (Compl. ¶117-18.) Furthermore, EAI has charged its franchisees, including members of the EAIFA, a previously undisclosed twenty percent (20%) "Store 98 Commission" to re-route these national account orders back to franchisees that should have rightfully received these orders in their protected geographical territories, again

in violation of FTC Rule 436. (Compl. ¶¶121-123.)  Finally, EAI has improperly used advertising funds collected from franchisees that are required to be exclusively used for the benefit of its franchisees for the purpose of locating the corporate accounts it has effectively "poached" by rerouting customer orders through Store 98.   (Compl.¶¶ 125-127.)

7) **Implementation of Dippedfruit.com Website and Resulting Product Confusion.**

EAI's recent development of the Dippedfruit.com website, which has led to customer confusion as to the entity from which customers are purchasing dippedfruit.com products, is further encroachment upon its franchisees by EAI, and has also harmed the goodwill associated with the Edible Arrangements brand, thus hurting EAI franchisees – members of the EAIFA. (Compl. ¶¶ 130-132.)  Moreover, EAI only permits certain "Dippedfruit.com approved" franchisees to fill customer orders made through the website, based upon a separate contractual relationship not offered to its other franchisees. (Compl. ¶¶ 134-35.) Much like the selective enforcement of the New FRESH Program Mandate, the favoritism shown to "Dippedfruit.com approved" franchisees, at the expense of all other franchisees in the system, evidences the arbitrary, capricious and unfair nature of the EAI's system-wide changes. (Compl. ¶¶ 139-140.)

**B. Relevant Procedural History**

The EAIFA filed its Complaint in this matter on September 20, 2010.  As noted by Defendants in the Motion to Stay, Counsel for the EAIFA promptly sent Defendants' Counsel a letter on November 9, 2010 demanding that Defendants preserve any/all electronic records pertaining to their franchise business in the relevant time period, as to their dealings with their

franchisees and with third-parties that are relevant to the claims alleged by the EAIFA ("Document Retention Letter"). (Defendants' Br. in Support of Motion to Stay, Exh. "A," Document Retention Letter.) Notably, the EAIFA did not receive any written or verbal response of any kind in response to this demand.

On December 6, 2010 Defendants moved to dismiss the EAIFA's Complaint pursuant to Fed. R. Civ. P. 12(b) (1) for lack of associational standing, which motion is currently pending. On December 9, 2010, three (3) days after filing the Motion to Dismiss, Defendants filed the instant motion requesting that discovery in this matter be stayed pending the outcome of that motion. Defendants seek to stay the discovery period despite failing to demonstrate good cause required under federal law to substantiate any such request.

## III.    LEGAL ARGUMENT – DEFENDANTS FAIL TO MEET THE THREE-PART TEST REQUIRED TO DEMONSTRATE THAT DISCOVERY SHOULD BE STAYED; THEREFORE, THEIR MOTION TO STAY DISCOVERY PENDING MOTION TO DISMISS SHOULD BE DENIED.

### A.    Standard of Review.

Under Fed. R. Civ. P. 26(c), courts have the authority to stay discovery in a matter for good cause. *Lithgow v. Edelmann*, 247 F.R.D. 61, 62 (D. Conn. 2007). The court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort[.]" *Republic Credit Corp. I v. Autorino*, 2001 U.S. Dist. LEXIS 14333, at *6 (D. Conn. Jun. 1, 2001)(quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)).[1]

A district court should not stay discovery unless the movant makes a strong showing that there is good cause for doing so. *See Johnson v. New York Univ. School of Educ.*, 205 F.R.D.

---

[1] All unpublished decisions cited herein are annexed, in alphabetical order, to the Certification of Justin M. Klein, Esq. that is being submitted herewith.

433, 434 (S.D.N.Y. 2002) (citing *Chrysler Capital Corp. v. Century Power Corp.,* 137 F.R.D. 209, 211 (S.D.N.Y. 1991)). In deciding whether good cause exists to obtain a stay, the court must consider: "(1) the strength of the dispositive motion; (2) the breadth of the discovery sought; and (3) the prejudice the stay would have on the non-moving party." *Lithgow,* 247 F.R.D. at 62 (finding that no good cause existed warranting a stay pending motion to dismiss).

