## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **EA INDEPENDENT FRANCHISEE ASSOCIATION, LLC,**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**EDIBLE ARRANGEMENTS INTERNATIONAL, INC., EA CONNECT, INC., NETSOLACE, INC., DIPPEDFRUIT, INC. and XYZ CORPORATIONS 1-20,**<br><br>      **Defendants.** | **Case No.  3:10-cv1489 (WWE)** |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION AND FOR STAY OF DISCOVERY

Defendants Edible Arrangements International, Inc. ("EAI"), EA Connect, Inc., Netsolace, Inc., and Dippedfruit, Inc. (collectively, "Defendants"), by their attorneys, submit this memorandum of law in support of their motion (i) for reconsideration of the Court's July 19, 2011 decision denying their motion to dismiss the complaint filed by Plaintiff EA Independent Franchisee Association, LLC ("EAIFA") for lack of standing, and (ii) for a stay of discovery pending a decision on their motion for reconsideration.

## I.      INTRODUCTION

Challenges to a federal court's subject-matter jurisdiction, because they address the court's power to hear a case, demand careful consideration, and therefore the burden is appropriately placed on the plaintiff to establish jurisdiction.  When the alternative to federal court jurisdiction is an arbitration forum, that scrutiny is all the more necessary, because a decision that keeps a case in court through discovery and beyond will greatly reduce the benefits of arbitration.

In denying Defendants' motion to dismiss for lack of standing, the Court provisionally determined that subject-matter jurisdiction exists, but it has invited Defendants to revisit that issue if later developments in the case demonstrate that the presence of individual members of EAIFA is necessary to establish its claims. However, there are at least three compelling reasons to revisit the jurisdictional issue now, before it is effectively too late to undo the harm caused by a denial or delay of Defendants' right to arbitrate their disputes with EAIFA's members.

First, the factual record is sufficiently developed for the Court to find that no subject-matter jurisdiction exists. EAIFA has conceded that all of its members are required to arbitrate all of the disputes raised in its Complaint. Courts have uniformly found this evidence alone sufficient to hold that a party to an arbitration agreement cannot avoid its obligation to arbitrate by asserting its claims through an association. Thus, the Court need not await any further development of the record to find that subject-matter jurisdiction does not exist.

Second, as just mentioned, there is extensive authority, which was cited in Defendants' briefs but, respectfully, overlooked by this Court in its ruling on the motion to dismiss, that uniformly holds that associations cannot pursue claims on behalf of their members when the members have agreed to mandatory arbitration of those claims. Thus, Defendants have satisfied one of the substantive standards for reconsideration under Local Rule 7(c)(1). Indeed, given that this would be the only case in the country to sanction an association's effort to make an end-run around a mandatory arbitration provision that would govern the dispute if brought by its individual members, Defendants submit that, if the Court is not inclined to grant reconsideration, it should schedule briefing on whether the decision should be certified for interlocutory appeal under 28 U.S.C. Sect. 1292.

Third, the failure to take this opportunity to correct the Court's preliminary determination on subject-matter jurisdiction will work a manifest injustice on Defendants -- another substantive standard for reconsideration -- by seriously impairing their right to arbitrate with as many as 170 franchisees and causing Defendants to forfeit the very benefits of arbitration for which they contracted.[1] For much the same reason, good cause exists to grant a continuing stay of discovery until the Court decides the motion for reconsideration.

Defendants further submit that oral argument would be helpful to a full understanding of the issues raised in the current motion, in particular since they did not have an opportunity to present oral argument on the motion to dismiss as the Court originally indicated it would hear.

## II.     **STATEMENT OF FACTS**

On September 20, 2010, EAIFA, an association that claims to represent more than 170 franchisees of the Edible Arrangements franchise system, filed a lawsuit against EAI and several of EAI's affiliates asserting claims for declaratory relief on behalf of its franchisee members for alleged breaches of their individual franchise agreements with EAI and violations of the Connecticut Unfair Trade Practices Act.  On December 6, 2010, Defendants filed a motion to dismiss the lawsuit for lack of associational standing under Rule 12(b)(3) of the Federal Rules of Civil Procedure.  Defendants challenged EAIFA's standing in large part on the ground that each member of EAIFA had entered into an arbitration agreement with EAI that required them individually to arbitrate, rather than litigate, the very claims that EAIFA had asserted on their

---

[1]     Defendants have contemplated filing individual arbitration actions or petitions to compel arbitration against a representative sample of EAIFA's members but are reluctant to multiply the proceedings when such steps should not be necessary in light of the unanimity among courts regarding an association's lack of standing when its members are subject to mandatory arbitration of disputes.

behalf against Defendants.  Defendants also contended that EAIFA lacked standing because (1) the individual members themselves did not have standing to raise the claims asserted for declaratory relief; (2) the nature of the claims asserted required the individual participation of EAIFA's members in the lawsuit; and (3) the declaratory relief sought likewise required participation of the individual members in the lawsuit.

