# GROUP EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| EA INDEPENDENT FRANCHISEE ASSOCIATION, LLC<br><br>Plaintiff,<br><br>vs.<br><br>EDIBLE ARRANGEMENTS INTERNATIONAL, INC. AND EA CONNECT, INC., NETSOLACE, INC., DIPPEDFRUIT, INC., and XYZ CORPORATIONS 1-20, fictitious entities,<br><br>Defendants. | Civil Action No. 10-cv-1489 (WWE)<br><br><br><br>April 8, 2011 |

## PLAINTIFFS' INTERROGATORIES TO DEFENDANT DIPPEDFRUIT, INC.

TO:   Defendants                                Defendants
      c/o James T. Shearin, Esq.                c/o John F. Verhey, Esq.
      Pullman & Comley, LLC                     DLA Piper LLP (US)
      850 Main Street, P.O. Box 7006            203 North LaSalle Street, Suite 1900
      Bridgeport, CT 06601-7006                 Chicago, IL 60601-1293

Plaintiffs, pursuant to Fed. R. Civ. P. 33 and by their counsel Berdon, Young & Margolis, P.C., and Marks & Klein, LLP, submit the following Interrogatories to Defendant Dippedfruit, Inc. ("DippedFruit" or "Defendant"). Defendant shall respond to these Interrogatories in writing and under oath within thirty (30) days of the date of service by serving answers upon Stuart A. Margolis, Berdon Young & Margolis, 132 Temple Street, New Haven, CT 06510, and Justin M. Klein and Louis D. Tambaro, Marks & Klein, LLP, 63 Riverside Ave., Red Bank, NJ 07701.

## DEFINITIONS

As used in these Interrogatories, each of the following terms has the specified meaning set forth below:

### Case Specific Definitions

1.    "Franchise Agreement" means any contract or other agreement granting the Franchise Owner the right to own and operate an Edible Arrangements franchise.

2.    "Franchise Owner" means each Person throughout the United States (as defined below) that signed a Franchise Agreement giving them the right to operate an Edible Arrangements restaurant.

3.    "Franchisor" means (a) the Edible Arrangements entity or entities responsible for granting franchise rights to franchisees throughout the United States (as defined below); (b) the Edible Arrangements entity or entities governing, managing and/or administering those franchise relationships throughout the United States; and (c) all other Persons over whom the Franchisor maintains control or otherwise relies on to operate the Edible Arrangements franchise system throughout the United States.   The definition includes the respective agents, employees, affiliates, subsidiaries representatives, predecessors, successors and assigns of each such Person.

4.    "Person" means any natural person and any corporation, partnership, limited liability company, firm, joint venture, sole proprietorship or other legal or business entity of any kind.

5.    "Plaintiffs" means the representative plaintiffs in this action, namely the EA Independent Franchisee Association, LLC ("EAIFA").

6.    EAI means the Defendant, Edible Arrangements International, Inc. along with its owners, representatives, agents, employees, predecessors, successors and assigns.

7.    Nesolace Inc. means the Defendant, Netsolace, Inc. along with its owners, representatives, agents, employees, predecessors, successors and assigns.

8.    Dipped Fruit, Inc. or DippedFruit mean the Defendant DippedFruit, Inc. along with its owners, representatives, agents, employees, predecessors, successors and assigns.

9.    EAConnect, Inc. means Defendant EAConnect, Inc. along with its owners, representatives, agents, employees, predecessors, successors and assigns.

10.    "Edible Arrangements Area Directors" means those Persons who at any time have supervised store operations in designated geographic areas throughout the United States, along with their agents, employees, representatives, predecessors, successors and assigns.

11.    "Edible Arrangements Sales Agents" means those Persons who at any time have sold franchise units for Edible Arrangements throughout the United States, along with their agents, employees, representatives, predecessors, successors and assigns.

12.    "UFOC" means Uniform Franchising Offering Circular and relates solely and exclusively to such documents created and distributed in relation to the sale of Edible Arrangements and/or DippedFruit, Inc. franchises as compared to those created and distributed in relation to some other brand.

13.    "FDD" means Franchise Disclosure Document and relates solely and exclusively to such documents created and distributed in relation to the sale of Edible Arrangements and/or DippedFruit, Inc. franchises as compared to those created and distributed in relation to some other brand.

14.    "United States" includes all fifty states in the United States that Edible Arrangements offers franchises for sale.

15.    "Target Area" or "Trade Area" refers to the geographic area designated in the

3

Franchise Agreement where the Franchise Owner is granted the right to operate an Edible Arrangements franchise.

16.    "You," "Your" or "Defendants" collectively means all defendants represented in this action by Pullman & Comley, LLC and/or DLA Piper LLP (US), along with their agents, employees, representatives, predecessors, successors and assigns.

**General Definitions**

17.    "And" means "and/or."

18.    "Communication" means any oral, written, or recorded contact between two or more Persons, or from one or more Persons to one or more other Persons, including, without limitation, face-to-face meetings, telephone conversations, correspondence, electronic mail, messages, and recorded messages.

19.    "Describe" means to give an account of the salient characteristics of the subject asked to be described, including, where applicable, dates and durations of the relevant events, places such events occurred, the names and addresses of all Persons involved in those events, and all sources from which the requested information was obtained.

20.    "Document(s)" means the original and any non-identical copy (which is different from the original or any copy because of notations thereon or attached thereto or otherwise) or drafts of any written, recorded, printed, typewritten, handwritten, graphic, filmed, or videotaped matter or things, including, without limitation:  Electronic Data (as defined below), letters, telegrams, telex, telefax or telecopy reproductions, facsimile, memoranda, reports, studies, diaries (or extracts thereof), minutes, pamphlets, notes, tables, charts,  bulletins, calendars, tabulations, analyses, forecasts, pro forma projections, appraisals, statistical information accumulations, records of meetings and conversations of any kind, film impressions,

photographs, magnetic tape, sound or mechanical reproductions, recordings, proposals, contracts and amendments, offers, counteroffers, drafts of contracts, receipts, telephone records, computer printouts, computer software and computer programs, advertisements, telephone listings, stationary, invoices, bills, purchase orders, regulatory filings, formal or informal board of directors, shareholders or employee meeting minutes or other notes, memoranda, or reports from such meetings (whether or not a quorum was present), employee notices, announcements or disclosures, corporate authorizations, stock quotes, appraisals or forecasts, and financial records of whatsoever kind which are in Your actual or constructive possession, custody or control or known or believed by You to exist or to have existed.  Without limitation, as used in this definition, the word Document is to be construed as broadly as is conceivable.  A Document is deemed to be or to have been in Your "control" if you now have or have had the right to secure or obtain the Document or a copy thereof on demand from another Person or governmental entity having actual physical possession thereof.

21.    "Electronic Data" means any information stored or produced electronically, including, without limitation, electronic mail, word processing documents, computer databases (e.g. payroll, royalty, and advertising fee payments), and electronically stored reports from software applications. Electronic Data includes any such information obtainable from any media including, without limitation: local and networked hard drives, CD-ROMs and floppy disks, personal computers, PDAs, and backup tapes.  As used in this definition, the term Electronic Data is to be construed as broadly as is conceivable and shall encompass any: (a) active data (i.e. electronic files that are easily accessible for Your current and future purposes); (b) meta data (information about the Document or file that is recorded by the computer to assist the computer and often the user in storing and retrieving the Document or file at a later date); (c) replicant data

(data which is automatically created and retained by various systems, including automatic back up files generated by operating systems); (d) backup data (found in backup and archival or legacy data files); and (e) residual data (deleted files and data fragments not yet overwritten) of any kind which are in Your actual or constructive possession, custody or control or known or believed by You to exist or to have existed. Electronic Data is deemed to be or to have been in Your "control" if You now have or have had the right to secure or obtain the document or a copy thereof on demand from another Person or governmental entity having actual physical possession thereof.

22.    "Factual Basis" means all information of any kind of which You are aware whether such information is admissible or inadmissible in evidence. A response setting forth the "Factual Basis" shall include the name and address of any such Persons involved, the identification of any Documents involved, the time and date of the described circumstances, the name and address of any witnesses to the circumstances described, and an exhaustive description of the circumstances and factual aspects of the subject of inquiry.    ALL WRITTEN STATEMENTS PERTAINING TO THE FACTUAL BASIS AS DEFINED IN THIS PARAGRAPH MUST BE IDENTIFIED IN YOUR RESPONSE.

23.    To "identify," or "state the identity of" or "to describe" a Person, if that Person is a natural Person, means to state:

     (a)    His or her name and all other names by which he or she is known;

     (b)    His or her present or last known resident address and telephone number;

     (c)    His or her present or last known business address and telephone number; and

     (d)    His or her present or last known occupation, position, and business

affiliation.

24.     To "identify," or "state the identity of" or "to describe" a Person, if that Person is not a natural Person, means to:

      (a)    State its full name and specify its nature (e.g., corporation, partnership, limited liability company, etc.);

      (b)    Set forth the general nature of its business (e.g., products manufactured or sold, services rendered, etc.);

      (c)    State its present or last known principal business address, identified as such, and such other of its business addresses as are known to You;

      (d)    If it is a corporation, set forth the state of its incorporation, and identify the principal officers of said corporation;

      (e)    If it is a partnership, state whether it is a general or limited partnership, and identify each general or limited partner; and

      (f)    In the case of any other business entity, identify each owner and/or member.