Defendants do not come close to satisfying any one of these three requirements. Here, Defendants largely premise their motion to stay on the contention that their Motion to Dismiss seeks complete dismissal of the Complaint. However, "discovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed." *Moran v. Flaherty,* 1992 U.S. Dist. LEXIS 14568, at *4-*5 (S.D.N.Y. Sept. 25, 1992)(discovery stay denied because plaintiff would correct any pleading requirements in amended complaint). It must also be shown that the underlying dispositive motion is likely to succeed and the party seeking to stay the discovery period must demonstrate legitimate reasons beyond their not wanting to incur expense in the discovery process. *See, e.g., Moss v. Hollis,* 1990 U.S. Dist. LEXIS 13647, at *2 (D. Conn. June 29, 1990)(district court denied stay of discovery where defendants failed to make a strong showing that motion to dismiss would be successful and further noting that "[h]ad the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, they would contain such a provision.") When determining whether a stay should issue, a court must consider the stage of the litigation, the type of motion currently pending, and other case-specific factors in determining whether to grant a stay. *See Hachette Distribution, Inc. v. Hudson County News Co., 136 F.R.D. 356, 358 (E.D.N.Y. 1991).*

As set forth herein, Defendants fail to satisfy the basic requirements to obtain a motion to stay and it is clear that this motion is but a thinly veiled attempt by Defendants to cause delay

and prevent the EAIFA from enforcing its rights against Defendant in its chosen federal forum. Therefore, Defendants' motion should be denied.

## 1.    Defendant's Underlying Motion to Dismiss Lacks Merit.

Defendants' Motion to Dismiss contends that the EAIFA lacks associational standing to bring the claims it alleges against Defendants. However, as is made abundantly clear in EAIFA's Opposition to the Motion to Dismiss, Defendants' arguments fails for various reasons.  Namely, EAIFA's opposition succinctly addresses that EAIFA has satisfied the test Courts look to in establishing standing by a plaintiff association: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose[2]; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

While it is not desirous to rehash the arguments advanced by EAIFA in its opposition to the motion to dismiss, for the convenience of the Court a brief recitation is necessary, considering the arguments raised by Defendants regarding the purported strength of their Motion to Dismiss in their moving brief on this motion.  Defendants' Motion to Dismiss focuses solely on the third prong of the *Hunt* test. Under the third prong of the *Hunt* test, the EAIFA must establish that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343.  In its motion, and fatal to the success of that motion, is the fact that Defendants mischaracterize and misinterpret this statement to mean that associational standing is prohibited where *any* evidence is needed from *any* member of the plaintiff association and, in doing so, ignore established legal precedent in the Second Circuit

---

[2]  The EAIFA's satisfaction of the second element has been tacitly admitted by Defendants.

and other circuit courts in the United States.  It is well settled that the "individual participation" requirement of the *Hunt* test does not prohibit standing of an association where only some individual participation is necessary and also does not require that the association be seeking relief based solely upon an issue of law. *See e.g., United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.,* 517 U.S. 544, 557 (1996).

The weakness of Defendant's contention that the third prong of the *Hunt* test has not been satisfied is highlighted by the fact that they cite a litany of cases which are easily distinguishable from the matter at hand, in that contractual-based claims for money damages were sought in each instance and no such prohibited relief is sought in the instant matter. *See Warth,* 422 U.S. 515 (no standing because damages are sought); *Rockford Princip. & Super. Ass'n v. Bd. of Educ. of Rockford Sch. Dist. No. 205,* 721 F. Supp. 948 (N.D. Ill. 1989) (same); *Dalworth v. Oil Co. v. Fina Oil & Chem. Co.,* 758 F. Supp. 410 (N.D. Tex. 1991) (same).  Thus, Defendants' reliance on these particular cases is not well founded as it improperly analogizes the relief sought here to cases that are wholly distinguishable.[3]  Moreover, Defendants disingenuously argue that the EAIFA has alleged breach of contract, (Defendants' Br. In Support of Motion to Dismiss p. 22), when it has actually sought declaration of the extent of EAI's rights under the terms of its form