Several days later, Defendants filed a motion to stay discovery pending a ruling by the Court on their motion to dismiss.  In its response brief on the motion to dismiss, EAIFA did not acknowledge or address the arbitration issue at all, apparently conceding, by its conspicuous silence on the arbitration issue, that it lacked standing.

On April 11, 2011, the Court held a telephonic status conference to discuss the parties' recently submitted Rule 26(f) report.  During that conference, the Court indicated that it was going to grant the motion to stay discovery pending its ruling on the motion to dismiss because, among other things, Defendants had raised sufficiently strong arguments in support of their potentially dispositive subject-matter jurisdiction motion to satisfy the good cause standard for a stay of discovery.  Addressing the motion to dismiss itself, the Court expressed skepticism that EAIFA could have standing in light of the arbitration agreements.  The Court stated that it wanted to hear oral argument on the motion to dismiss, and noted that it would be up to EAIFA's counsel to convince the Court that EAIFA had standing despite the arbitration agreements. Following the April 11, 2011 status conference, counsel for both sides were informed that the Court did not want to schedule oral argument until after a settlement conference was held with Magistrate Judge Fitzsimmons, which took place on June 7, 2011.

At the conclusion of the settlement conference on June 7, 2011, counsel for the parties agreed to continue settlement discussions, and a conference call between counsel was eventually

scheduled for July 19, 2011. During that telephone conference, counsel for both sides agreed that further settlement discussions at that time would probably not be productive, and therefore the parties agreed to approach the Court with a request to schedule oral argument during the week of August 29th.

Later that same afternoon, however, the parties received a copy of the Court's Memorandum of Decision, dated July 19, 2011, which denied Defendants' motion to dismiss for lack of standing. The Court rejected each of Defendants' challenges to EAIFA's standing, with the exception of Defendants' arguments under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, *see* Defendants' Memo. in Support, pp. 30-33, which the Court did not specifically address. With respect to the arbitration issue, the Court made no findings about whether the individual EAIFA members were obligated to arbitrate their disputes, but concluded that because EAIFA itself had no right or obligation to arbitrate, the "arbitration provision of the individual members' franchise agreements does not require the Court to conclude that plaintiff lacks standing." Memorandum of Decision, p. 4. The Court did not cite any authority for that holding, nor did it address the numerous authorities cited in Defendants' opening brief, *see* Defendants' Memo. in Support, pp. 21-23, wherein courts dismissed lawsuits brought by associations for lack of standing where their members were obligated to arbitrate disputes with the defendant.[2]

## III.   ARGUMENT

A motion for reconsideration may be based solely upon "matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order." Local R. Civ. P.

---

[2]   While Defendants respectfully disagree with other aspects of the Court's analysis of the standing issue, their motion for reconsideration is limited to that aspect of the Court's opinion dealing with arbitration and standing.

7(c)(1). Such a motion should be granted where the Court has overlooked facts or precedent which might have "materially influenced" the earlier decision. *See, e.g., Phoenix Surgicals, LLC v. Blackstone Medical, Inc.*, 2011 WL 63992, at *1 (D. Conn. Jan. 3, 2011).[3] Motions for reconsideration under Rule 59(e) afford the court "an opportunity to correct manifest errors of law or fact, hear newly discovered evidence, consider a change in the applicable law or prevent manifest injustice." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 182 F.R.D. 97, 100 (S.D.N.Y. 1998). Reconsideration is warranted in this case both because the Court has overlooked the uniform body of caselaw that dictates a contrary result and because otherwise manifest injustice would result if all of EAIFA's members are allowed to freely disregard their arbitration obligations.

A.   **The Court's Holding Conflicts With A Substantial Body Of Precedent.**

A substantial number of courts have considered the issue of whether an association can maintain a lawsuit on behalf of its members if the members are obligated to arbitrate their disputes with the defendant, and those courts have all come to the same conclusion: the association's lawsuit must be dismissed in favor of individual arbitrations by its members. Most of these cases have arisen in the medical association context, where the issue is whether a medical association has standing to sue on behalf of its member physicians when they have entered into agreements to arbitrate their disputes with a health insurer or administrator.