25.     To "identify" or "state the identity of" or "to describe" a Document means to state with respect thereto:

      (a)    The nature or type of the Document (e.g., letter, contract, etc.) and the number of pages or units of which it consists;

      (b)    Its date, and if it bears no date, the date when it was prepared or received;

      (c)    Its author, each signatory or Person over whose name it is issued, and each Person who received, approved or commented on it;

      (d)    All Persons to whom the document was addressed or distributed; and

    (e)    The general subject matter or content of the Document with sufficient particularity to enable it to be identified.

26.    To "identify" or "to describe" an oral Communication means to:

    (a)    Identify each Person who participated in or was present at the Communication;

    (b)    State the date of the Communication;

    (c)    State the place of the Communication;

    (d)    Set forth the substance of what was said by each Person speaking at or during the Communication; and

    (e)    State the means or medium through which the Communication was made (e.g., in person, telephone, etc.).

27.    "Or" means "or/and."

28.    "Relate to" or "relating to" means consisting of, pertaining to, reflecting, evidencing to and/or having any logical or factual connection with the matter discussed.

## INSTRUCTIONS

1.    If, with respect to any Interrogatory, or part or subpart thereof, you exercise Your option, pursuant to Fed. R. Civ. P. 33(d), to produce business records in lieu of otherwise answering such Interrogatory, or part or subpart thereof, the following information must be provided and the following procedures employed:

    (a)    Identify all Documents from which the answer to such Interrogatory or part or subpart thereof may be derived or ascertained;

    (b)    State whether other copies of the Documents described in response to paragraph (a) above exist and, if so, the location of such other copies (e.g.,

the name of the file in which they are kept);

(c)     Identify all Persons who received or reviewed any copies of such Documents;

(d)     In producing such Documents, you must produce such Documents separately and designate the specific interrogatory, or part or subpart thereof, to which each such Document relates, and identify the file or files from which the Documents were segregated.

2.     If any answer is on information and belief, in whole or in part, so state and identify each Person, Document or oral Communication, which is the source of such information or belief.

3.     Where exact data cannot be furnished, estimated data should be supplied and it should be identified as such.

4.     Grammar and syntax, as used in these discovery requests, shall be construed and interpreted to give proper meaning and consistency to its context. By way of illustration and not by way of limitation, the singular form of words may include the plural and the plural form of words may apply to each individual Person, and the use of any gender or tense may be construed to include all genders and tenses, wherever appropriate in these requests, to bring within their scope any information which might otherwise be construed to be outside their scope.

5.     Interrogatories phrased in the present tense shall be construed to refer to the entire time period to which these discovery requests relate.  If any answer would be different for any time to which these requests relate, supply both the current information and such information as may be different for all times for the relevant time period.

## INTERROGATORIES

**INTERROGATORY NO. 1:** Describe the nature of the relationship and business ties between Edible Arrangements International, Inc., and DippedFruit including, but not limited to, the following information regarding DippedFruit's:

    a.    Date of incorporation;

    b.    Corporate structure;

    c.    Names and contact information of its corporate officers;

    d.    Names and contact information of its majority shareholders; and

    e.    Names and contact information of those individuals who run the day-to-day operations and/or management of the corporation.

**ANSWER**

**INTERROGATORY NO. 2:** From the date of creation of the "dippedfruit.com" website as referenced and described in Plaintiff's Complaint for Declaratory Judgment, ¶¶130-131, to the present date, describe DippedFruit's purpose and mission, affiliation with Edible Arrangements International, DippedFruit's product line offerings and inventory, and inspiration for DippedFruit's product line offerings and inventory, including, but not limited to, the similarities and differences between Edible Arrangements International and DippedFruit's business models.

**ANSWER**

**INTERROGATORY NO. 3:**  Describe in detail the process that the "dippedfruit.com" website goes through when customers place an online order for a dippedfruit.com product, including, but not limited to, the interaction, if any, between Edible Arrangements International and dippedfruit.com's websites and the manner in which dippedfruit.com orders are fulfilled, shipped and delivered to customers.

**ANSWER**

**INTERROGATORY NO. 4:** From the date of creation of dippedfruit.com to the present, identify any specific criteria the Franchisor has delineated at any time (whether by directives to Franchise Owners or internally within the corporate structure of the Franchisor) with regard to the process of and qualifications needed for Franchisees to become selected as "dippedfruit.com-approved" Franchisees, and the reasons why all Franchisees cannot all participate in the DippedFruit program.

**ANSWER**

11

**INTERROGATORY NO. 5:**  From the date of creation of dippedfruit.com to the present, describe the benefits and program details of "dippedfruit.com-approved" Franchisees including:

    a) the threshold criteria required for a franchisee to qualify as "dipped-fruit approved;"

    b) identify by Store Number every EAI franchisee to which you currently provide "dippedfruit" products;

    c) identify by name and address the person(s) responsible for determining any such criteria; and,

    d) the content of any communications between You and/or Your representatives and EAI and/or its representatives the determination of "dippedfruit-approved" criteria.

**ANSWER**


**INTERROGATORY NO. 6:**  From the date of creation of dippedfruit.com to the present, describe any contractual agreement and/or addenda to "dippedfruit.com-approved" Franchisees' franchise agreements, wherein Edible Arrangements International grants these Franchisees a "dippedfruit.com-approved" designation, permits them to sell dippedfruit.com products, and any amount of money "dippedfruit.com-approved" Franchisees must pay for the "dippedfruit.com-approved" designation.

**ANSWER**

**INTERROGATORY NO. 7:**  From the date of creation of dippedfruit.com to the present, describe any monetary contributions and/or support that EAI has given, donated and/or loaned to DippedFruit, including, but not limited to, monies from the EAI's National Advertising Fund ("NAF").

**ANSWER**


**INTERROGATORY NO. 8:**  Identify by name and address any and all persons who have information or knowledge concerning any of the allegations contained in the Complaint, stating with respect to each individual whether You intend to call said person as a witness at trial in this matter and describing with specificity the knowledge or information possessed by each listed person.

**ANSWER**


**INTERROGATORY NO. 9:**  Identify each person whom you expect to call as a witness at the at any hearing in this matter, and with respect to each witness, state the subject matter on which the witness is expected to testify and the facts upon which that testimony will be based.

**ANSWER**

Dated this 8th day of April, 2011.

BY:           **BERDON, YOUNG & MARGOLIS, P.C.**
              Attorneys for Plaintiff

              /S/ Stuart A. Margolis
              Stuart A. Margolis (ct08803)
              132 Temple Street
              New Haven, Connecticut 06510
              Telephone: (203) 772-3740
              Fax: (732) 492-4444


              **MARKS & KLEIN, LLP**
              Attorneys for Plaintiff

              /S/ Justin M. Klein
              Justin M. Klein phv04261
              Louis D. Tambaro phv04258
              63 Riverside Avenue
              Red Bank, New Jersey 07701
              Telephone: (732) 747-7100
              Fax: (732) 219-0625

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| EA INDEPENDENT FRANCHISEE ASSOCIATION, LLC | Civil Action No. 10-cv-1489 (WWE) |
| Plaintiff, | |
| vs. | |
| EDIBLE ARRANGEMENTS INTERNATIONAL, INC. AND EA CONNECT, INC., NETSOLACE, INC., DIPPEDFRUIT, INC., and XYZ CORPORATIONS 1-20, fictitious entities, | |
| Defendants. | |

---

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT DIPPED FRUIT, INC.**

---

**TO:**  Defendants
c/o James T. Shearin, Esq.
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601-7006

Defendants
c/o John F. Verhey, Esq.
DLA Piper LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, IL 60601-1293

Plaintiff, EA Independent Franchisee Association, LLC ("EAIFA") pursuant to Fed. R. Civ. P. 34 and by their counsel Berdon, Young & Margolis, P.C., and Marks & Klein, LLP, submit the following First Request for Production of Documents to Defendant DippedFruit, Inc. ("DippedFruit, Inc.")  DippedFruit, Inc. shall respond to these document requests in writing and under oath within thirty (30) days of the date of service by serving answers upon Stuart A. Margolis, Berdon Young & Margolis, 132 Temple Street, New Haven, CT 06510, and Justin M. Klein and Louis D. Tambaro, Marks & Klein, LLP, 63 Riverside Ave., Red Bank, NJ 07701.

1

## DEFINITIONS

As used in these requests, each of the following terms has the specified meaning set forth below:

### Case Specific Definitions

1. "Franchise Agreement" means any contract or other agreement granting the Franchise Owner the right to own and operate an Edible Arrangements franchise.

2. "Franchise Owner" means each Person throughout the United States (as defined below) that signed a Franchise Agreement giving them the right to operate an Edible Arrangements franchise.

3. "Franchisor" means (a) the Edible Arrangements entity or entities responsible for granting franchise rights to franchisees throughout the United States (as defined below); (b) the Edible Arrangements entity or entities governing, managing and/or administering those franchise relationships throughout the United States; and (c) all other Persons over whom the Franchisor maintains control or otherwise relies on to operate the Edible Arrangements franchise system throughout the United States.   The definition includes the respective agents, employees, affiliates, subsidiaries representatives, predecessors, successors and assigns of each such Person.