---

[3] As noted in the EAIFA's opposition to the Motion to Dismiss, other cases cited by Defendants are also readily distinguishable in that the contracts being sued under in those cases varied substantially from member to member, rather than being materially identical, like the EAI franchise agreements relevant to this matter. *See, e.g., Friends for Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.,* 284 F.3d 575, 577 (5th Cir. 2002) (no standing because different contracts relied on creates need for excessive individual participation); *Dunkin' Donuts Franchised Rests., LLC v. Shriji Inv., Inc.,* 2008 WL 5384077, at *11-12 (E.D. Mich. 23, 2008) (same); *S.N.D.A. v. Sonitrol Corp.,* 2008 WL 6522485 (Cal. Super. Dec. 22, 2009) (same); *Dealer Store Owners Ass'n v. Sear, Roebuck & Co.,* 2006 WL 91334 at *4-5 (D. Minn. Jan. 12, 2006) (same, where contract allegedly orally modified).  And certain cases simply do not apply to the issue raised here. *See, e.g., Michigan Dairy Queen Operators' Ass'n v. Int'l Dairy Queen, Inc.,* 2008 WL 2566547 (W.D. Mich. June 9, 2008) ("opinion" simply a transcript of court's oral ruling on motion; impossible to determine court's reasoning, authorities relied upon, or facts of case and theories asserted).

franchise agreement and whether those rights have been abused– a classical type of claim raised in associational standing cases. (*See* Compl., Prayer for Relief, p. 37-39.)

In their zeal, Defendants also ignored federal and Connecticut state court decisions, which flatly reject similar associational standing arguments for dismissal as those which Defendants have advanced. *See, e.g., Nat'l Franchisee Ass'n v. Burger King Corp.*, 715 F. Supp. 2d 1232, 1240 (S.D. Fla. 2010) (denying defendant franchisor's motion to dismiss on "individual participation" challenge where the plaintiff association alleged the franchisor's breach of the implied duty of good faith and fair dealing); *Nat'l Ass'n of Prof'l Allstate Agents v. Allstate Ins. Co.*, 2002 U.S. Dist. LEXIS 28409, *9-12 (M.D. Fla. April 22, 2002) [*Allstate I*] (same); *Nat'l Ass'n of Prof'l Allstate Agents v. Allstate Ins. Co.*, 2003 U.S. Dist. LEXIS 27875, *11-16 (M.D. Fla. April 20, 2003) [*Allstate II*] (same, on motion for summary judgment); *Nat'l Ass'n of State Farm Agencies, Inc. v. State Farm Mut. Auto. Ins. Co.*, Bus. Franchise Guide (CCH) 12, 431 (D.C. Super. Ct. Oct. 22, 2002) (finding associational standing because only declaratory and injunctive relief, as opposed to money damages, were sought); *In re Managed Care Litig.*, 298 F. Supp. 2d 1151, 1154-55 (N.D. Cal. 1998) (same); *Owner-Op. Drivers Ass'n v. Mayflower Transit, Inc.*, 2007 U.S. Dist. LEXIS 74024, *44-45 & n. 22 (S.D. Ind. Sept. 28, 2007) (denying challenge to individual participation).

While they do not directly attack the EAIFA as to the first prong of the *Hunt* test, Defendants make passing reference in a footnote of their memorandum of law in support of the Motion to Dismiss that it is "doubtful" that the EAIFA satisfies each of the elements of the first prong of the associational standing test—that its members sustained an injury in fact. Once again, Defendants seek to impose far more stringent requirements on the EAIFA than those

12

which are actually required by law. (Defendant's Br. in Support of Motion to Dismiss at 16, N.2.) This argument also lacks merit.[4]

For these reasons, and those more fully addressed in the opposition to the Motion to Dismiss the EAIFA has satisfied the standing requirement and therefore Defendants' Motion lacks merit. Accordingly, staying discovery at this stage of the litigation would only serve to prejudice Plaintiff and cause unnecessary delay; therefore, Defendants' motion should be denied.