For example, in *Pennsylvania Psychiatric Society v. Spring Green Health Services, Inc.*, 2000 WL 33365907 (W.D. Pa. Mar. 24, 2000), the plaintiff, a volunteer medical association

---

[3]  Copies of all unreported decisions cited herein are attached as Group Exhibit A in the order they appear in the brief.

whose members included licensed psychiatrists, sued Spring Green Health Services, an administrator of behavioral health and substance abuse services on behalf of several HMOs, as well as the HMOs themselves, alleging on behalf of its members that the defendants had failed to pay member psychiatrists for services rendered, interfered with the physician-patient relationship and imposed burdensome administrative requirements that interfered with the appropriate treatment of patients. As the administrator of the services, Spring Green had entered into provider participation agreements (PPAs) with individual psychiatrists, many of whom were members of the plaintiff medical association. Each PPA contained an arbitration clause.

The district court granted the defendants' motion to dismiss for lack of standing, finding that the association could not meet the third element of associational standing in *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333 (1977), because participation of the individual members would be necessary to establish liability. As an alternative ground for dismissal, the district court relied on the fact that all of the PPAs contained arbitration clauses:

> [T]he individual members of the Provider Network should not be permitted to circumvent the arbitration provision by having their claims brought by an association of which they are members, but which itself is not a party to the provider agreements. ... [A]voidance of an arbitration provision by suing through a surrogate is simply not an appropriate use of associational standing.

2000 WL 33365907, at *7 (emphasis added). As a result, the court found that the association could not raise any of the claims in court and instead held that "[p]laintiff's members must proceed to arbitration on such claims." *Id.* Although the Third Circuit reversed the district court's determination that individualized evidence would be necessary under *Hunt* to resolve the plaintiff's claims for injunctive and declaratory relief, the court of appeals did not address the district court's alternative holding based on the arbitration provisions, but instead remanded the case for the district court to "re-examine the scope as well as the effect of the arbitration

provision" in light of its holding. *See Pennsylvania Psychiatric Society v. Spring Green Health Services, Inc.*, 280 F.3d 278, 294 (3d Cir. 2002).

Similarly, in *In re Managed Care Litigation*, 2003 WL 24410373 (S.D. Fla. Sept. 15, 2003), *aff'd sub. nom, Klay v. All Defendants*, 389 F.3d 1191 (11th Cir. 2004), a group of medical associations and individual physicians sued several HMOs for RICO violations and other claims. The defendants moved to compel arbitration of the claims based on the arbitration agreements that a number of the plaintiff physicians had entered into with the HMOs. The district court granted that motion in part and compelled the plaintiffs with arbitration agreements to arbitrate their claims, finding that "[a]ssociations suing in a representative capacity are generally bound by the same limitations and obligations as members that they represent." *Id.* at *9. The plaintiff medical associations then argued that since not all of the physicians agreed to arbitrate, the plaintiffs were asserting claims only on behalf of those members who had not signed arbitration agreements. The court rejected this attempt at partial representation, holding that partial representation

> would violate the prudential standing requirements articulated in the third prong of the <u>Hunt</u> test . . . [because] participation of individual members is unavoidable. <u>The only way for the Court to determine which members have claims not subject to arbitration and what prospective relief might be appropriate for those members is for each member to participate and defend against a motion to compel arbitration.</u>

*Id.* (emphasis added) (citations omitted). The court therefore required all of the associations' claims to be heard in arbitration.

Some years later, in a proceeding to compel arbitration arising out of the same *In re Managed Care Litigation* matter, the district court rejected the argument made by certain non-signatory physicians associations that they were not obligated to arbitrate claims brought on behalf of their signatory members. The district court observed that "courts <u>have regularly</u>

recognized that claims arising out of enforceable arbitration agreements, whether brought by the signatory doctors or a group that represents them, must be arbitrated." *In re Managed Care Litigation*, 2009 WL 855963, at * 8 (S.D. Fla. 2009) (emphasis added) (citing *AT & T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986)).

Likewise, in *Maryland Optometric Association v. Davis Vision, Inc.*, Civ. No. WDQ-04-02153 (D. Md. Dec. 21, 2004), the district court granted the defendants' motion to dismiss the complaint brought by a medical association that alleged antitrust violations on behalf of its member physicians. The court held that because some of the association's members had signed contracts with one of the defendants requiring all disputes to be arbitrated, those individual members could not pursue an action in federal court on their own behalf and therefore "they may not circumvent [the arbitration] provision by suing through an association." *Id.*, Memorandum Opinion and Order, at 8.