4. "Person" means any natural person and any corporation, partnership, limited liability company, firm, joint venture, sole proprietorship or other legal or business entity of any kind.

5. "Plaintiffs" means the plaintiff in this action, namely the EA Independent Franchisee Association, LLC ("EAIFA").

6. EAI means the Defendant, Edible Arrangements International, Inc. along with its owners, representatives, agents, employees, predecessors, successors and assigns.

7.    Nesolace Inc.   means the Defendant, Netsolace, Inc. along with its owners, representatives, agents, employees, predecessors, successors and assigns.

8.    Dipped Fruit, Inc. means the Defendant DippedFruit, Inc. along with its owners, representatives, agents, employees, predecessors, successors and assigns.

9.    EAConnect, Inc. means Defendant EAConnect, Inc. along with its owners, representatives, agents, employees, predecessors, successors and assigns.

10.    ""Edible Arrangements Area Directors" means those Persons who at any time have supervised store operations in designated geographic areas throughout the United States, along with their agents, employees, representatives, predecessors, successors and assigns.

11.    "Edible Arrangements Sales Agents" means those Persons who at any time have sold franchise units for Edible Arrangements throughout the United States, along with their agents, employees, representatives, predecessors, successors and assigns.

12.    "UFOC" means Uniform Franchising Offering Circular and relates solely and exclusively to such documents created and distributed in relation to the sale of Edible Arrangements franchises as compared to those created and distributed in relation to some other brand.

13.    "FDD" means Franchise Disclosure Document and relates solely and exclusively to such documents created and distributed in relation to the sale of Edible Arrangements franchises as compared to those created and distributed in relation to some other brand.

14.    "United States" includes all fifty states in the United States that Edible Arrangements offers franchises for sale.

15.    "Target Area" or "Trade Area" refers to the geographic area designated in the Franchise Agreement where the Franchise Owner is granted the right to operate an Edible

3

Arrangements franchise.

16.    "You," "Your" or "Defendants" collectively means all defendants represented in this action by Pullman & Comley, LLC and/or DLA Piper LLP (US), along with their agents, employees, representatives, predecessors, successors and assigns.

**General Definitions**

17.    "And" means "and/or."

18.    "Communication" means any oral, written, or recorded contact between two or more Persons, or from one or more Persons to one or more other Persons, including, without limitation, face-to-face meetings, telephone conversations, correspondence, electronic mail, messages, and recorded messages.

19.    "Describe" means to give an account of the salient characteristics of the subject asked to be described, including, where applicable, dates and durations of the relevant events, places such events occurred, the names and addresses of all Persons involved in those events, and all sources from which the requested information was obtained.

20.    "Document(s)" means the original and any non-identical copy (which is different from the original or any copy because of notations thereon or attached thereto or otherwise) or drafts of any written, recorded, printed, typewritten, handwritten, graphic, filmed, or videotaped matter or things, including, without limitation:  Electronic Data (as defined below), letters, telegrams, telex, telefax or telecopy reproductions, facsimile, memoranda, reports, studies, diaries (or extracts thereof), minutes, pamphlets, notes, tables, charts,  bulletins, calendars, tabulations, analyses, forecasts, pro forma projections, appraisals, statistical information accumulations, records of meetings and conversations of any kind, film impressions, photographs, magnetic tape, sound or mechanical reproductions, recordings, proposals, contracts

4

and amendments, offers, counteroffers, drafts of contracts, receipts, telephone records, computer printouts, computer software and computer programs, advertisements, telephone listings, stationary, invoices, bills, purchase orders, regulatory filings, formal or informal board of directors, shareholders or employee meeting minutes or other notes, memoranda, or reports from such meetings (whether or not a quorum was present), employee notices, announcements or disclosures, corporate authorizations, stock quotes, appraisals or forecasts, and financial records of whatsoever kind which are in Your actual or constructive possession, custody or control or known or believed by You to exist or to have existed.  Without limitation, as used in this definition, the word Document is to be construed as broadly as is conceivable.  A Document is deemed to be or to have been in Your "control" if you now have or have had the right to secure or obtain the Document or a copy thereof on demand from another Person or governmental entity having actual physical possession thereof.

21.    "Electronic Data" means any information stored or produced electronically, including, without limitation, electronic mail, word processing documents, computer databases (e.g. payroll, royalty, and advertising fee payments), and electronically stored reports from software applications. Electronic Data includes any such information obtainable from any media including, without limitation: local and networked hard drives, CD-ROMs and floppy disks, personal computers, PDAs, and backup tapes.  As used in this definition, the term Electronic Data is to be construed as broadly as is conceivable and shall encompass any: (a) active data (i.e. electronic files that are easily accessible for Your current and future purposes); (b) meta data (information about the Document or file that is recorded by the computer to assist the computer and often the user in storing and retrieving the Document or file at a later date); (c) replicant data (data which is automatically created and retained by various systems, including automatic back

up files generated by operating systems); (d) backup data (found in backup and archival or legacy data files); and (e) residual data (deleted files and data fragments not yet overwritten) of any kind which are in Your actual or constructive possession, custody or control or known or believed by You to exist or to have existed. Electronic Data is deemed to be or to have been in Your "control" if You now have or have had the right to secure or obtain the document or a copy thereof on demand from another Person or governmental entity having actual physical possession thereof.

22.    "Factual Basis" means all information of any kind of which You are aware whether such information is admissible or inadmissible in evidence. A response setting forth the "Factual Basis" shall include the name and address of any such Persons involved, the identification of any Documents involved, the time and date of the described circumstances, the name and address of any witnesses to the circumstances described, and an exhaustive description of the circumstances and factual aspects of the subject of inquiry.   ALL WRITTEN STATEMENTS PERTAINING TO THE FACTUAL BASIS AS DEFINED IN THIS PARAGRAPH MUST BE IDENTIFIED IN YOUR RESPONSE.

23.    "Or" means "or/and."

24.    "Relate to" or "relating to" means consisting of, pertaining to, reflecting, evidencing, referring to and/or having any logical or factual connection with the matter discussed.

## INSTRUCTIONS

1.    If any answer is on information and belief, in whole or in part, so state and

identify each Person, Document or oral Communication, which is the source of such information or belief.

2.     Where exact data cannot be furnished, estimated data should be supplied and it should be identified as such.

3.     Grammar and syntax, as used in these requests, shall be construed and interpreted to give proper meaning and consistency to its context.  By way of illustration and not by way of limitation, the singular form of words may include the plural and the plural form of words may apply to each individual Person, and the use of any gender or tense may be construed to include all genders and tenses, wherever appropriate in these requests, to bring within their scope any information which might otherwise be construed to be outside their scope.

4.     Requests phrased in the present tense shall be construed to refer to the entire time period to which these discovery requests relate.  If any answer would be different for any time to which these requests relate, supply both the current information and such information as may be different for all times for the relevant time period.

5.     If any Document or identification of any Document or oral Communication is withheld under a claim of privilege, in order that the Court and the parties may determine the validity of the claim of privilege, You should provide sufficient information to determine the identity of the document or oral communication, including:

(a)     Its type (e.g., memo, letter, etc.);

(b)     Its author(s);

(c)     Its recipient(s);

(d)     Its date;

(e)     Its general subject matter;

(f)     The nature of the work product claim or privilege asserted;

(g)     The part or portion of the document for which the work product claim or

privilege is asserted.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**DOCUMENT REQUEST NO. 1:** Any and all documents identified by any party to this matter in its answers to interrogatories.

**DOCUMENT REQUEST NO. 2:** Any and all documents which may or will be used or relied upon by you as an exhibit at trial or any evidentiary hearing in this matter.

**DOCUMENT REQUEST NO. 3:** Any and all documents which have been provided to any expert or lay witness who may be called to testify on your behalf at trial or any evidentiary hearing in this matter.

**DOCUMENT REQUEST NO. 4:** Any and all documents received, including but not limited to reports, from any person who may or will be called as an expert or lay witness at trial or any evidentiary hearing.

**DOCUMENT REQUEST NO. 5:** Any and all written or recorded statements from any party to this action pertaining to the matters alleged in the Complaint.

**DOCUMENT REQUEST NO. 6:** Any and all written or recorded statements of any person(s) which relate to or which you contend relate to the matters alleged in the Complaint.

**DOCUMENT REQUEST NO. 7:** Any and all documents, reports, or other records which relate to or which you contend relate to the matters alleged in the Complaint.

**DOCUMENT REQUEST NO. 8:** Any and all documents, reports, or other records which relate to or which you contend relate to the matters alleged in the Complaint that have been obtained from any party **to** this action or its agents, employers, representatives, or attorneys.

**DOCUMENT REQUEST NO. 9:** Each and every *curriculum vitae* or resume prepared by your experts within the past five years.

**DOCUMENT REQUEST NO. 10**:  Any and all texts, treatises, articles, or other writings which you intend to rely upon at trial, including those referred to or written by your experts and those used or to be used in the examination or cross-examination of any experts to be called by any party to this action.