2.     **The arbitration provision contained in EAI's argument is not enforceable against the EAIFA.**

Defendants place undue emphasis on the fact that their franchise agreement contains an arbitration provision in support of the fact that the Complaint should be dismissed and that discovery should be stayed pending the outcome of the Motion to Dismiss. Notably, Defendants have not sought to transfer this matter to arbitration, rather they argue that individual franchisees are required to arbitrate their claims with EAI. However, this argument is entirely misplaced considering EAIFA does not have to arbitrate any of its claims as it is a non-signatory to any arbitration agreement.

Indeed, arbitration is not required unless it is determined that a party is actually bound by the terms of an arbitration clause. The purpose of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* is "to make arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 404, n. 12 (1967). If a party has not agreed to arbitrate and was not a signatory to the franchise agreement

---

[4] In fact, the Second Circuit has *flatly rejected* the proposition that associational standing cannot be established unless particular association members are identified at the motion to dismiss stage of litigation. *See Building and Const. Trades Council of Buffalo, New York and Vicinity v. Downtown Development, Inc.*, 448 F.3d 138, 144-45 (2d Cir. 2006) (holding, *inter alia*, that the plaintiff organization sufficiently established associational standing to survive dismissal because (1) *at the motion to dismiss stage, the names of its members were not required to be stated.*)

containing the arbitration clause, a court has no authority to mandate that she do so. *See E.I. Dupont v. Rhone Poulenc Fiber and Resin, et al, 269 F.3d 187, (3d Cir. 2001) citing Bel-Ray, 181 F3d 444 (3d Cir. 1999).*

In *Volt Info. Sciences, Inc.,v. Bd. of Trs., 489 U.S. 468 (1989),* the United States Supreme Court held that "Arbitration under the [FAA] is a matter of consent, not coercion." In a similar case, the Supreme Court held that a party cannot be compelled to arbitrate where it had not consented to do so, *even though related claims against another party were subject to an arbitration clause* and would thus create two competing forums. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 (1983); Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, (1985).*[5]

The Second Circuit has observed that "absent an agreement to arbitrate, [we] have recognized only limited theories upon which [we are] willing to enforce an arbitration agreement against a non-signatory." *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003)(per curiam)(citation omitted)(holding that a non-signatory was not bound by an arbitrator's award where the plaintiff failed to adduce facts that would support an alter ego theory or any other theory on which a non-signatory can be forced to arbitrate). This premise is subject to several exceptions under which "a willing signatory seeking to arbitrate with a non-signatory that is unwilling must establish at least one of the five theories" "1) incorporation by

---

[5]    Similarly the State Court of Connecticut has held: "Arbitration is a creature of contract . . . It is designed to avoid litigation and secure prompt settlement of disputes and is favored by the law    . . . But a person can be compelled to arbitrate a dispute *only if, to the extent that, and in the manner which, he has agreed so to do.*" *Dubreuil & Sons, Inc. v. Lisbon*, 215 Conn. 604, 608, 577 A.2d 709 (1990). (Citations omitted; internal quotation marks omitted)(Emphasis Supplied.)

reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Id.* at 129, (quoting *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)).

Not a single one of the five theories can be applied to the EAIFA in this case as it is uncontroverted that the EAIFA did not assume the rights of any of its franchisee members, is a wholly separate and newly-formed entity separate and distinct from its members and its existence was not contemplated or incorporated into any of the franchise agreements at issue since. There is also no argument for estoppel because the doctrine of equitable estoppel does not apply where a signatory to an agreement is seeking to compel a non-signatory to arbitrate. *See Thompson-CSF, S.A.*, 64 F.3d at 778-79 (refusing to compel arbitration and finding only indirect benefit insufficient to invoke equitable estoppel against a non-signatory). Accordingly, the EAIFA cannot be bound by the terms of a contract it neither signed nor was party to, nor was it an intended beneficiary.