In *Connecticut State Medical Society v. Oxford Health Plans, (CT) Inc.*, 2001 WL 1681903 (Conn. Super. Ct. Dec. 13, 2001), *aff'd on other grounds*, 863 A.2d 645 (2005),[4] the Connecticut Superior Court dismissed a medical association's complaint based on the arbitration

---

[4] In affirming the Connecticut Superior Court's dismissal of the plaintiff's direct claims for lack of standing, the Connecticut Supreme Court held that the individual physician members would be bound to arbitrate their individual claims for relief, and that permitting the medical association to bring the action "would be to countenance an end run around those arbitration provisions, a result that is incompatible with the express agreement of the parties to those contracts." 863 A.2d at 651; *see also Granite Communication, Inc. v. One Communications Corp.*, 2008 WL 4793729, at *6 (D. Conn. Oct. 31, 2008) (dismissing plaintiff's claim for lack of standing and quoting with approval the above-quoted language in *Connecticut State Medical v. Oxford Health Plans* regarding using associations as a means to make an "end run" around arbitration provisions).

clause in its members' contracts with the defendant, finding that the medical association had no standing to raise those claims.  The court reasoned as follows:

> An association whose members cannot, for procedural reasons, bring suit on their own behalf, has no standing to bring the same suit on its members' behalf.  To hold otherwise would be to defeat the enforceability of arbitration agreements, as a party that had agreed to arbitrate could side-step that obligation merely by having a surrogate, whether an association or an assignee, bring the suit on its behalf, depriving the other party to the contract of the benefit of the provisions of the contract.

2001 WL 1681903, at *6 (emphasis added).

In yet another case, *Tennessee Medical Association v. BlueCross BlueShield of Tennessee, Inc.*, 229 S.W.3d 304 (Tenn. App. 2007), the court of appeals affirmed the trial court's dismissal of a medical association's claims against the defendant based on the compulsory arbitration provisions in the contracts between the member providers of the association and the defendant.  The court reasoned as follows:

> In the case at bar, all of the contracts between the physician-providers on the one hand and [BlueCross BlueShield] on the other, contain compulsory arbitration provisions.  [Tennessee Medical Association] has no contractual relation of any kind with [BlueCross BlueShield].  The trial court held that [Tennessee Medical Association] could not escape the mandatory arbitration provisions in each of the provider contracts, and no logical reason exists to say otherwise.  The providers in this case cannot escape their commitments to arbitrate by having a representative sue on their behalf.

*Id.* at 309-10 (emphasis added) (citing *In re Managed Care Litigation*, 2003 WL 22410373, and *Pennsylvania Psychiatric Society v. Spring Green Health Services, Inc.*, 2000 WL 33365907).

In *Medical Society v. Oxford Health Plans, Inc.*, 790 N.Y.S.2d 79 (App. Div. 2005), an association of physicians sought to enjoin the defendants from engaging in various practices that allegedly were harming the physician members.  The New York intermediate court of appeals upheld the trial court's dismissal of the case for lack of standing, holding that "[p]laintiff does

not have standing to sue defendants on behalf of its members who have been injured by defendants' practices because all such members have agreed to arbitrate their disputes with defendants." *Id.* at 80.

In *Pennsylvania Chiropractic Association v. Blue Cross Blue Shield Association*, 713 F. Supp.2d 734 (N.D. Ill. 2010), the court determined that an association of chiropractic physicians could not pursue claims on behalf of its individual members who signed provider agreements with individual Blue Cross and Blue Shield entities that included arbitration clauses requiring them to arbitrate disputes with the defendant entities. After observing that the defendants' motion to compel arbitration could equally be characterized as a contention that the association lacked standing to bring suit on behalf of its members, the court addressed whether the association had satisfied the third prong of the *Hunt* test regarding the necessity of participation of individual members in the lawsuit:

> If, as defendants contend, at least some of [plaintiffs'] signed provider agreements that include arbitration clauses (an assertion that plaintiffs do not dispute), <u>then the participation of individual members is required to determine whether which if any of their claims are subject [to] arbitration, and [plaintiff] fails to satisfy the third element of the *Hunt* test. . . . The Court therefore concludes that [plaintiff] may not pursue claims on behalf of its individual members.</u>

*Id.* at 744-45 (emphasis added) (citations omitted).