**DOCUMENT REQUEST NO. 11**:  Any and all documents which refer or relate to the matters alleged in the Complaint.

**DOCUMENT REQUEST NO. 12**:  Any and all materials received by Dipped Fruit, Inc. pursuant to subpoenas duces tecum served on any third-party.

**DOCUMENT REQUEST NO. 13**:  Any and all photographs and/or videotapes which refer or relate to the matters alleged in the Complaint.

**DOCUMENT REQUEST NO. 14**:  Any and all contracts and/or agreements between EAI and any third-party related to the matters alleged in the Complaint.

**DOCUMENT REQUEST NO. 15**:  Any and all documents that reflect the prior testimony of your employees, agents or representatives in any other lawsuit involving claims similar to those alleged in the Complaint in this matter and that are the subject of this litigation in which your employee, agent or representative gave sworn testimony, including, but not limited to, deposition transcripts, trial transcripts, and affidavits.

**DOCUMENT REQUEST NO. 16**:  Any and all lawsuits that you have filed in any state and/or federal court against EAI franchisees with similar and/or like allegations as those set forth in this matter.

**DOCUMENT REQUEST NO. 17**:  Any and all of your financial statements from January 1, 2003 to the present.

**DOCUMENT REQUEST NO. 18**:  Any and all statements, including stenographic, mechanical, electrical or other recordings of oral statements, or transcripts thereof, made by

you or any of your agents, employees or representatives, past or present, made to investors, governmental authorities, or the general public, pertaining to franchisee relations and franchisee terminations.

**DOCUMENT REQUEST NO. 19:**  To the extent not already provided in your prior responses to these discovery demands, any and all documents prepared, written, drafted, or relied upon by any other person who has provided you with any information relevant to any of the allegations of the complaint.

**DOCUMENT REQUEST NO. 20:**  Any and all documents that you contend constitute admissions by any party to this matter.

**DOCUMENT REQUEST NO. 21:**  Any and all documents that you contend constitute declarations against interest by any party to this matter.

**DOCUMENT REQUEST NO. 22:**  Any and all internal correspondence and/or memoranda between any employees and/or representatives of DippedFruit, Inc. pertaining to the creation, formation and/or enforcement of each of the system-wide mandates related to the dippedfruit.com website and selection of dippedfruit.com-approved sellers, and related issues described in the Complaint.

**DOCUMENT REQUEST NO. 24:**  Copies of any and all written agreements entered into between EAI and Dipped Fruit, Inc. between 2003 and the present time.

**DOCUMENT REQUEST NO. 25:**   Copies of any and all written communications, including electronic mail, between Dipped Fruit, Inc. its employees, agents and/or representatives and EAI, its employees, agents and/or representatives related to the process by which EAI franchisees are selected to be "dippedfruit.com-approved" sellers of DippedFruit, Inc's products.

**DOCUMENT REQUEST NO. 26:** Copies of any and all internal documents maintained

by DippedFruit, Inc. including but not limited to written communications exchanged between its employees, agents and/or representatives, internal memoranda and official minutes of corporate meeting pertaining the selection of certain franchisees to be "dippedfruit.com-approved" sellers of its products.

**DOCUMENT REQUEST NO. 27:** Any and all written complaints received from EAI franchisees pertaining todippedfruit.com products, including the right to sell such products.

**DOCUMENT REQUEST NO. 28:** Copies of any and all studies, market research and any related empirical analysis DippedFruit, Inc. exchanged with EAI and/or its employees, agents and representatives related to each of the sale of "dippedfruit.com" products and the selection of dippedfruit.com-approved EAI franchisees.

**DOCUMENT REQUEST NO. 29:** Any and all documents pertaining to the sales of products and customer orders processed through dippedfruit.com from the date of its creation to the present time.

**DOCUMENT REQUEST NO. 30:** Any and all internal corporate memoranda generated by Dippedfruit.com, its employees, agents or representatives pertaining to the creation, implementation and  execution and enforcement of any "dippedfruit.com" related mandate referenced in the Complaint.

**DOCUMENT REQUEST NO. 31:** Any and all iterations of the websites maintained for dippedfuit.com and EAI.

**DOCUMENT REQUEST NO. 32:** Any and all operations manuals, FDDs and form franchise agreement issued by DippedFruit, Inc. from the date of the commencement of its business to the present date.

**DOCUMENT REQUEST NO. 33:** Any and all documents pertaining to DippedFruit, Inc.' product offering lists, menus, catalogs, pricing sheets for products, any and any related documents created, maintained and/or disseminated by DippedFruit, Inc. that pertain to its products and services.

**DOCUMENT REQUEST NO. 34:** Any and all documents relating to any exclusive, unique or specialized product offerings made by DippedFruit,Inc. to EAI franchisees.

**DOCUMENT REQUEST NO. 35:** Any and all DippedFruit, Inc. promotional, marketing and/or advertising materials issued from the date of the commencement of its business to the present date.

**DOCUMENT REQUEST NO. 36:** Any and all franchise sales, promotional, advertising and marketing materials issued by DippedFruit, Inc. since the date of the commencement of its business to the present date.

**DOCUMENT REQUEST NO. 37:** A complete list of any and all present and/or former DippedFruit, Inc. franchisees.

Dated this 8th day of April, 2011

BY:

**MARKS & KLEIN, LLP**
Attorneys for Plaintiff

/S/ Justin M. Klein
Justin M. Klein ph04261
Louis D. Tambaro phv04258
63 Riverside Avenue
Red Bank, New Jersey 07701
Telephone: (732) 747-7100
Fax: (732) 219-0625

**BERDON, YOUNG & MARGOLIS, P.C.**
Attorneys for Plaintiff

/S/ Stuart A. Margolis
Stuart A. Margolis (ct08803)
132 Temple Street
New Haven, Connecticut 06510
Telephone: (203) 772-3740
Fax: (732) 492-4444

14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| EA INDEPENDENT FRANCHISEE ASSOCIATION, LLC<br><br>Plaintiff,<br><br>vs.<br><br>EDIBLE ARRANGEMENTS INTERNATIONAL, INC. AND EA CONNECT, INC., NETSOLACE, INC., DIPPEDFRUIT, INC., and XYZ CORPORATIONS 1-20, fictitious entities,<br><br>Defendants. | Civil Action No. 10-cv-1489 (WWE)<br><br><br><br>April 8, 2011 |

## PLAINTIFFS' INTERROGATORIES TO DEFENDANT EDIBLE ARRANGEMENTS INTERNATIONAL, INC.

TO:   Defendants                          Defendants
      c/o James T. Shearin, Esq.          c/o John F. Verhey, Esq.
      Pullman & Comley, LLC               DLA Piper LLP (US)
      850 Main Street, P.O. Box 7006      203 North LaSalle Street, Suite 1900
      Bridgeport, CT 06601-7006           Chicago, IL 60601-1293

Plaintiffs, pursuant to Fed. R. Civ. P. 33 and by through their counsel Marks & Klein, LLP, and Berdon, Young & Margolis, P.C., submit the following Interrogatories to Defendant Edible Arrangements International, Inc. ("EAI" or "Defendant"). EAI shall respond to these Interrogatories in writing and under oath within thirty (30) days of the date of service by serving answers upon Stuart A. Margolis, Berdon Young & Margolis, 132 Temple Street, New Haven, CT 06510, and Justin M. Klein and Louis D. Tambaro, Marks & Klein, LLP, 63 Riverside Ave., Red Bank, NJ 07701.

1

## DEFINITIONS

As used in these Interrogatories, each of the following terms has the specified meaning set forth below:

### Case Specific Definitions

1.      "Franchise Agreement" means any contract or other agreement granting the Franchise Owner the right to own and operate an Edible Arrangements franchise.

2.      "Franchise Owner" means each Person throughout the United States (as defined below) that signed a Franchise Agreement giving them the right to operate an Edible Arrangements restaurant.

3.      "Franchisor" means (a) the Edible Arrangements entity or entities responsible for granting franchise rights to franchisees throughout the United States (as defined below); (b) the Edible Arrangements entity or entities governing, managing and/or administering those franchise relationships throughout the United States; and (c) all other Persons over whom the Franchisor maintains control or otherwise relies on to operate the Edible Arrangements franchise system throughout the United States.   The definition includes the respective agents, employees, affiliates, subsidiaries representatives, predecessors, successors and assigns of each such Person.

4.      "Person" means any natural person and any corporation, partnership, limited liability company, firm, joint venture, sole proprietorship or other legal or business entity of any kind.

5.      "Plaintiffs" means the plaintiff in this action, namely the EA Independent Franchisee Association, LLC ("EAIFA").

6.      EAI means the Defendant, Edible Arrangements International, Inc. along with its

owners, representatives, agents, employees, predecessors, successors and assigns.

7.    Nesolace Inc. means the Defendant, Netsolace, Inc. along with its owners, representatives, agents, employees, predecessors, successors and assigns.

8.    Dipped Fruit, Inc. means the Defendant DippedFruit, Inc. along with its owners, representatives, agents, employees, predecessors, successors and assigns.

9.    EAConnect, Inc. means Defendant EAConnect, Inc. along with its owners, representatives, agents, employees, predecessors, successors and assigns.