Additionally, Defendants place unnecessary focus on the fact that different franchisees in the EAIFA entered into different variations of its form franchise agreement since 2003, and gloss over the fact that the EAIFA is actually seeking is a *declaration* of the rights of its members. (Compl., Prayer for Relief, p. 37-39.) Thus, it is not the breach of any particular agreement or the harm sustained by any particular franchisee at issue; it is the alleged wrongful conduct of EAI in abusing its discretion to make changes and how those changes have had an overall negative affect and the detrimental impact on the franchisees throughout its system. Defendants' focus on the arbitration is merely a "red-herring" and should be ignored by the court in its analysis and the Motion to Stay should be denied.

**B.    The Motion to Stay is Premature and is not ripe for adjudication since no discovery has been propounded.**

Defendants' argument for a stay, as simply stated as possible, is premature at this stage of the litigation. In fact, the parties have not yet even served any discovery requests, nor even participated in a Rule 26(f) conference. Defendants, however, emphasize that on November 9, 2010 the EAIFA served a Document Retention Letter on Plaintiffs requiring that they preserve all electronically stored information and the general scope of documents relevant to the EAIFA's claims. Defendants assert that because broad requests for retention have been made by EAIFA, that is synonymous with overbroad demands for discovery. This leap, generously, is overstated to say the least and clearly unavailing as Defendants cannot speculate on the type of discovery the EAIFA will seek and/or whether any discovery requests will not be appropriately tailored to relevant information until those requests are actually served.

Indeed, the EAIFA's letter was used to remind Defendants of both their discovery obligations under the Federal Rules of Civil Procedure as well as their ethical obligations to preserve electronically stored information. Moreover, once a Rule 26(f) conference is held and discovery requests are served, if Defendants deem these requests to be overburdensome, the appropriate relief could at that time be sought via the filing of a motion for a protective order under Fed. R. Civ. P. 26(c).

In their plea to avoid participating in discovery, Defendants also exaggerate the extent of discovery that they would likely have to produce in connection with this litigation. In determining the rights of the parties and adjudicating the claim for declaratory relief, discovery requests will be geared squarely at the relevant documents as they pertain to the allegations of the Complaint, all of which Defendants are obligated to maintain, are clearly in Defendants' possession, are likely stored electronically, and should be preserved.

Moreover, the evidence on the course of dealing can be proved from Defendants' own records pertaining to the complained-of conduct and recently enacted mandates (as well as through its personnel), as well as through EAIFA's own evidence of franchisee unrest, dissatisfaction and overall financial concerns, with some limited individual participation by certain franchisees in discovery, where necessary – which do not require the presentation of evidentiary proofs on a "franchisee-by-franchisee" basis. Thus, Defendants' argument that extensive, expensive and overburdensome discovery should be avoided pending a motion to dismiss mischaracterizes the actual scope of discovery that is likely going to be required to prove the EAIFA's claims.

**C.      Plaintiff would be Highly Prejudiced by a Stay of Discovery.**

Defendants make conclusory statements that the EAIFA will not be prejudiced by a stay. Oddly, in support of this argument Defendants concede that no discovery has been served and that parties have not partaken in a Rule 26(f) conference. Defendants also attempt to analogize the Document Retention Letter to formal document requests and essentially argue that if the Document Retention Letter is framed broadly, EAIFA's discovery shall also be overbroad and burdensome. This argument simply makes no sense.

More critically, Defendants unfairly seek to punish the EAIFA for serving a document retention letter, which is clearly the proper course of action to take where significant amounts of electronically stored information is likely to be discovered in the lawsuit.