Only one such case has arisen in the franchise context, a lawsuit filed in Connecticut Superior Court by an association of Subway franchisees against their franchisor for breach of contract and statutory violations arising out of the franchisor's adoption of a new form of franchise agreement. *See North American Association of Subway Franchisees, Inc. v. Doctor's Assocs, Inc.*, No. CV-06-2194-S. The franchisor filed petitions to compel arbitration in Connecticut federal district court against the association's officers and directors to require them

to arbitrate the claims asserted in the state court action and also sought to enjoin the association from pursuing that action pending the conclusion of the arbitrations. Judge Dorsey granted the petitions to compel arbitration, finding that the association's members could not avoid their obligations to arbitrate by suing through an association: "To hold otherwise would violate the arbitration clause and undermine the federal policy favoring arbitration by permitting Defendants to use a surrogate organization to bypass their arbitration agreement and pursue claims in court that should be resolved through [arbitration]." *Doctor's Assocs, Inc. v. Downey,* No. 06-CV-01170, at 11 (D. Conn. Feb. 12, 2007) (ruling on plaintiff's petitions to compel arbitration). While the case was not decided on standing grounds per se, Judge Dorsey's reasoning is equally applicable here.

As all of these cases demonstrate, parties who have agreed to arbitrate their disputes may not circumvent that obligation by forming an association to pursue claims on their behalf in court. Not a single case has reached the opposite conclusion. It is not surprising, therefore, that this Court's decision on the motion to dismiss did not cite any authority for its conclusion that the arbitration agreements were no impediment to EAIFA's associational standing. The fact that EAIFA itself may have no right or obligation to arbitrate the disputes of its members, which the Court focused on in its opinion, is largely beside the point because Defendants are not seeking to compel EAIFA to arbitrate the claims. The only relevant issues are whether its members are obligated to arbitrate disputes – and, again, EAIFA does not dispute this point – and, if so, whether the members are permitted to disregard their obligation to arbitrate simply by forming an association to advance their claims in court. As to the latter issue, Defendants submit that the unanimous and definitive answer from the substantial number of courts that have considered the

issue is a resounding "No." For that reason alone, reconsideration is warranted, and, upon further review, the Court should grant Defendants' motion to dismiss for lack of standing.

**B.   Reconsideration Is Also Required To Prevent Manifest Justice.**

Reconsideration is also warranted in this case to prevent manifest injustice. Unless reconsideration is granted, as many as several hundred franchisees will be permitted to make an end run around their arbitration agreements and deprive Defendants of the benefits of those agreements, a result that flies in the face of the Federal Arbitration Act and the strong federal policy favoring enforcement of arbitration agreements under that Act. In addition, franchisees in other franchise systems, as well as other groups of similarly-situated individuals who operate under standardized contracts with a third party that require arbitration of all disputes, will be encouraged to form associations for the sole purpose of evading their arbitration agreements and the individualized arbitration of their disputes. Such a result is in direct contravention of recent United States Supreme Court decisions that reinforce the principle that arbitration agreements are to be rigorously enforced, particularly when they require individualized arbitration of disputes as opposed to collective resolution either in an arbitral forum or in court.

The Federal Arbitration Act ("FAA") was enacted in 1925 in response to widespread judicial hostility to arbitration agreements. *See Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008). Section 2 of the FAA, the primary substantive provision of the Act, provides that arbitration agreements "shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The United States Supreme Court has described this provision as reflecting both a "liberal federal policy favoring arbitration," *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983), and the "fundamental principle that arbitration is a matter of contract," *Rent-*

*A-Center, West, Inc. v. Jackson*, 561 U.S. ---, ---, 130 S. Ct. 2772, 2776 (2010). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1745-46 (2011) (citations omitted).

Because the "principal purpose" of the FAA is to "ensur[e] that private arbitration agreements are enforced according to their terms," *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989), Section 3 of the FAA requires courts to stay litigation of arbitrable claims pending arbitration of those claims "in accordance with the terms of the agreement," and Section 4 of the Act requires courts to compel arbitration in accordance with the terms of the agreement upon the motion of either party to the agreement. *See* 9 U.S.C. §§ 3, 4. In light of these provisions, the United States Supreme Court has held that parties may agree to limit the issue subject to arbitration, *Mitsubishi Motors Corp. v. Soler-Chrysler Plymouth, Inc.*, 473 U.S. 614, 628 (1995), to arbitrate according to specific rules, *Volt*, 489 U.S. at 479, and to limit with whom a party will arbitrate its disputes. *Stolt-Nielsen S.A. v. AnimalFeeds Intl, Corp.*, 559 U.S. ---, ---, 130 S. Ct. 1758, 1773 (2010).