10.    ""Edible Arrangements Area Directors" means those Persons who at any time have supervised store operations in designated geographic areas throughout the United States, along with their agents, employees, representatives, predecessors, successors and assigns.

11.    "Edible Arrangements Sales Agents" means those Persons who at any time have sold franchise units for Edible Arrangements throughout the United States, along with their agents, employees, representatives, predecessors, successors and assigns.

12.    "UFOC" means Uniform Franchising Offering Circular and relates solely and exclusively to such documents created and distributed in relation to the sale of Edible Arrangements franchises as compared to those created and distributed in relation to some other brand.

13.    "FDD" means Franchise Disclosure Document and relates solely and exclusively to such documents created and distributed in relation to the sale of Edible Arrangements franchises as compared to those created and distributed in relation to some other brand.

14.    "United States" includes all fifty states in the United States that Edible Arrangements offers franchises for sale.

15.    "Target Area" or "Trade Area" refers to the geographic area designated in the

3

Franchise Agreement where the Franchise Owner is granted the right to operate an Edible Arrangements franchise.

16. "You," "Your" or "Defendants" collectively means all defendants represented in this action by Pullman & Comley, LLC and/or DLA Piper LLP (US), along with their agents, employees, representatives, predecessors, successors and assigns.

**General Definitions**

17. "And" means "and/or."

18. "Communication" means any oral, written, or recorded contact between two or more Persons, or from one or more Persons to one or more other Persons, including, without limitation, face-to-face meetings, telephone conversations, correspondence, electronic mail, messages, and recorded messages.

19. "Describe" means to give an account of the salient characteristics of the subject asked to be described, including, where applicable, dates and durations of the relevant events, places such events occurred, the names and addresses of all Persons involved in those events, and all sources from which the requested information was obtained.

20. "Document(s)" means the original and any non-identical copy (which is different from the original or any copy because of notations thereon or attached thereto or otherwise) or drafts of any written, recorded, printed, typewritten, handwritten, graphic, filmed, or videotaped matter or things, including, without limitation:  Electronic Data (as defined below), letters, telegrams, telex, telefax or telecopy reproductions, facsimile, memoranda, reports, studies, diaries (or extracts thereof), minutes, pamphlets, notes, tables, charts,  bulletins, calendars, tabulations, analyses, forecasts, pro forma projections, appraisals, statistical information accumulations, records of meetings and conversations of any kind, film impressions,

4

photographs, magnetic tape, sound or mechanical reproductions, recordings, proposals, contracts and amendments, offers, counteroffers, drafts of contracts, receipts, telephone records, computer printouts, computer software and computer programs, advertisements, telephone listings, stationary, invoices, bills, purchase orders, regulatory filings, formal or informal board of directors, shareholders or employee meeting minutes or other notes, memoranda, or reports from such meetings (whether or not a quorum was present), employee notices, announcements or disclosures, corporate authorizations, stock quotes, appraisals or forecasts, and financial records of whatsoever kind which are in Your actual or constructive possession, custody or control or known or believed by You to exist or to have existed.   Without limitation, as used in this definition, the word Document is to be construed as broadly as is conceivable.   A Document is deemed to be or to have been in Your "control" if you now have or have had the right to secure or obtain the Document or a copy thereof on demand from another Person or governmental entity having actual physical possession thereof.

21.   "Electronic Data" means any information stored or produced electronically, including, without limitation, electronic mail, word processing documents, computer databases (e.g. payroll, royalty, and advertising fee payments), and electronically stored reports from software applications. Electronic Data includes any such information obtainable from any media including, without limitation: local and networked hard drives, CD-ROMs and floppy disks, personal computers, PDAs, and backup tapes.  As used in this definition, the term Electronic Data is to be construed as broadly as is conceivable and shall encompass any: (a) active data (i.e. electronic files that are easily accessible for Your current and future purposes); (b) meta data (information about the Document or file that is recorded by the computer to assist the computer and often the user in storing and retrieving the Document or file at a later date); (c) replicant data

(data which is automatically created and retained by various systems, including automatic back up files generated by operating systems); (d) backup data (found in backup and archival or legacy data files); and (e) residual data (deleted files and data fragments not yet overwritten) of any kind which are in Your actual or constructive possession, custody or control or known or believed by You to exist or to have existed. Electronic Data is deemed to be or to have been in Your "control" if You now have or have had the right to secure or obtain the document or a copy thereof on demand from another Person or governmental entity having actual physical possession thereof.

22.   "Factual Basis" means all information of any kind of which You are aware whether such information is admissible or inadmissible in evidence. A response setting forth the "Factual Basis" shall include the name and address of any such Persons involved, the identification of any Documents involved, the time and date of the described circumstances, the name and address of any witnesses to the circumstances described, and an exhaustive description of the circumstances and factual aspects of the subject of inquiry.   ALL WRITTEN STATEMENTS PERTAINING TO THE FACTUAL BASIS AS DEFINED IN THIS PARAGRAPH MUST BE IDENTIFIED IN YOUR RESPONSE.

23.   To "identify," or "state the identity of" or "to describe" a Person, if that Person is a natural Person, means to state:

      (a)   His or her name and all other names by which he or she is known;

      (b)   His or her present or last known resident address and telephone number;

      (c)   His or her present or last known business address and telephone number; and

      (d)   His or her present or last known occupation, position, and business

affiliation.

24.    To "identify," or "state the identity of" or "to describe" a Person, if that Person is not a natural Person, means to:

    (a)    State its full name and specify its nature (e.g., corporation, partnership, limited liability company, etc.);

    (b)    Set forth the general nature of its business (e.g., products manufactured or sold, services rendered, etc.);

    (c)    State its present or last known principal business address, identified as such, and such other of its business addresses as are known to You;

    (d)    If it is a corporation, set forth the state of its incorporation, and identify the principal officers of said corporation;

    (e)    If it is a partnership, state whether it is a general or limited partnership, and identify each general or limited partner; and

    (f)    In the case of any other business entity, identify each owner and/or member.

25.    To "identify" or "state the identity of" or "to describe" a Document means to state with respect thereto:

    (a)    The nature or type of the Document (e.g., letter, contract, etc.) and the number of pages or units of which it consists;

    (b)    Its date, and if it bears no date, the date when it was prepared or received;

    (c)    Its author, each signatory or Person over whose name it is issued, and each Person who received, approved or commented on it;

    (d)    All Persons to whom the document was addressed or distributed; and

(e)    The general subject matter or content of the Document with sufficient particularity to enable it to be identified.

26.    To "identify" or "to describe" an oral Communication means to:

(a)    Identify each Person who participated in or was present at the Communication;

(b)    State the date of the Communication;

(c)    State the place of the Communication;

(d)    Set forth the substance of what was said by each Person speaking at or during the Communication; and

(e)    State the means or medium through which the Communication was made (e.g., in person, telephone, etc.).

27.    "Or" means "or/and."

28.    "Relate to" or "relating to" means consisting of, pertaining to, reflecting, evidencing to and/or having any logical or factual connection with the matter discussed.

### INSTRUCTIONS

1.    If, with respect to any Interrogatory, or part or subpart thereof, you exercise Your option, pursuant to Fed. R. Civ. P. 33(d), to produce business records in lieu of otherwise answering such Interrogatory, or part or subpart thereof, the following information must be provided and the following procedures employed:

(a)    Identify all Documents from which the answer to such Interrogatory or part or subpart thereof may be derived or ascertained;

(b)    State whether other copies of the Documents described in response to paragraph (a) above exist and, if so, the location of such other copies (e.g.,

the name of the file in which they are kept);

(c)   Identify all Persons who received or reviewed any copies of such Documents;

(d)   In producing such Documents, you must produce such Documents separately and designate the specific interrogatory, or part or subpart thereof, to which each such Document relates, and identify the file or files from which the Documents were segregated.

2.   If any answer is on information and belief, in whole or in part, so state and identify each Person, Document or oral Communication, which is the source of such information or belief.

3.   Where exact data cannot be furnished, estimated data should be supplied and it should be identified as such.

4.   Grammar and syntax, as used in these discovery requests, shall be construed and interpreted to give proper meaning and consistency to its context. By way of illustration and not by way of limitation, the singular form of words may include the plural and the plural form of words may apply to each individual Person, and the use of any gender or tense may be construed to include all genders and tenses, wherever appropriate in these requests, to bring within their scope any information which might otherwise be construed to be outside their scope.

5.   Interrogatories phrased in the present tense shall be construed to refer to the entire time period to which these discovery requests relate. If any answer would be different for any time to which these requests relate, supply both the current information and such information as may be different for all times for the relevant time period.

## INTERROGATORIES

**INTERROGATORY NO. 1:** Identify the name, address and title of all current and/or former employees and/or representatives of EAI that were in any manner involved in the creation, development, implementation, oversight and enforcement of the Extended Hours Mandate that was enacted on March 1, 2010. For each such individual, please state the individual's title and describe each individual's role in the creation, development, implementation and oversight of the Extended Hours Mandate as referenced and described in Plaintiff's Complaint for Declaratory Judgment ("Compl."), ¶¶93-94.