As this Court is most certainly aware, the importance of a document retention letter is to force the opposing party to recognize their duty to preserve data and discredits any future frivolous claims under the "safe harbor" provision of Rule 37(f). The duty to preserve electronic discovery arises when a party knows or has reason to know that evidence may be relevant to

future litigation and several courts, having found spoliation of electronic discovery, have fashioned adverse inference instructions for use at trial. *See, e.g., Zubulake v. UBS Warburg,* 229 F.R.D. 422 (S.D.N.Y. July 20, 2004); *Network Computing Servs. v. Cisco Sys., Inc.,* 223 F.R.D. 392 (D.S.C. 2004); *Mosaid Technologies, Inc. v. Samsung Electronics Co.,* 348 F. Supp. 2d 332 (D.N.J. 2004). Moreover, the new amendments to the Federal Rules of Civil Procedure make clear that electronic data preservation issues must be discussed at the earliest stages of litigation – often before the parties even make their first appearance before the court.[6]

The EAIFA is cognizant of the importance of the discovery process in order to prove its numerous fact-sensitive claims. The ability to prove the EAIFA's claims for declaratory relief requires the production of electronic communications between the various Defendants and their representatives, internal records prepared and maintained by EAI, internal documents pertaining to the enactment of system-wide changes throughout the Edible Arrangements system, many of which are likely stored electronically. Particularly in light of the fact that the EAIFA has already provided a detailed demand for discovery retention to Defendants, a stay of discovery at this time will certainly increase the chances that these particular discovery items will be lost or destroyed. *See Waterbury Hosp. v. U.S. Foodservice, Inc.,* 2007 WL 328899, at \*2 (D. Conn. Feb. 1, 2007)(denying motion to stay discovery where a delay in discovery would increase the risk that relevant document would be lost or destroyed.) More importantly, service of a document retention letter should not be grounds for unnecessary delay in the discovery process, nor is there

---

[6] The critical importance of this issue is further elucidated in Judge Scheindlin's decision in *Pension Committee of the University of Montreal Pension Plan v. Banc of America Securities, LLC,* 685 F. Supp. 2d 456 (S.D.N.Y. 2010), in which the Court revisited its *Zubulake* decisions discussing all aspects of the electronic discovery process and holding that litigants, to avoid risk of being found negligent or even grossly negligent, must (1) send a written, comprehensive preservation notice to *all* employees with relevant documents; (2) collect documents from all "key players;" and (3) carefully consider whether documents also must be collected from other employees who, though not "key players," still may have documents important to the case.

any legal support for such a contention.   For these reasons, any delay in the exchange of discovery increases the likelihood that relevant documents could be destroyed and the Motion to Stay should be denied.

## IV.    CONCLUSION

Based on the foregoing, Plaintiff EAIFA respectfully requests that Defendant's Motion to Stay be denied.

WHEREFORE, Plaintiff EA Independent Franchisee Association, LLC respectfully prays for an order denying Defendants' Motion to Stay and for such other and further relief as this Court deems necessary and appropriate.

PLAINTIFF,

By: /s/ Justin M. Klein
Justin M. Klein, Esq. phv04261
Louis D. Tambaro, Esq. phv04258
Admitted *Pro Hac Vice*
MARKS & KLEIN, LLP
Attorneys for EA Independent Franchisee
Association, LLC
63 Riverside Avenue
Red Bank, NJ 07701
Tel: (732) 747-7100
Fax: (732) 219-0625

By: /s/ Stuart A. Margolis
Stuart A. Margolis, Esq. ct08803
BERDON, YOUNG & MARGOLIS, P.C.
Attorneys for EA Independent Franchisee
Association, LLC
132 Temple Street
New Haven, Connecticut 06510
Tel: (203) 772-3740
Fax: (732) 492-4444

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was sent via the Court's electronic notification system on this 21st day of January 2011 to the following counsel of record:

For the Defendants:

James T. Shearin, Esq. (ct 01326)
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601-7006
Juris No. 47892 (203) 330-2000
Facsimile (203) 576-8888
E-mail: jshearin@pullcom.com

John F. Verhey, Esq.
DLA Piper LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601-1293
Phone: (312) 368-404
Facsimile: (312) 251-2195
E-Mail: john.verhey@dlapiper.com

                                        /s/ Justin M. Klein
                                        Justin M. Klein, Esq.
                                        Connecticut Fed Bar. No. phv 04261
                                        Admitted *Pro Hac Vice*