In this case, the arbitration agreement that each EAIFA member entered into with EAI provides that "Franchisee and EA[I] agree that arbitration will be conducted on an individual, not a class-wide, basis and that an arbitration proceeding between EA[I] and its affiliates . . . and Franchisee . . . may not be consolidated with any other arbitration proceeding between EA[I] and any other person." In addition, the arbitration agreement of every EAIFA member obligates the franchisee to arbitrate "all controversies, disputes, or claims" between the franchisee and EAI and its affiliates "arising out of or relating to:

        (1)      [the Franchise] Agreement or any other agreement between them;

        (2)      EA[I]'s relationship with Franchisee;

        (3)      the validity of [the Franchise] Agreement or any other agreement between them; or

        (4)      any System Standard."

*See* Declaration of Kristy Ferguson, ¶ 14, Ex. B [Docket # 27] (submitted with Defendants' Motion to Dismiss). As a result, it is manifestly clear from the language of the arbitration agreements of every EAIFA member that the franchisees are required to arbitrate, not litigate, any and all disputes with Defendants, including all of the claims that are raised in EAIFA's complaint, and to arbitrate those disputes on an individual basis and not collectively through a class action or consolidated proceeding.

        EAIFA's lawsuit runs afoul of its members' arbitration agreements and the FAA in two respects. First, it disregards the franchisees' contractual duty to arbitrate their disputes with Defendants. Second, it disregards the franchisees' contractual duty to arbitrate those disputes on an individual and not a collective basis. The end result is that if EAIFA is permitted to continue pursuing claims on behalf of its members in this Court, as many as several hundred franchisees will have successfully made an end run around their obligation to arbitrate disputes with Defendants in accordance with the terms of their arbitration agreements. Such a result is in direct contravention of the FAA and would result in manifest injustice to the arbitration rights of Defendants.[5]

---

[5] In the cases discussed above, in which the courts held that members of an association could not evade their obligation to arbitrate their disputes individually by suing through an association, the courts in each case presumed that the reason for the association's lawsuit was, in fact, to

Permitting the Edible Arrangements franchisees to assert their individual claims through an association as a vehicle to circumvent their obligation to arbitrate will encourage other similarly-situated parties to do likewise. Mandatory arbitration provisions are commonplace in the franchise industry, and franchisees in those systems that utilize arbitration agreements will undoubtedly seize on the Court's opinion on the motion to dismiss as a convenient way to avoid their contractual obligation to arbitrate disputes with their franchisors on an individual basis. To be sure, franchisees suing through an association would need to forgo damages claims in order to satisfy *Hunt*'s third prong for standing, at least in the first instance. But there is little to prevent those franchisees from initially seeking a declaratory judgment regarding liability and then filing individual arbitrations to prove up damages if they are successful in establishing liability, much like EAIFA's members might attempt in this case.

However, in two recent decisions, the United States Supreme Court has rejected attempts by parties to an arbitration agreement to evade their obligation to arbitrate disputes on an individual basis, and EAIFA's attempt to do so through an association should be treated no differently. In *Stolt-Nielsen v. AnimalFeeds International Corp.*, 559 U.S. ---, ---, 130 S. Ct. 1758, 1773 (2010), the Supreme Court held that parties could not be compelled to submit claims to class arbitration where the arbitration agreement was completely silent on the question of class arbitration. *See* 130 S. Ct. at 1773-76. Similarly, in *AT&T Mobility v. Concepcion,* 131 S. Ct. 1740 (2011), the Supreme Court held that a state judicial rule regarding the unconscionability of

---

avoid its members' duty to arbitrate, particularly since there was no impediment to the members filing their own individual arbitrations. While Defendants submit that EAIFA's motivation in this case is no different, to the extent there is any doubt, Defendants request that the Court hold a short evidentiary hearing, preceded by limited discovery of EAIFA directed to the issue of subject-matter jurisdiction, at which Defendants will demonstrate that EAIFA was formed in large part to get around its members' obligation to arbitrate their disputes with Defendants.

class arbitration waivers in consumer contracts was pre-empted by the FAA where application of the rule would have invalidated the parties' agreement to arbitrate on an individual and not a collective basis. *See* 131 S. Ct. at 1746-53. In both cases, the Supreme Court relied on the bedrock principle underlying the FAA that arbitration agreements are to be enforced according to their terms, and the Supreme Court held that if the agreements required individual arbitration rather than collective resolution in either a court or arbitral forum, the lower courts were required under the FAA to enforce those agreements.