**ANSWER:**

**INTERROGATORY NO. 2:** Identify by name, address and store number each current and/or former EAI franchisee that has been sanctioned, defaulted, terminated and/or otherwise cautioned since March 2010 for not complying with the terms of the Extended Hours Mandate and for each franchisee set forth the particular action(s) taken against him/her/it by EAI, and identify any current and/or former EAI franchisee whose store has been deprived of their internet ordering capabilities as a result of an alleged violation or non-compliance with the Extended Hours Mandate.

**ANSWER:**

**INTERROGATORY NO. 3:**  Identify by name, address and store number each EAI franchisee whose owner's day of religious observance fell on Saturdays, that was granted an exemption from working on Saturdays and identify the justification for each such exemption granted by EAI and/or its representatives.

**ANSWER:**

**INTERROGATORY NO. 4:**  Identify the name, address and title of all current or former employees and/or representatives of EAI that were involved in the creation, development, implementation, oversight and enforcement of the Enhanced FRESH Program Mandate as referenced and described in Compl. ¶¶106-108.

**ANSWER:**

**INTERROGATORY NO. 5:** Identify by name, address and store number each EAI franchisee that has been sanctioned, defaulted, terminated or otherwise cited for his/her/its "failure" and/or refusal to abide by the terms of the FRESH Program Mandate and their use of alternative vendors and for each franchisee set forth the particular action(s) taken against him/her/it by EAI.

**ANSWER:**

**INTERROGATORY NO. 6:**, Identify by name, address and store number each EAI franchisee that You know to be currently using alternative fruit vendors to those that have been specifically approved by EAI and set forth in full detail any and all reasons why such franchisees have not been sanctioned, terminated or otherwise cited.

**ANSWER:**

**INTERROGATORY NO. 7:**   Identify the name, address and title of all current or former employees and/or representatives of EAI that were involved in the creation, development, implementation, oversight and operations of the Store 98 entity that is referenced and described in Compl., ¶¶117-118.

**ANSWER:**

**INTERROGATORY NO. 8:**  Describe in full detail the ownership structure and day-to-day operations of Store 98 , and state:

a. the date, time and manner of its creation;

b.   whether EAI maintains an ownership interest of any kind in Store 98;

c. the   names and addresses of any and all current and/or former employees or representatives of EAI or that were or are responsible in any way for the creation and/or operation of Store 98 and set forth the particular responsibilities of each such individual;

d. The nature of any existing contractual relationship between Store 98 and EAI (i.e., whether it is owned by a franchisee or corporately owned);

e. The names and contract information of the owners and operators of Store 98;

f. The names and contact information of any and all current or former employees of Store 98;

g. The physical and/or virtual location of Store 98;

h. Any and all products and services provided by Store 98;

    i.  Any and all reasons why only corporate customers previously being serviced by EAI franchisee locations are selected to be serviced by Store 98;

    j.  the manner in which orders to Store 98 are fulfilled, shipped and delivered to customers; and

    k.  The distinction(s), if any, that exist(s) between the activities of Store 98 and a standard Edible Arrangements franchise location.

**ANSWER:**


**INTERROGATORY NO. 9:**   Set forth in complete detail any and all information pertaining to the creation, development, implementation or existence of a Store 98 Commission and state the names and contact information of any current and/or former EAI representatives or employees that were or are responsible to determine whether any such commission should be imposed.

    **ANSWER:**


**INTERROGATORY NO. 10:**   Since 2003, describe any monetary support, loans and/or funding given to Store 98 by EAI, including, but not limited to, the use of national advertising fund ("NAF") monies collected from EAI franchisees and state:

    a.  The date, time and manner of each such loan or other monetary support;

    b.  The name and contact information of any third-party financier in connection with any such loan or other monetary support; and,

    c.  The name and contact information for any current and/or former EAI representatives

or employees responsible to oversee any type of funding.

**ANSWER:**

**INTERROGATORY NO. 11:**  Identify the name, address and title of all current and/or former employees and/or representatives that have been or currently are responsible to control, monitor, update, enhance or otherwise oversee your internet order processing system, including the Netcenter Program and the EAConnect Programs as referenced and described in Compl. ¶¶54-58, at any time between 2003 and the present date.

**ANSWER:**

**INTERROGATORY NO. 12:**  Set forth whether any contractual arrangement exists and any and all material terms of any written agreements entered into between EAI and:

        a. Netsolace, Inc. from the date of its creation to the present time;

        b. EAConnect, Inc. from the date of its creation to the present time; and,

        c. DippedFruit, Inc. from the date of its creation to the present time.

**ANSWER:**

**INTERROGATORY NO. 13:** Identify the name, address and title of any and all current or former EAI employees and/or representatives that have been or are currently responsible to monitor the actions of Netsolace, Inc..

**ANSWER:**

**INTERROGATORY NO. 14:** Identify each person whom you expect to call as a witness at the trial of this matter, and with respect to each witness, state the subject matter on which the witness is expected to testify and the facts upon which that testimony will be based.

**ANSWER:**

**INTERROGATORY NO. 15:** Identify each person whom you have consulted or retained as a potential expert witness, and with respect to each witness, please state his or her name, business address and telephone number, the subject matter on which he or she is expected to testify, a summary of his or her qualifications, the substance of the opinions to which he or she is expected to testify and a summary of the grounds for each such opinion.

**ANSWER:**

Dated this 8th day of April, 2011.

BY:

**MARKS & KLEIN, LLP**
Attorneys for Plaintiff

/S/ Justin M. Klein
Justin M. Klein ph04261
Louis D. Tambaro phv04258
63 Riverside Avenue
Red Bank, New Jersey 07701
Telephone: (732) 747-7100
Fax: (732) 219-0625

**BERDON, YOUNG & MARGOLIS, P.C.**
Attorneys for Plaintiff

/S/ Stuart A. Margolis
Stuart A. Margolis (ct08803)
132 Temple Street
New Haven, Connecticut 06510
Telephone: (203) 772-3740
Fax: (732) 492-4444

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| EA INDEPENDENT FRANCHISEE ASSOCIATION, LLC | Civil Action No. 10-cv-1489 (WWE) |
| Plaintiff, | |
| vs. | |
| EDIBLE ARRANGEMENTS INTERNATIONAL, INC. AND EA CONNECT, INC., NETSOLACE, INC., DIPPEDFRUIT, INC., and XYZ CORPORATIONS 1-20, fictitious entities, | April 8, 2011 |
| Defendants. | |

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT EDIBLE ARRANGEMENTS INTERNATIONAL, INC.**

**TO:** Defendants
c/o James T. Shearin, Esq.
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601-7006

Defendants
c/o John F. Verhey, Esq.
DLA Piper LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, IL 60601-1293

Plaintiff, EA Independent Franchisee Association, LLC ("EAIFA") pursuant to

Fed. R. Civ. P. 34 and by their counsel Berdon, Young & Margolis, P.C., and Marks & Klein,

LLP, submit the following First Request for Production of Documents to Defendant Edible

Arrangements International, Inc. ("EAI"). EAI shall respond to these document requests in

writing and under oath within thirty (30) days of the date of service by serving answers upon

Stuart A. Margolis, Berdon Young & Margolis, 132 Temple Street, New Haven, CT 06510, and

1

Justin M. Klein and Louis D. Tambaro, Marks & Klein, LLP, 63 Riverside Ave., Red Bank, NJ 07701.

## DEFINITIONS

As used in these requests, each of the following terms has the specified meaning set forth below:

### Case Specific Definitions

1.    "Franchise Agreement" means any contract or other agreement granting the Franchise Owner the right to own and operate an Edible Arrangements franchise.

2.    "Franchise Owner" means each Person throughout the United States (as defined below) that signed a Franchise Agreement giving them the right to operate an Edible Arrangements restaurant.

3.    "Franchisor" means (a) the Edible Arrangements entity or entities responsible for granting franchise rights to franchisees throughout the United States (as defined below); (b) the Edible Arrangements entity or entities governing, managing and/or administering those franchise relationships throughout the United States; and (c) all other Persons over whom the Franchisor maintains control or otherwise relies on to operate the Edible Arrangements franchise system throughout the United States.   The definition includes the respective agents, employees, affiliates, subsidiaries representatives, predecessors, successors and assigns of each such Person.

4.    "Person" means any natural person and any corporation, partnership, limited liability company, firm, joint venture, sole proprietorship or other legal or business entity of any kind.

5.    "Plaintiffs" means the plaintiff in this action, namely the EA Independent Franchisee Association, LLC ("EAIFA").

6.    EAI means the Defendant, Edible Arrangements International, Inc. along with its owners, representatives, agents, employees, predecessors, successors and assigns.

7.    Nesolace Inc.  means the Defendant, Netsolace, Inc. along with its owners, representatives, agents, employees, predecessors, successors and assigns.

8.    Dipped Fruit, Inc. means the Defendant DippedFruit, Inc. along with its owners, representatives, agents, employees, predecessors, successors and assigns.

9.    EAConnect, Inc. means Defendant EAConnect, Inc. along with its owners, representatives, agents, employees, predecessors, successors and assigns.

10.    ""Edible Arrangements Area Directors" means those Persons who at any time have supervised store operations in designated geographic areas throughout the United States, along with their agents, employees, representatives, predecessors, successors and assigns.