Here, the franchisees' attempt to evade their obligation to arbitrate on an individual basis through the vehicle of an association is no different than the plaintiffs' attempts in *Stolt-Nielsen* and *AT&T Mobility* to escape their contractual obligations to arbitrate individually with the defendants and should be rejected for the very same reasons. Indeed, this is an easier case for enforcing the arbitration agreements according to their terms than was the case in *Stolt-Nielsen* and *AT&T Mobility*, since here there is no issue of contractual intent in the face of silence, as there was in *Stolt-Nielsen*, nor is there a state statute or judicial rule that disfavors arbitration, as was the case in *AT&T Mobility*. Simply put, EAIFA's filing of a lawsuit asserting claims on behalf of its members that are undeniably arbitrable is a blatant violation of the terms of the arbitration agreements and cannot be squared with the FAA's mandate to enforce arbitration agreements in accordance with their terms. As a result, EAIFA does not have standing to maintain this action in the face of the arbitration agreements of its members.

C.   **Discovery Should Be Stayed Pending A Ruling On Defendants' Motion For Reconsideration**

As noted above, the Court stayed discovery pending its ruling on Defendants' motion to dismiss, concluding that there was good cause to do so in light of the strength of Defendants' motion, the breadth of discovery sought by EAIFA and the prejudice (or lack thereof) that a

temporary stay would have on EAIFA.  The same reasons that supported the initial stay of discovery weigh strongly in favor of extending the stay until the Court rules on Defendants' motion for reconsideration.  Good cause exists for a continuing stay of discovery because (1) Defendants' motion for reconsideration is well-grounded and likely to succeed, (2) EAIFA's initial sets of interrogatories and document requests served on Defendants make clear that it intends to conduct extremely broad and burdensome discovery even though its members would have no right to pursue any court-supervised discovery under their arbitration agreements, and (3) EAIFA would not suffer any prejudice if a temporary additional stay of discovery is granted.

As demonstrated above, Defendants' contention that EAIFA lacks standing to raise claims on behalf of its members in light of their mandatory arbitration agreements is well-founded in law and in fact.  It is undisputed that the claims asserted by EAIFA for breach of contract and statutory violations fall squarely within the scope of the arbitration agreements between EAIFA's members and EAI (including its affiliates).  It is equally undisputed that the arbitration agreements require these claims to be arbitrated by the franchisees on an individual basis and not collectively in an arbitral or judicial forum.  Moreover, the substantial number of courts that have addressed the question have all held that an association lacks standing to assert claims on behalf of its members where the members are individually obligated to arbitrate their disputes with the defendant. *See supra* pp. 6-12.  Given the strength of their factual and legal arguments on the issue of arbitration, Defendants have easily satisfied the relatively low threshold for likelihood of success on their potentially dispositive motion for reconsideration in determining whether good cause exists for a stay of discovery while that motion is pending . *See, e.g., Cuartero v. United States,* 2006 WL 3190521, at *2 (D. Conn. Nov. 1, 2006) (finding good cause to grant a stay of discovery because, among other things, "defendant's memorandum

of law does appear to raise substantial issues"); *Frontier Steel Bldgs. v. S.J. Amoroso Constr. Co., Inc.*, 2008 WL 1925100, at *1-2 & n. 1 (D. Colo. May 1, 2002) (granting motion to stay discovery during pendency of motion to dismiss or transfer where motion was supported by legal analysis and not mere "conclusory assertions" and raised issues that were beyond "idle speculation"); *Gandler v. Nazarov*, 1994 WL 702004, at *4 (S.D.N.Y. Dec. 14, 1994) (granting stay of discovery pending ruling on potentially dispositive motion to dismiss that "appears to be not unfounded in the law" in order to avoid need for costly and time-consuming discovery); *Chrysler Capital Corp. v. Century Power Corp.*, 137 F.R.D. 209, 211 (S.D.N.Y. 1991) (staying discovery where motions to dismiss "appear to have substantial grounds").