11.    "Edible Arrangements Sales Agents" means those Persons who at any time have sold franchise units for Edible Arrangements throughout the United States, along with their agents, employees, representatives, predecessors, successors and assigns.

12.    "UFOC" means Uniform Franchising Offering Circular and relates solely and exclusively to such documents created and distributed in relation to the sale of Edible Arrangements franchises as compared to those created and distributed in relation to some other brand.

13.    "FDD" means Franchise Disclosure Document and relates solely and exclusively to such documents created and distributed in relation to the sale of Edible Arrangements franchises as compared to those created and distributed in relation to some other brand.

14.    "United States" includes all fifty states in the United States that Edible Arrangements offers franchises for sale.

15.     "Target Area" or "Trade Area" refers to the geographic area designated in the Franchise Agreement where the Franchise Owner is granted the right to operate an Edible Arrangements franchise.

16.     "You," "Your" or "Defendants" collectively means all defendants represented in this action by Pullman & Comley, LLC and/or DLA Piper LLP (US), along with their agents, employees, representatives, predecessors, successors and assigns.

**General Definitions**

17.     "And" means "and/or."

18.     "Communication" means any oral, written, or recorded contact between two or more Persons, or from one or more Persons to one or more other Persons, including, without limitation, face-to-face meetings, telephone conversations, correspondence, electronic mail, messages, and recorded messages.

19.     "Describe" means to give an account of the salient characteristics of the subject asked to be described, including, where applicable, dates and durations of the relevant events, places such events occurred, the names and addresses of all Persons involved in those events, and all sources from which the requested information was obtained.

20.     "Document(s)" means the original and any non-identical copy (which is different from the original or any copy because of notations thereon or attached thereto or otherwise) or drafts of any written, recorded, printed, typewritten, handwritten, graphic, filmed, or videotaped matter or things, including, without limitation:  Electronic Data (as defined below), letters, telegrams, telex, telefax or telecopy reproductions, facsimile, memoranda, reports, studies, diaries (or extracts thereof), minutes, pamphlets, notes, tables, charts,  bulletins, calendars, tabulations, analyses, forecasts, pro forma projections, appraisals, statistical information

4

accumulations, records of meetings and conversations of any kind, film impressions, photographs, magnetic tape, sound or mechanical reproductions, recordings, proposals, contracts and amendments, offers, counteroffers, drafts of contracts, receipts, telephone records, computer printouts, computer software and computer programs, advertisements, telephone listings, stationary, invoices, bills, purchase orders, regulatory filings, formal or informal board of directors, shareholders or employee meeting minutes or other notes, memoranda, or reports from such meetings (whether or not a quorum was present), employee notices, announcements or disclosures, corporate authorizations, stock quotes, appraisals or forecasts, and financial records of whatsoever kind which are in Your actual or constructive possession, custody or control or known or believed by You to exist or to have existed. Without limitation, as used in this definition, the word Document is to be construed as broadly as is conceivable. A Document is deemed to be or to have been in Your "control" if you now have or have had the right to secure or obtain the Document or a copy thereof on demand from another Person or governmental entity having actual physical possession thereof.

21. "Electronic Data" means any information stored or produced electronically, including, without limitation, electronic mail, word processing documents, computer databases (e.g. payroll, royalty, and advertising fee payments), and electronically stored reports from software applications. Electronic Data includes any such information obtainable from any media including, without limitation: local and networked hard drives, CD-ROMs and floppy disks, personal computers, PDAs, and backup tapes. As used in this definition, the term Electronic Data is to be construed as broadly as is conceivable and shall encompass any: (a) active data (i.e. electronic files that are easily accessible for Your current and future purposes); (b) meta data (information about the Document or file that is recorded by the computer to assist the computer

and often the user in storing and retrieving the Document or file at a later date); (c) replicant data (data which is automatically created and retained by various systems, including automatic back up files generated by operating systems); (d) backup data (found in backup and archival or legacy data files); and (e) residual data (deleted files and data fragments not yet overwritten) of any kind which are in Your actual or constructive possession, custody or control or known or believed by You to exist or to have existed. Electronic Data is deemed to be or to have been in Your "control" if You now have or have had the right to secure or obtain the document or a copy thereof on demand from another Person or governmental entity having actual physical possession thereof.

22.     "Factual Basis" means all information of any kind of which You are aware whether such information is admissible or inadmissible in evidence. A response setting forth the "Factual Basis" shall include the name and address of any such Persons involved, the identification of any Documents involved, the time and date of the described circumstances, the name and address of any witnesses to the circumstances described, and an exhaustive description of the circumstances and factual aspects of the subject of inquiry.   ALL WRITTEN STATEMENTS PERTAINING TO THE FACTUAL BASIS AS DEFINED IN THIS PARAGRAPH MUST BE IDENTIFIED IN YOUR RESPONSE.

23.     "Or" means "or/and."

24.     "Relate to" or "relating to" means consisting of, pertaining to, reflecting, evidencing, referring to and/or having any logical or factual connection with the matter discussed.

## INSTRUCTIONS

1.      If any answer is on information and belief, in whole or in part, so state and identify each Person, Document or oral Communication, which is the source of such information or belief.

2.      Where exact data cannot be furnished, estimated data should be supplied and it should be identified as such.

3.      Grammar and syntax, as used in these requests, shall be construed and interpreted to give proper meaning and consistency to its context.  By way of illustration and not by way of limitation, the singular form of words may include the plural and the plural form of words may apply to each individual Person, and the use of any gender or tense may be construed to include all genders and tenses, wherever appropriate in these requests, to bring within their scope any information which might otherwise be construed to be outside their scope.

4.      Requests phrased in the present tense shall be construed to refer to the entire time period to which these discovery requests relate.  If any answer would be different for any time to which these requests relate, supply both the current information and such information as may be different for all times for the relevant time period.

5.      If any Document or identification of any Document or oral Communication is withheld under a claim of privilege, in order that the Court and the parties may determine the validity of the claim of privilege, You should provide sufficient information to determine the identity of the document or oral communication, including:

        (a)      Its type (e.g., memo, letter, etc.);

        (b)      Its author(s);

        (c)      Its recipient(s);

(d)     Its date;

(e)     Its general subject matter;

(f)     The nature of the work product claim or privilege asserted;

(g)     The part or portion of the document for which the work product claim or

privilege is asserted.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**DOCUMENT REQUEST NO. 1:**  Any and all documents identified by any party to this matter in its answers to interrogatories.

**DOCUMENT REQUEST NO. 2:**  Any and all documents which may or will be used or relied upon by you as an exhibit at trial or any evidentiary hearing in this matter.

**DOCUMENT REQUEST NO. 3:**  Any and all documents which have been provided to any expert or lay witness who may be called to testify on your behalf at trial or any evidentiary hearing in this matter.

**DOCUMENT REQUEST NO. 4:**  Any and all documents received, including but not limited to reports, from any person who may or will be called as an expert or lay witness at trial or any evidentiary hearing.

**DOCUMENT REQUEST NO. 5:**  Any and all written or recorded statements from any party to this action pertaining to the matters alleged in the Complaint.

**DOCUMENT REQUEST NO. 6:**  Any and all written or recorded statements of any person(s) which relate to or which you contend relate to the matters alleged in the Complaint.

**DOCUMENT REQUEST NO. 7:**  Any and all documents, reports, or other records which relate to or which you contend relate to the matters alleged in the Complaint.

**DOCUMENT REQUEST NO. 8:**  Any and all documents, reports, or other records which relate to or which you contend relate to the matters alleged in the Complaint that have been obtained from any party to this action or its agents, employers, representatives, or attorneys.

**DOCUMENT REQUEST NO. 9:**  Each and every *curriculum vitae* or resume prepared by your experts within the past five years.

**DOCUMENT REQUEST NO. 10:**   Any and all texts, treatises, articles, or other writings which you intend to rely upon at trial, including those referred to or written by your experts and those used or to be used in the examination or cross-examination of any experts to be called by any party to this action.

**DOCUMENT REQUEST NO. 11:**   Any and all documents which refer or relate to the matters alleged in the Complaint.

**DOCUMENT REQUEST NO. 12:**   Any and all materials received by EAI pursuant to subpoenas _duces_ _tecum_ served on any third-party.

**DOCUMENT REQUEST NO. 13:**   Any and all photographs and/or videotapes which refer or relate to the matters alleged in the Complaint.

**DOCUMENT REQUEST NO. 14:**   Any and all contracts and/or agreements between EAI and any third-party related to the matters alleged in the Complaint.

**DOCUMENT REQUEST NO. 15:**   Any and all versions of the Edible Arrangements Operations Manuals, including all drafts and redlined versions, that have been created and/or issued by EAI from 2003 to the present time.

**DOCUMENT REQUEST NO. 16:**   Any and all documents that reflect the prior testimony of your employees, agents or representatives in any other lawsuit involving claims similar to those alleged in the Complaint in this matter and that are the subject of this litigation in which your employee, agent or representative gave sworn testimony, including, but not limited to, deposition transcripts, trial transcripts, and affidavits.