In light of the extremely broad and burdensome written discovery requests that EAIFA served on Defendants before the initial stay of discovery was imposed (copies of which are attached as Group Exhibit B), it is beyond question that EAIFA intends to pursue wide-ranging and costly discovery if a temporary stay of discovery is not granted.  Permitting such broad discovery to proceed at this stage of the litigation, while the issue of subject-matter jurisdiction is still being sorted out, would be grossly inefficient for both sides and may unnecessarily deplete the parties' resources if the Court should ultimately determine that it lacks subject-matter jurisdiction to decide the case or supervise the parties' discovery for that matter.  *See, e.g., Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127, 130 (2d Cir. 1987) (upholding trial court's decision to stay discovery pending decision on *forum non conveniens* motion, because permitting discovery would defeat the very purpose of the motion); *Cuartero* 2006 WL 3190521, at *3 (staying discovery because "[p]ermitting discovery to proceed at this point would be unduly burdensome to the Defendants and would be inefficient for both parties, since the court's decision on the Motion to Dismiss may significantly narrow the issues").

Moreover, a continuing stay of discovery is all the more warranted in this case because, as noted above, the principal reason for EAIFA's lack of standing is that its members are obligated to arbitrate their disputes with EAI and its affiliates on an individual basis under the auspices of the AAA and its arbitration rules.  Thus, any discovery should be pursued by EAIFA's members in individual arbitration proceedings and under the AAA's rules and the arbitrator's supervision, and not by their surrogate association in a judicial forum.  As noted in Defendants' opening brief on their motion to stay discovery, courts routinely grant stays of discovery pending resolutions of motions to compel arbitration or to stay litigation pending arbitration.  *See* Defendants' Memo. in Support of Motion to Stay Discovery, pp. 8-9 (citing cases).  The parties should not be required to incur the expense of discovery in a judicial forum when that discovery is exclusively the arbitrator's province to oversee.  Any other approach would subject Defendants "to the very complexities, inconveniences and expenses of litigation that [the parties] determine to avoid [by agreeing to arbitrate]."  *Suarez-Valdez v. Lehman American Express, Inc.*, 858 F.2d 648, 649-650 (11th Cir. 1998) (Tjoflat, J., concurring.)

Finally, good cause for a stay of discovery also exists because EAIFA will not be prejudiced by a continuance of the stay until the Court rules on Defendants' motion for reconsideration.  Since the parties have been instructed to file an amended Rule 26(f) report following the Court's decision on the motion to dismiss, no discovery deadlines are yet in place.  Moreover, since the case is still in its initial stages, EAIFA will not be prejudiced by a temporary delay in the commencement of discovery during the pendency of the motion for reconsideration.  *See, e.g., Cuartero*, 2006 WL 3190521, at *2 (observing that any prejudice from stay of discovery would be minimal because stay would last only until resolution of motion to dismiss).

In fact, if the motion for reconsideration is granted, the requested stay will save both parties considerable time and expense in discovery motions and proceedings.

<strong><u>CONCLUSION</u></strong>

For all the reasons stated above, Defendants respectfully request that the Court enter an order (1) granting reconsideration of its July 19, 2011 Memorandum of Decision denying Defendants' motion to dismiss; (2) granting Defendants' motion to dismiss and dismissing this case for lack of subject-matter jurisdiction; and (3) staying discovery until the Court decides Defendants' motion for reconsideration. Alternatively, Defendants request that the Court set a briefing schedule on whether its decision on the motion to dismiss should be certified for interlocutory appeal under 28 U.S.C. Sect. 1292.

**THE DEFENDANTS, EDIBLE ARRANGEMENTS INTERNATIONAL, INC., EA CONNECT, INC., NETSOLACE, INC. and DIPPEDFRUIT, INC.**

By: /s/James T. Shearin
    James T. Shearin, Esq. (ct 01326)
    Pullman & Comley, LLC
    850 Main Street, P.O. Box 7006
    Bridgeport, CT  06601-7006
    Juris No. 47892
    Phone:  (203) 330-2000
    Facsimile (203) 576-8888
    E-mail:  jshearing@pullcom.com

By: /s/John F. Verhey
    John F. Verhey, Esq.
    DLA Piper LLP (US)
    203 North LaSalle Street, Suite 1900
    Chicago, IL  60601-1293
    Phone:  (312) 368-4044
    Facsimile:  (312) 251-2194
    E-Mail:  john.verhey@dlapiper.com

## **CERTIFICATION**

I hereby certify that on August 1, 2011, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


/s/John F. Verhey
Admitted Pro Hac Vice