**DOCUMENT REQUEST NO. 17:**   Any and all lawsuits that you have filed in any state and/or federal court against EAI franchisees with similar and/or like allegations as those set forth in this matter.

**DOCUMENT REQUEST NO. 18:**   Any and all of your financial statements from January 1, 2003 to the present.

**DOCUMENT REQUEST NO. 19:**  Any and all statements, including stenographic, mechanical, electrical or other recordings of oral statements, or transcripts thereof, made by you or any of your agents, employees or representatives, past or present, made to investors, governmental authorities, or the general public, pertaining to franchisee relations and franchisee terminations.

**DOCUMENT REQUEST NO. 20:**  To the extent not already provided in your prior responses to these discovery demands, any and all documents prepared, written, drafted, or relied upon by any other person who has provided you with any information relevant to any of the allegations of the complaint.

**DOCUMENT REQUEST NO. 21:**  Any and all documents that you contend constitute admissions by any party to this matter.

**DOCUMENT REQUEST NO. 22:**  Any and all documents that you contend constitute declarations against interest by any party to this matter.

**DOCUMENT REQUEST NO. 23:**   Any and all internal correspondence and/or memoranda between any employees and/or representatives of EAI pertaining to the creation, formation and enforcement of each of the system-wide mandates described in the Complaint.

**DOCUMENT REQUEST NO. 24:** Any and all documents pertaining to the implementation of the Extended Hours Mandate on March 1, 2010 by EAI, including but not limited to documents pertaining to the  research process, procedures, methods and/or statistical data analyses employed by EAI and/or its representatives.

**DOCUMENT REQUEST NO. 25:**  Any and all documents including written correspondence to or from EAI pertaining to EAI's efforts to "enforce" the Extended Hours Mandate, including, but not limited to, certain instances where non-compliant Edible

Arrangement stores have been deprived of their internet ordering capabilities by EAI.

**DOCUMENT REQUEST NO. 26:**   Any and all documents pertaining to citations, notices of default and/or termination issued by EAI to any franchisee for their failure and/or refusal to abide by the Extended Hours Mandate since March 1, 2010.

**DOCUMENT REQUEST NO. 27:**  Any and all documents pertaining to "exemptions" granted by EAI to any of its franchisees whose day of religious observance fell on Saturdays to be exempt from operating their stores on that day.

**DOCUMENT REQUEST NO. 28:**   Any and all documents pertaining to any of the policies, procedures and/or guidelines created and employed by EAI in selecting required vendors to be used in connection with its Enhanced FRESH Program Mandate, including, but not limited to, any and all documents pertaining to vendor qualifications; documents pertaining to EAI's performance evaluation procedures on is selected vendors, and documents pertaining to any research by EAI of its potential vendors prior to their selection as required vendors.

**DOCUMENT REQUEST NO. 29:**  Any and all documents pertaining to any policies procedures and/or guidelines pertaining to EAI's enforcement of the Enhanced FRESH Program Mandate including but not limited to citations, notices of default and/or termination sent by EAI to any franchisees for their failure and/or refusal to abide by the terms of the FRESH Program Mandate and their use of alternative vendors.

**DOCUMENT REQUEST NO. 30:**   Any and all documents pertaining to EAI's enforcement of the Enhanced FRESH Program Mandate, including, but not limited to, certain instances where "non-compliant" Edible Arrangement Franchisees have had suspended referrals of orders received through the EAI's website and call center notices advising "non-compliant" franchisees that EAI would limit their access to the Edible Arrangement International internet

order processing system; and notices to "non-compliant" franchisees requiring them to attend and complete, at their sole expense, mandatory training classes at its store or in EAI's office in Wallingford, Connecticut..

**DOCUMENT REQUEST NO. 31:**  Any and all documents pertaining to the creation, ownership and day-to-day operations of the Store 98 entity described in the Complaint, including, but not limited to:

      a. The Certificate of Formation or incorporation, corporate governance and/or by-laws for any entity(ies) that has/have an ownership interest in Store 98;

      b. Copies of any and all contractual agreements between Store 98 and its owners and EAI and/or any of its affiliates;

      c. Copies of any and all contractual agreements between Store 98, its owners and/or between Store 98 any of EAI's required vendors;

      d. Any and all customer lists maintained by EAI for the benefit of Store 98;

      e. Copies of any and all minutes from EAI corporate meetings related to the creation or formation of Store 98;

      f. Copies of any and all minutes from any EAI corporate meetings pertaining to the decision(s) related to the imposition of a Store 98 commission on orders referred to EAI franchisees.

**DOCUMENT REQUEST NO. 31:**  Any and all documents pertaining to the internal policies, procedures and/or guidelines whereby orders are fulfilled, shipped and delivered to end-user customers by Store 98.

**DOCUMENT REQUEST NO. 32:**  Any and all documents pertaining to any monetary support loans and/or funding given to Store 98 by EAI, including, but not limited to, the use of

national advertising fund ("NAF") monies collected from EAI franchisees.

**DOCUMENT REQUEST NO. 33:**  Copies of any and all written agreements entered into between EAI and Dipped Fruit, Inc. between 2003 and the present time.

**DOCUMENT REQUEST NO. 34:**   Copies of any and all written communications, including electronic mail, between EAI its employees, agents and/or representatives and Dipped Fruit, Inc. its employees, agents and/or representatives related to the process by which EAI franchisees are selected to be "dippedfruit.com-approved" sellers of DippedFruit, Inc's products.

**DOCUMENT REQUEST NO. 35**: Copies of any and all internal documents maintained by EAI including but not limited to written communications exchanged between its employees, agents and/or representatives, internal memoranda and official minutes of corporate meeting pertaining the selection of certain franchisees to be "dippedfruit.com-approved" sellers of DippedFruit, Inc's products.

**DOCUMENT REQUEST NO. 36:**  Copies of any and all written agreements entered into between EAI and EAConnect, Inc. between 2003 and the present time.

**DOCUMENT REQUEST NO. 37:**  Any and all documents including, but not limited to, any written communications between EAI employees, agents and/or representatives, internal memoranda, and/or official minutes of corporate meetings pertaining to EAI's decision to discontinue its Netcenter central order processing system and the creation and commencement the EAConnect system.

**DOCUMENT REQUEST NO. 38:**  Copies of any and all written agreements entered into between EAI and Netsolace, Inc. between 2003 and the present time.

14

**DOCUMENT REQUEST NO. 39:**  Any and all written communications between EAI and Netsolace, Inc. pertaining to EAI and/or its employees, agents and/or representatives monitoring the actions of Netsolace, Inc. in connection with its contractual agreements with EAI franchisees related to free upgrades and software changes to franchisees and the manner in which EAI determines that new products created by Netsolace should be used by its franchisees, at an additional cost, in lieu of the previously promised free upgrades.

**DOCUMENT REQUEST NO. 40:**  Any and all documents pertaining to Netsolace's development and implementation of the NxStep Program and any upgraded versions of the SMS products or services, and Netsolace's decision to charge EAI franchisees additional lump sum or monthly fees for these products and/or services.

**DOCUMENT REQUEST NO. 41:**  Any and all written complaints you have received from EAI franchisees pertaining to any of the six (6) mandates described in the Complaint.

**DOCUMENT REQUEST NO. 42:**  Any and all formal citations, fines, notices of default and/or termination issued by EAI to any of its franchisees since 2003.

**DOCUMENT REQUEST NO. 43:**  Copies of each UFOC, FDD and form franchise agreement, including all drafts and addenda, issued by EAI between 2003 and the present.

**DOCUMENT REQUEST NO. 44:**  Copies of marketing materials including all drafts and internal memoranda related Dippedfruit.com, the Enhanced FRESH Program, the Extended Hours Mandate, and Netsolace, Inc. Software.

**DOCUMENT REQUEST NO. 45:**  Copies of any and all comment letters received from any State in which EAI is required to register its franchise from 2003 to the present date.

**DOCUMENT REQUEST NO. 46:** Copies of any and all studies, market research and any related empirical analysis performed by EAI and/or its employees, agents and representatives related to each of the 6 mandates referenced in the Complaint.

**DOCUMENT REQUEST NO. 47:** Any and all documents pertaining to the sales of products and customer orders processed through dippedfruit.com from the date of its creation to the present time.

**DOCUMENT REQUEST NO. 48:** Any and all communications exchanged between EAI and any federal or state government agency pertaining to its franchised business between 2003 and the present.

**DOCUMENT REQUEST NO. 49:** Any and all internal corporate memoranda generated by EAI, its employees, agents or representatives pertaining to the creation, implementation and execution and enforcement of any of the 6 mandates referenced in the Complaint.


Dated this 8th day of April, 2011.

BY:

MARKS & KLEIN, LLP
Attorneys for Plaintiff

/S/ Justin M. Klein
Justin M. Klein ph04261
Louis D. Tambaro phv04258
63 Riverside Avenue
Red Bank, New Jersey 07701
Telephone: (732) 747-7100
Fax: (732) 219-0625

**BERDON, YOUNG & MARGOLIS, P.C.**
Attorneys for Plaintiff

/S/ Stuart A. Margolis
Stuart A. Margolis (ct08803)
132 Temple Street
New Haven, Connecticut 06510
Telephone: (203) 772-3740
Fax: (732) 492-4444